UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

TOUCHTUNES MUSIC CORPORATION,

                    Plaintiff,                    07 Civ. 11450

    -against-                                     OPINION

ROWE INTERNATIONAL CORP., ARACHNID,
INC., AMI ENTERTAINMENT, INC. and
MERIT INDUSTRIES, INC.,

                    Defendants.

------------------------------------X



A P P E A R A N C E S:


          Attorneys for Plaintiff

          KAYE SCHOLER LLP
          425 Park Avenue
          New York, NY 10022-3589
          By: James S. Blank, Esq.

          NIXON & VANDERHYE, P.C.
          901 North Glebe Road, 11th Floor
          Arlington, VA 22203
          By: Joseph S. Presta, Esq.
              Jonathon T. Reavill, Esq.


          Attorneys for Defendant Arachnid

          MCANDREWS HELD & MALLOY LTD.
          500 West Madison Street, 34th Floor
          Chicago, IL 60661
          By: James P. Murphy, Esq.
              Paul W. McAndrews, Esq.

**Sweet, D.J.**

Defendant and Counterclaimant Arachnid, Inc. ("Arachnid" or the "Defendant") has moved pursuant to 28 U.S.C. § 1404(a) for a transfer of venue of this Declaratory Judgment patent infringement action brought by plaintiff TouchTunes Music Corporation ("TouchTunes" or the "Plaintiff") to the United States District Court for the Northern District of Illinois, Eastern Division.  Also before the Court is Arachnid's motion to stay the proceedings pending the ex parte reexamination of certain of Arachnid's patents.

Upon the facts and conclusions which follow, both motions are denied.

While the balancing of competing interests in the resolution of § 1404(a) motions is challenging, the TouchTunes choice of forum ultimately outweighs the convenience of Arachnid.  Further, the issues presented in this action do not justify a stay of the proceedings pending the completion of the reexamination proceedings of Arachnid's patents.

## I. **PRIOR PROCEEDINGS**

This action was commenced by TouchTunes on December 20, 2007, against defendants Rowe International Corp., AMI Entertainment, Inc., and Merit Industries, Inc. (collectively, the "Rowe Defendants"), alleging infringement of several of its U.S. Patents and against Arachnid asking the Court for a Declaratory Judgment of noninfringement and invalidity of six patents owned by Arachnid (the "Arachnid patents-in-suit") relating to "computer jukeboxes."

Arachnid filed its answer and counterclaim alleging infringement of four of its patents by TouchTunes on February 15, 2008 (the "Arachnid reexamination patents"). These patents fall into two groups: one group is directed towards advertising on a digital jukebox; the other group is directed to an "attract mode" for attracting patrons to play music on the jukebox. Arachnid did not assert infringement of two of its patents (U.S. Patent Nos. 5,930,765 (the "'765 patent") and 6,191,780 (the "'780 patent")) for which TouchTunes sought declaratory judgments.

2

On April 23, 2009, the TouchTunes infringement claims were dismissed against all the Rowe Defendants.

The motion to transfer was marked fully submitted on May 27, 2009.  The motion to stay was marked fully submitted on September 9, 2009.

## II.  THE FACTS

The relevant facts are set forth in the affidavits of the parties submitted in connection with the present motions.

TouchTunes established its U.S. headquarters in New York City shortly before filing its complaint in this case (the "Complaint") in December 2007.  The Complaint alleges that TouchTunes' principal place of business is Montreal.

TouchTunes also has a significant presence in New York City.  TouchTunes' Chief Executive Officer, Charles Goldstuck, its Chief Marketing Officer and Senior Vice President for Digital Media, Ron Greenberg, its Vice President for Music and Promotions Marketing, Vicki

Saunders, and its Vice President for Corporate Marketing,
Marc Felsen are located in the New York office.  The Senior
Vice President for Sales, Dan McAllister maintains his
office in Fort Washington, Pennsylvania.

The New York office is responsible for the
marketing, sales, scheduling, logistics, and management of
promotions displayed on TouchTunes jukeboxes.  For example,
the New York office is responsible for contracting with
companies in New York to display promotions on TouchTunes
jukeboxes and is also actively engaged with other companies
in New York to establish TouchTunes jukeboxes as a media
platform, including advertising agencies, market research
firms, artists' rights firms, and charitable organizations.

The TouchTunes' DoubleClick management system for
managing the promotions presented on its jukeboxes is
located in New York City.  Documents relating to music
rights and licensing, business development, demand for
promotional capabilities, and TouchTunes' corporate
operations and transactions are also located in New York
City.

4

TouchTunes' research and developments efforts are
based in Montreal, as well as its accounting, operations
management and procurement activities.  TouchTunes'
Technical Advisor and Founder, Guy Nathan ("Nathan"),
Senior Vice President for Technology and Operations,
Michael Tooker, Vice President for Research and
Development, Dominique Dion, Vice President for Operations,
Chris Marcolefas, Chief Financial Officer, David Schwartz,
and Vice President for Sales, Steve Birrell are also
located in Montreal.

Of the 51 document categories disclosed in
TouchTunes' Rule 26(a)(1) Initial Disclosures, none are
located in the Southern District of New York.  Documents
and materials relating to research and development, design
and operation of TouchTunes' jukeboxes, jukebox market,
marketing, sales, financial matters, accounting, technical
support, music rights and licensing, manufacturing,
purchasing, warranty management, and information technology
operations, inventory management, warehousing, shipping,
and business development are located in Montreal.  Other
documents relating to sales of TouchTunes jukeboxes are
located in Fort Washington, Pennsylvania, and documents
regarding music rights and licensing may be in Nashville,

Tennessee.  Some contracts, media kits and media research
relating to the New York advertising companies are located
in Austin, Texas.

TouchTunes' potential witnesses, Nathan, Tony
Mastronardi, Hugues Clement, and Alain Choquet all reside
outside of the United States.

TouchTunes has facilities in Illinois for
warehouse, shipping, and logistics operations, some of
which are being outsourced or relocated.  Although once
regarded as TouchTunes' principal place of business in the
U.S., none of TouchTunes' witnesses are located in
Illinois.

Arachnid is located in Loves Park, Illinois, in
the Northern District of Illinois.

John R. Martin ("Martin"), the sole surviving
inventor on the Arachnid patents-in-suit and a principal of
Arachnid, resides within the Northern District of Illinois.
The inventive activity surrounding the Arachnid patents-in-
suit took place within the Northern District of Illinois,
as did the prosecution of the patents.

6

In 1995, Nathan traveled to Rockford, Illinois, in the Northern District of Illinois, to discuss a potential licensing agreement with Arachnid under the subject patents-in-suit.

On June 15 and 16, 2009, Patent and Trademark Office ("PTO") Examiner Lynne Browne (the "Examiner") issued "final" Office Actions in response to reexamination requests filed by a third-party, ECast, Inc. ("ECast"). In its Office Actions, the Examiner rejected all but two of the claims of the Arachnid reexamination patents.

## III. **VENUE IS APPROPRIATE**

### A.    **The § 1404 Factors**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding whether to transfer venue, courts examine (1) whether "the plaintiff could have brought the case initially in the proposed transferee forum;" and (2)

whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." Clarendon Nat'l Ins. Co. v. Pascual, No. 99 Civ. 10840 (JGK)(AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000) (quoting Coker v. Bank of America, 984 F. Supp. 757, 764 (S.D.N.Y. 1997)).  Section 1404(a) is intended "to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." MasterCard Int'l Inc. v. Lexcel Solutions, Inc., No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *5 (S.D.N.Y. June 16, 2004) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)) (internal quotation marks omitted).  "The conveniences should be measured at the time they are balanced, rather than at the time of the original complaint, since the court's primary concern is determining the connection between the action and the forum." Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 277 n.5 (2d Cir. 2008).

The factors that district courts in the Second Circuit consider in determining whether one venue is more convenient than another include:

> (1) the plaintiff's choice of forum, (2) the
> convenience of the witnesses, (3) the location of
> relevant documents and relative ease of access to
> sources of proof, (4) the convenience of the
> parties, (5) the locus of operative facts, (6)
> the availability of process to compel the
> attendance of unwilling witnesses, [and] (7) the
> relative means of the parties.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-07 (2d

Cir. 2006) (quoting Albert Fadem Trust v. Duke Energy

Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)).

Additional factors considered by other courts include (1)

"the forum's familiarity with governing law" and (2) "trial

efficiency and the interest of justice, based on the

totality of the circumstances." Glass v. S & M NuTec, LLC,

456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006).

Finally, "[d]istrict courts have broad discretion

in making determinations of convenience under Section

1404(a) and notions of convenience and fairness are

considered on a case-by-case basis." D.H. Blair, 462 F.3d

at 106 (citing In re Cuyahoga Equip. Corp., 980 F.2d 110,

117 (2d Cir. 1992)).

The parties concede that this action could have

been brought in the Northern District of Illinois, and

TouchTunes and Arachnid were involved in a prior lawsuit in the Northern District of Illinois in 1998 and 1999. See Arachnid, Inc. v. TouchTunes, Inc., Civil Action No. 98-3765 (N.D. Ill. 1998). Therefore, the appropriateness of a transfer of venue hinges on the convenience of the parties and their witnesses.

### B.    The Plaintiff's Choice of Forum

"[C]ourts in this circuit are loath to disturb a plaintiff's choice of forum absent a showing that 'the balance of convenience and justice weighs heavily in favor of transfer.'" Central Sports Army Club v. Arena Assocs., Inc., 952 F. Supp. 181, 189 (S.D.N.Y. 1997) (quoting Somerville v. Major Exploration, Inc., 576 F. Supp. 902, 908 (S.D.N.Y. 1983)); see also Lesser v. Wildwood, No. 01 Civ. 4209 (RWS), 2002 WL 1792039, at *3 (S.D.N.Y. Aug. 2, 2002); NBA Props., Inc. v. Salvino, No. 99 Civ. 11799 (AGS), 2000 WL 323257, at *9 (S.D.N.Y. Mar. 27, 2000); Laumann Mfg. Corp. v. Castings USA, Inc., 913 F. Supp. 712, 721 (E.D.N.Y. 1996). This is especially true where plaintiff's chosen forum is its principal place of business. See Toy Biz, Inc. v. Centuri Corp., 990 F. Supp. 328, 330 (S.D.N.Y. 1998) (citing Golconda Mining Corp. v.

Herlands, 365 F.3d 856, 857 (2d Cir. 1996); cf. 800-
Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.
Supp. 128, 135 (S.D.N.Y. 1994).

         Even where a plaintiff is not a resident of its
chosen forum, a plaintiff's choice of forum is entitled to
substantial weight where the balance of factors does not
warrant a transfer.  See, e.g., Habrout v. City of New
York, 143 F. Supp. 2d 399, 401 (S.D.N.Y. 2001) ("Though the
amount of weight accorded to Plaintiff's choice of forum is
reduced when the chosen forum is neither where Plaintiff
resides nor where the events giving rise to the action
occurred . . . Plaintiff's choice of forum nevertheless
should not be disturbed unless the balance of factors
clearly weighs in favor of a transfer.").  Further,
"[w]here there is ongoing business activity in the chosen
forum . . . plaintiff's choice of forum is given 'more
deference than it would if the connection to [the] forum
were truly de minimis.'" Kiss My Face Corp. v. Bunting,
No. 02 Civ. 2645 (RCC), 2003 WL 22244587, at *4 (S.D.N.Y.
Sept. 30, 2003) (citation omitted).

         Arachnid asserts that TouchTunes' declaratory
judgment action has little or no connection to the Southern

District of New York.  However, "[t]here is no requirement
that there must be substantial nexus between the chosen
forum and the claim for the choice of forum to receive
deference; rather there must be some material relation."
Research Found. of State Univ. of New York v. Luminex
Corp., No. 1:07-CV-1260 (GLS/RFT), 2008 WL 4822276, at *8
(N.D.N.Y. Nov. 3, 2008); see also Lesser v. Camp Wildwood,
No. 01 Civ. 4209 (RWS), 2002 WL 1792039, at *3 (S.D.N.Y.
Aug. 2, 2002) ("While it is true that the actual accident
did not occur in New York, there are a number of ties to
the state."); Race Safe Sys., Inc. v. Indy Racing League,
251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003).  Moreover,
TouchTunes' declaratory judgment claims brought against
Arachnid in this district relate directly to Arachnid's
claims of patent infringement and damages.  In addition,
TouchTunes sells its jukeboxes in this district, where
activity relating to the jukeboxes' advertising and attract
modes alleged to infringe the patents-in-suit take place.

        Plaintiff's choice of forum weighs in favor of
TouchTunes.


**The Convenience of Witnesses**

12

On June 13, 2008, TouchTunes served Arachnid with its Initial Disclosures which relied on sources of proof largely located outside of New York and many within the Northern District of Illinois.  On May 15, 2009, TouchTunes served Arachnid with "Supplemental" Initial Disclosures listing twenty-four New York residents as potential new sources of information, only one of whom had previously been disclosed to Arachnid, and other sources of evidence alleged to reside within the Southern District of New York. The new submission also omitted, without any explanation, the previously disclosed sources of proof that resided in the Northern District of Illinois or other locations outside of this District.

TouchTunes does not dispute that Arachnid's primary sources of proof and potential witnesses reside mostly within the Northern District of Illinois.  Three out of four individuals listed as potential witnesses in Arachnid's Rule 26(a)(1) Initial Disclosures reside in Rockford, Illinois, which is located within the Northern District of Illinois.  Martin, a named inventor on each of Arachnid's six patents-in-suit, created the subject invention in the Northern District of Illinois and prosecuted the patent applications in the same district.

13

In addition, he and most of the documents relating to the technology involved, liability, and the potential damages to Arachnid reside in that judicial district, along with Arachnid's corporate headquarters.

TouchTunes' key witnesses with respect to patent invalidity are located in Montreal along with all of its technical employees.  Its accused products are manufactured in Taiwan.  Based on the addresses listed on the front page of TouchTunes' patents, two of the people identified in TouchTunes' Initial Disclosures live in Rockford, Illinois (in the Northern District of Illinois), one is now deceased, one lives in Madison, Wisconsin, one lives in St. Louis, Missouri, three live in Canada, and one lives in Germany.

The principal Arachnid witnesses are in Illinois and the principal TouchTunes witnesses with respect to patent issues are in Montreal.  The distance from Montreal to New York City is nearly 400 miles, rendering an international flight necessary for witnesses traveling to either the Southern District of New York or the Northern District of Illinois.

14

The convenience of witnesses weighs in favor of Arachnid's request for a transfer.

## The Location of Documents

The location of documents tends to parallel the analysis of the convenience of witnesses and thereby weighs in favor of Arachnid.  However, "[i]n today's era of photocopying, fax machines, and Federal Express," the location of the documents is not a significant factor in the convenience analysis.  Coker, 984 F. Supp. at 766; see also Walker v. The Jon Renau Collection, Inc., 423 F. Supp. 2d 115, 118 n.3 (S.D.N.Y. 2005); Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc., No. 07-CV-1191 (LEK/DRH), 2008 WL 4890377, at *4 (N.D.N.Y. Nov. 12, 2008).

## The Convenience of the Parties

In support of its motion to transfer, Arachnid asserts a transfer of the case would eliminate the inconvenience to Arachnid of litigating away from key witnesses and other sources of proof without substantially inconveniencing TouchTunes.  Arachnid further notes that TouchTunes has engaged in two litigations in the past ten

15

years in the United States District Court for the Northern
District of Illinois without contesting the convenience of
that venue.  See Arachnid, Inc. v. TouchTunes, Inc., Civil
Action No. 98-3765 (N.D. Ill. 1998); Fairchild v.
TouchTunes, Inc., Civil Action No. 01-9699 (N.D. Ill.
2003).

        The two Illinois lawsuits, however, occurred
before TouchTunes established New York City as its U.S.
headquarters.  In the end, "given the geographical distance
between the parties, litigating this case is going to be
more inconvenient for whichever party is not located within
the chosen venue." Luminex Corp., 2008 WL 4822276, at *5;
see also Toy Biz, 990 F. Supp. at 331.  As a result,
transferring the case would merely shift the inconvenience
to TouchTunes.

        The convenience to the parties is a neutral
factor since Illinois favors Arachnid while New York favors
TouchTunes.

**Locus of Operative Facts**

16

"In an action for patent infringement, the transferee forum is the locus of operative facts if the design, development, and some of the marketing of the product allegedly infringing plaintiff's patent occurred in the transferee forum and the designers, developers, and marketers live and work in that forum." Millennium, L.P. v. Dakota Imaging, Inc., 03 Civ. 1838 (RWS), 2003 WL 22940488, at *7 (S.D.N.Y. Dec. 15, 2003) (internal quotation marks and citations omitted); see also Int'l Sec. Exch., LLC v. Chicago Bd. Options Exch., Inc., No. 06 Civ. 13445 (RMB)(THK), 2007 WL 2319128, at *3 (S.D.N.Y. Aug. 9, 2007) ("[T]he locus of operative facts usually lies where the allegedly infringing product was designed, developed, and produced." (internal quotation marks and citation omitted)).

The loci of operative events regarding the patent issues here are New York City and Montreal.  TouchTunes sells its jukeboxes in this district and engages in significant activities in connection with the promotion aspects of TouchTunes' jukeboxes in New York City. Although operative events regarding the alleged inventions of the patents-in-suit also occurred in Illinois, the significant events that have occurred in this district

17

render this consideration neutral, at best.  See Atl.
Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d
690, 697 (S.D.N.Y. 2009) ("Because both districts are loci
of operative facts, this factor is neutral in the
analysis."); Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d
189, 197 (S.D.N.Y. 2000) ("Here, this factor is neutral as
the validity and enforceability of the '275 Patent is not
geographically dependent.").

Arachnid has relied on Nathan's 1995 trip to
Rockford, Illinois as a substantial event which took place
in the Northern District of Illinois.  However, a single
meeting between principals is not determinative for
purposes of this analysis.  Arachnid has also availed
itself of this Court by asserting its infringement claims
against TouchTunes, rather than seeking to have those
claims litigated in Chicago, and has itself asserted that
this district is a proper venue for its infringement
claims.

This factor weighs in favor of TouchTunes.

**Availability of Compulsory Process**

Martin, the owner and an officer of Arachnid, is Arachnid's principal witness.  As such, the availability of compulsory process with respect to Martin is not a consideration.  See, e.g., Advanced Fiber Techs., 2008 WL 4890377, at *4; DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc., No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *5 (Dec. 4, 2007) ("The Court is reluctant to base a transfer upon the proffer of a single witness who has not objected to testifying in New York and whose testimony may be invoked solely at Defendant's option.").  Compulsory process is also not a relevant consideration for the other Arachnid employees identified in Arachnid's initial disclosures but not identified as trial witnesses.

To the extent compulsory process may be required for TouchTunes' expected trial witnesses, this district would have the power to compel the attendance of the third-party witnesses.

To the extent that availability of compulsory process is a factor, it weighs in favor of TouchTunes.

**The Relative Means of the Parties**

19

Arachnid's arguments regarding the relative means of the parties are likewise unavailing. "Although courts can consider the relative means of parties, this factor is not entitled to great weight where plaintiff and defendant are both corporations." Toy Biz, 990 F. Supp. at 331; see also Atl. Recording Corp., 603 F. Supp. 2d at 697. Furthermore, "[a] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." NBA Props., 2000 WL 323257, at *10 (citation omitted). Even when the plaintiff "has greater financing means to litigate [the] matter, the Court does not believe this factor can weigh in favor of one party or the other where the profits of both parties are significant." Virgin Enters. Ltd. v. American Longevity, No. 99 Civ. 9854 (CSH), 2001 WL 34142402, at *10 (S.D.N.Y. Mar. 1, 2001).

Arachnid has asserted that TouchTunes is better-equipped to shoulder the costs of litigation based on a recently proposed merger between TouchTunes and Victory Acquisition Corp. That merger never occurred, however, and TouchTunes did not receive the $350,000,000 cited by Arachnid. According to a Dun & Bradstreet report submitted

20

on this motion, Arachnid has a net worth of over $6
million, as well as a lower financial stress score than
TouchTunes.

    The relative means of the parties therefore does
not appear to be a significant factor in the convenience
analysis.

## The Motion to Transfer is Denied

    Here, the relative balance of the usual
convenience factors is nearly in equipoise other than the
plaintiff's choice of forum, which weighs significantly in
favor of TouchTunes in the circumstances of this case and
the relationship of the parties.  Given the overall balance
in favor of TouchTunes, the motion to transfer is denied.

## IV.  THE REQUEST FOR A STAY IS DENIED

    District courts have the inherent power to stay
proceedings pending the conclusion of a PTO patent
reexamination.  Rosco, Inc. v. Mirror Lite Co., No. CV-96-
5658 (CPS), 2007 WL 2296827, at *2 (E.D.N.Y. Aug. 6, 2007)
(citing Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27

(Fed. Cir. 1988)).  However, a district court may allow a
case to move forward while reexaminations are underway
since "the functions of the courts and the Patent Office
are very different and 'are concepts not in conflict.'"
Accent Designs, Inc. v. Jan Jewelry Designs, Inc., 1994 WL
121673, at *2 (S.D.N.Y. Apr. 6, 1994) (quoting Output Tech.
Corp. v. Dataproducts Corp., 1991 WL 332547, at *6 (W.D.
Wash. Nov. 25, 1991).  As the Federal Circuit as noted,
"[t]he two forums take different approaches in determining
invalidity and on the same evidence could quite correctly
come to different conclusions . . . .  Accordingly,
different results between the two forums may be entirely
reasonable."  Id. at *3 (quoting Ethicon, 849 F.2d at
1428).

        In determining the appropriateness of the stay,
three factors are to be considered: (1) whether a stay will
simplify the issues in question and trial of the case; (2)
the stage of the proceedings; and (3) whether a stay will
prejudice the nonmoving party.  Rosco, 2007 WL 2296827, at
*2.


**A Stay Will Not Simplify The Issues**


22

Arachnid has argued that the reexamination
proceedings will greatly simplify the issues in this case.
However, this declaratory judgment action arose from
Arachnid's assertion that all six of the Arachnid patents-
in-suit are infringed by TouchTunes.  As a result of that
assertion, TouchTunes seeks a declaratory judgment of non-
infringement and invalidity not only for the four Arachnid
reexamination patents, but also for the '780 and '765
patents not currently subject to reexamination.  Arachnid
has noted in its motion papers that it leaves open the
possibility that it will assert infringement claims against
TouchTunes based on the '780 and '765 patents.

While there exists some relationship between all
of the Arachnid patents-in-suit, the validity of the '780
and '765 patents is not tied to the outcome of Arachnid's
appeal from the Examiner's rejection of its other four
patents.  The '780 patent does not share a close technical
relationship to the patents under reexamination, does not
share common claim terms with those patents, and is
directed towards different subject matter.  Nor is it part
of the same patent family as the Arachnid reexamination
patents.  While the '765 patent is in the same family as
those patents, it is a continuation-in-part and is directed

23

to newly added subject matter that is materially different from the subject matter claimed by the reexamination patents.  Thus, even if the Examiner's rejection of the Arachnid reexamination patents is upheld, there will remain significant issues in connection with the validity of the '765 and '780 patents.

Finally, even with respect to the Arachnid reexamination patents, there is no assurance that the Examiner's rejection will be upheld with respect to all of the claims contained in the Arachnid patents-in-suit. Indeed, the Examiner, during the course of the reexamination, has already confirmed the validity of two claims contained in the Arachnid reexamination patents over the prior art.  In the event fewer than all of the claims of the Arachnid reexamination patents are found have been properly rejected by the Examiner, numerous issues, such as non-infringement, lack of written description, anticipation, and obviousness will remain with respect to the Arachnid reexamination patents.  See, e.g., Mobile Med. Int'l Corp. v. Advance Mobile Hosp. Sys., Inc., No. 2:07-CV-231, 2008 WL 1767724, at *2 (D. Vt. Apr. 15, 2008) (denying stay where issues of validity and infringement

would survive if reexamination cancelled less than all claims).

This factor therefore weighs against a stay.

## Stage of the Proceedings

As the Court has previously noted, district courts commonly deny motions to stay pending patent reexamination in cases where substantial proceedings, including discovery, have occurred. See, e.g., Accent Designs, 1994 WL 121673, at *3 n.2; Starlight Assocs. v. Berkley-Colortran, Inc., No. 77 Civ. 4525 (RWS), 1978 WL 21383 (S.D.N.Y. Sept. 12, 1978) (denying stay where discovery was reaching conclusion); Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 407 (N.D.N.Y. 1999) (denying stay two months before close of discovery). Even where a case is in its early stages of litigation, a stay should still be denied if it offers limited potential to narrow the issues in the case and the non-moving party will suffer undue prejudice by the delay. See Robbins v. H.H. Brown Shoe Co., No. 08 Civ. 6885 (WHP), 2009 WL 2170174, at *2 (S.D.N.Y. June 30, 2009).

Here, discovery is substantially completed, including the depositions of witnesses and the exchange of approximately 750,000 pages of documents and electronic files.  The parties have also completed claim construction briefing.  Given the stage of the proceedings, a stay will not serve to preserve judicial resources.

**Prejudice to TouchTunes**

Although the Examiner issued a final rejection of the four Arachnid patents under reexamination, Arachnid is entitled to, and is pursuing, an appeal from that rejection before the Board of Patent Appeals and Interferences ("BPAI").  Although Arachnid has noted the relatively short period of time required thus far for the reexamination process before the PTO (16 months), it offers no support for its suggestion that the appeal will proceed with similar dispatch.  Moreover, if Arachnid is unsuccessful in its reexamination appeal before the BPAI, it may either appeal directly to the Court of Appeals for the Federal Circuit, 35 U.S.C. § 141, or file a new civil action in the United States District Court for the District of Columbia against the Director of the PTO, the outcome of which is itself appealable to the Federal Circuit.  35 U.S.C. § 145;

26

28 U.S.C. § 1295.  As another court has previously noted, "[n]o one can predict the outcome or the timing of these proceedings."  Power Integrations v. Fairchild Semiconductor Int'l, Inc., Civ. No. 08-309-JJF-LPS, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008).

TouchTunes initiated this litigation by seeking a declaration of the invalidity of Arachnid's patents.  "The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 956 (Fed. Cir. 1987).  As the Federal Circuit has explained:

> [A] patent owner . . . attempts extra-judicial enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity . . . .  Before the Act, competitors . . . were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue.  After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1346
(Fed. Cir. 2005) (quoting Arrowhead Indus. Water, Inc. v.
Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988),
overruled on other grounds by MedImmune, 549 U.S. 118).

        A stay of the proceedings pending the resolution
of Arachnid's appeal from the Examiner's final rejection of
its reexamination patents would serve to maintain the cloud
of litigation over TouchTunes' business and thus prejudice
TouchTunes by perpetuating the very harm that its
declaratory judgment action is designed to address.  This
is of particular concern in light of the extended period of
time that would likely be required to resolve Arachnid's
appeal of the Examiner's rejection, the possibility that
Arachnid will successfully overturn the Examiner's final
rejection of the Arachnid reexamination patents, and the
fact that the reexamination proceedings would, at best,
serve to invalidate only four of the six Arachnid patents
that are the subject of TouchTunes' declaratory judgment
action.  In light of the prejudice that would result to
TouchTunes, a stay is not appropriate.  See Rosco, 2007 WL
2296827, at *3 (denying stay where a delay in the legal
proceedings could adversely affect nonmovant's business);
see also E.I. DuPont de Nemours & Co. v. Phillips Petroleum

<u>Co.</u>, 711 F. Supp. 1205, 1208 n.9 (D. Del. 1989) ("[T]his Court will not employ its discretion to stay the ordinary court of its proceedings simply because the outcome of the Patent Office *may* moot the issues . . . ." (emphasis in original)).

## V.   CONCLUSION

The motions of Arachnid to transfer this action to the United States District Court for the Northern District of Illinois and to stay the proceedings pending reexamination of its patents are denied.

It is so ordered.

New York, NY
December $\chi$ , 2009

ROBERT W. SWEET
U.S.D.J.