**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOUCHTUNES MUSIC CORP., <br><br> Plaintiff, <br><br> v. <br><br> ROWE INTERNATIONAL CORP., ARACHNID, INC., AMI ENTERTAINMENT, INC. and MERIT INDUSTRIES, INC. d/b/a/ MERIT ENTERTAINMENT, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Civil Action No. 07-cv-11450-RWS |

**REPLY MEMORANDUM IN SUPPORT OF TOUCHTUNES'**
**MOTION FOR SUMMARY JUDGEMENT OF NONINFRINGEMENT**

1636753

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................................1

II. Arachnid's Attempt to Withdraw Its "Studio Quality" Admission is Irrelevant .................2

III. Arachnid Cannot Ignore the Arguments It Made to the Patent Office ...............................3

IV. Arachnid Cannot Rewrite The Prosecution Histories Using Extrinsic Evidence ...............4

V. Mr. Strawn's Opinion on "Studio Quality" is Irrelevant .....................................................6

VI. The Size-per-Minute Disclaimer is Consistent with the Specifications .............................7

VII. The Unrebutted Tooker and Ramone Declarations Support the Motion ............................8

VIII. TouchTunes' Invalidity Contentions are Irrelevant to this Motion ....................................8

IX. Arachnid is Estopped from Asserting Infringement under DOE ........................................9

X. The Motion is Dispositive of All Claims of the '189, '575, '398 and '834 Patents ............9

XI. Conclusion ........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)......................................................................................6

*Digital Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998)......................................................................................9

*In re Buspirone Patent Litigation*,
    185 F. Supp. 2d 340 (S.D.N.Y. 2002)......................................................................... 7-8

*JSR Corp. v. Tokyo Ohka Kogyo Co., Ltd.*,
    Nos. C 99-20156 JW, 403, 369, 400, 2001 WL 1812378 (N.D. Cal. Sept. 13, 2001) ........2

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)...................................................................................5, 7

*Seachange International, Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005).................................................................................2, 5, 9

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)........................................................................................1

*Springs Window Fashions LP v. Novo Industries, L.P.*,
    323 F.3d 989 (Fed. Cir. 2003).................................................................................3, 4, 10

*Verizon Services Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007)......................................................................................5

I. **Introduction**

Arachnid has admitted every material fact necessary to grant TouchTunes' motion for summary judgment. Exhibit A[1] contains statements of fact admitted by Arachnid that clearly and unambiguously establish the following:

1) Arachnid repeatedly told the Patent Office that a critical feature of its claimed invention requires "storing, accessing and playing studio-quality audio."[2]

2) Arachnid repeatedly relied on the Declaration of Mr. Rice, when distinguishing the prior art, to establish that a song must have a size-per-minute of at least 10MB to qualify as studio quality audio.[3]

3) TouchTunes' MP3-128 music has a size-per-minute of only 0.94MB.[4]

The admitted facts establish a clear disclaimer of subject matter from the scope of the asserted claims. More particularly, the admissions establish that, as a matter law, a jukebox cannot infringe any claim of the asserted patents unless it stores, accesses and plays songs having a size-per-minute of at least 10MB. It is fundamental patent law that a patentee cannot rely on a feature to distinguish the prior art and obtain a patent, and then ignore that feature when asserting infringement. *See, e.g.*, *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."). However, this is exactly what Arachnid is asking this Court to do in its opposition to TouchTunes' summary judgment motion.

Arachnid has admitted that an MP3-128 audio file, which is the only song type used in all of TouchTunes' accused jukeboxes, has a size-per-minute of only 0.94MB.[5] It cannot be disputed that 0.94MB is less than 1/10th of the 10MB minimum size-per-minute required by Arachnid's own sworn statements to the Patent Office. Notwithstanding its disclaimer of

---

[1] All exhibits cited herein are attached to the accompanying Declaration of James S. Blank ("Blank Decl.").

[2] *See, e.g.*, Exhibit A at TouchTunes' Statements of Fact ("SMF") ¶¶ 34, 46-48, 69-71, 146.

[3] *See, e.g.*, Exhibit A at SMF ¶¶ 45-47, 50, 52, 66, 69, 70, 73, 75, 100, 107, 109, 124, 126, 138, 143, 146; Defendant Arachnid's Supp. Claim Construction Br. at 7-8 (Balnk Decl., Exhibit B).

[4] *See, e.g.*, Exhibit A at SMF ¶ 193.

[5] *See, e.g.*, Exhibit A at SMF ¶ 193; *see also* Exh. 28 to Arachnid's "Local Rule 56.1 Statement of Material Facts" at 131; Exh. 32 to March 19, 2010 Declaration of Jonathon Reavill at 29-30, 64.

anything less than 10MB, Arachnid wants this Court to find that its claims cover audio files having a size-per-minute of only 0.94MB.  Arachnid cannot be allowed to maintain its infringement allegations under these circumstances.  In view of the disclaimer, TouchTunes jukeboxes cannot, as a matter of law, infringe any claim of Arachnid's patents.  *See, e.g.*, *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1372-75, 1378 (Fed. Cir. 2005).  Based on the admitted facts in Exhibit A, summary judgment of noninfringement should be granted for all claims of the '189, '575, '398 and '834 patents.

## II. Arachnid's Attempt to Withdraw Its "Studio Quality" Admission is Irrelevant

In August 2009, Arachnid proposed a construction of "song," consistent with its patentability arguments to the Patent Office, as an apparent defense to TouchTunes' claims for patent invalidity.  Arachnid represented to the Court that "[t]he parties agree that the proper construction for 'song(s)' is a studio-quality musical recording."[6]  Now, in an effort to avoid summary judgment of noninfringement, Arachnid finds itself running from that admitted construction.  Arachnid should be precluded from changing this agreed claim construction, as it has been relied on by TouchTunes and is fully supported by the prosecution histories.  For example, the court in *JSR Corp. v. Tokyo Ohka Kogyo Co., Ltd.*, Nos. C 99-20156 JW, 403, 369, 400, 2001 WL 1812378, at *5 (N.D. Cal. Sept. 13, 2001), held:

> The Court is not inclined to alter a stipulated claim construction that has been operative for nine months simply because JSR has, upon receipt of TOK's summary judgment motion, recognized that its prior attempt to construe the claim scope broadly inevitably leads to a holding of invalidity in view of the prior art.

However, regardless of whether the Court holds Arachnid to its "studio quality" admission, the result is the same.  In view of the admitted statements set forth in Exhibit A, songs having a size-per-minute of less than 10MB are excluded from the scope of the claims, whether or not the construction of the term "song" expressly includes the "studio quality" language.  In other words, Arachnid's disclaimer during prosecution makes it impossible, as a matter of law, for a song

---

[6] Arachnid's Opening Claim Construction Mem. at 7 (footnote omitted) (emphasis in original) (attached as Exh. 11 to the March 19, 2010 Declaration of Jonathon Reavill); *see also* Exhibit A at SMF ¶ 11.

- 2 -

having a size-per-minute of less than 10MB to infringe any of the asserted claims. Arachnid's attempt to renege on its admission of "studio quality" does not affect the disclaimer.

### III. Arachnid Cannot Ignore the Arguments It Made to the Patent Office

"The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent." *See, e.g.*, *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003). While Arachnid argues here that it never made statements about a required size for the claimed songs, its arguments to the Patent Office tell a very different story. Arachnid repeatedly distinguished the prior art on the basis that its claimed invention used "studio-quality audio."[7] Arachnid even repeatedly told the Patent Office that "a large capacity memory for storing, accessing and playing studio-quality audio" was "critical" to its claimed invention.[8] In fact, Arachnid made this same "studio quality" argument to the Patent Office at least eight times to distinguish its claimed invention from the prior art.[9]

Arachnid admits that it made these statements to the Patent Office (and that "every statement it made in its Reexamination histories is accurate"), but nevertheless asserts that the statements merely provided background information and were not meant to refer to the claimed invention. That assertion is directly contrary to the statements themselves. For example, Arachnid argued that the "large capacity memory for storing, accessing and playing studio-quality audio" corresponded "to various claim elements of the various patents under reexamination" and that its claims were patentable over the prior art because a person skilled in the art would not have thought of "integrating these components together into a single computerized device in 1992."[10] Arachnid's supplemental claim construction brief confirms that the statements were made to distinguish the prior art.[11]

---

[7] *See, e.g.*, Exhibit A at SMF ¶¶ 34, 46-48, 69-71, 146.
[8] *See, e.g.*, Exhibit A at SMF ¶¶ 48, 71.
[9] *See, e.g.*, Exhibit A at SMF ¶¶ 34, 46-48, 69-71, 146.
[10] *See, e.g.*, Exhibit A at SMF ¶¶ 34, 46-48, 66, 69-71, 100, 146.
[11] *See* Exhibit B at 7-8.

Also at odds with Arachnid's arguments to the Patent Office is its assertion that the original Rice declaration itself was not meant to describe or limit the claimed invention. More particularly, Arachnid has repeatedly represented to the Patent Office that:

> The Rice Declaration <u>discusses numerous topics that have a nexus to the claimed invention</u>. The Rice Declaration <u>discusses limitations of the claimed invention</u> and highlights claimed elements that would not have been integrated into a single computerized mechanism in 1992….The Rice Declaration also discusses how a person or [sic] ordinary skill in the art would not have combined features to arrive at <u>the claimed inventions</u>…and thus provides <u>a further nexus to the claimed invention</u>….Accordingly, the Rice Declaration is effective, and the Examiner should be required to address the merits of Mr. Rice's statements regarding what a person of skill in the art in 1992 would have understood about jukeboxes, karaoke machines, <u>song data</u>, and graphics."[12]

Regardless of how the Examiner viewed the original Rice declaration, the statements in that declaration still act as a disclaimer of all songs that do not have a size-per-minute of at least 10MB. *See, e.g.*, *Springs Window Fashions*, 323 F.3d at 995 ("[T]he examiner's remarks do not negate the effect of the applicant's disclaimer.").

Arachnid also wrongly asserts that it never argued that studio quality audio had any minimum size-per-minute requirement. Arachnid repeatedly distinguished the prior art based on the statement in the sworn Rice declaration that "a complete song of studio quality would have <u>required</u> at least (even for a short song) about 30MB of computer storage space <u>because</u> a stereo CD audio converted to a WAV file takes around <u>10MB per one minute of stereo sound</u>."[13] Arachnid's argument that this definition was only meant to be an "example" lacks support in the prosecution histories. Indeed, Arachnid expressly relied on the size-per-minute requirement defined in Paragraph 10 of Mr. Rice's declaration at least eight times when distinguishing the prior art.[14]

### IV. Arachnid Cannot Rewrite the Prosecution Histories Using Extrinsic Evidence

Arachnid also attempts to rewrite the prosecution history of its patents using the expert

---

[12] Exhibit A at SMF ¶¶ 66, 100 (emphasis added).

[13] *See, e.g.*, Exhibit A at SMF ¶¶ 50, 52, 73, 75, 107, 109, 124, 126, 143 (emphasis added); *see also* Exhibit B at 7-8.

[14] *See, e.g.*, Exhibit A at SMF ¶¶ 50, 52, 73, 75, 107, 109, 124, 126, 143; *see also* Exhibit B at 7-8.

declaration of Mr. Strawn and a new declaration from Mr. Rice. Both of these extrinsic declarations conflict with the intrinsic record and must be disregarded. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("[A] court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'"). While Mr. Strawn and Mr. Rice now argue that the original Rice declaration was only background information not meant to limit the claims, the prosecution history flatly contradicts their positions. In fact, Arachnid made perfectly clear that the Rice declaration "discusse[d] limitations of the claimed invention" and did in fact "have a nexus to the claimed invention."[15] Arachnid's attempt to use extrinsic evidence to recast the prosecution history arguments to eliminate Arachnid's disclaimer of sizes-per-minute less than 10MB must be rejected as directly contrary to the public record. *See Phillips*, 415 F.3d at 1318.

Moreover, Arachnid expressly admitted to this Court that "Mr. Rice was distinguishing <u>the invention</u> from the state of the art up until the point of the invention," not simply providing a general background discussion, as Mr. Rice now claims in his new declaration.[16] This admission is sufficient on its own to find that Arachnid clearly and unambiguously disclaimed coverage over any jukebox that does not use songs having a size-per-minute of at least 10MB. It is basic patent law that when a patentee distinguishes his invention from the prior art based on a particular feature, he has disclaimed coverage of any device that does not include that feature. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307 (Fed. Cir. 2007). Here, Arachnid expressly admitted in its Supplemental Claim Construction brief that it used the original Rice declaration (including, specifically, Mr. Rice's size-per-minute definition) to distinguish its claimed invention from the prior art.[17] Thus, Arachnid is barred from asserting infringement by any product that does not include songs having a size-per-minute of at least

---

[15] *See, e.g.*, Exhibit A at SMF¶¶ 66, 100, 116, 134.
[16] Exhibit B at 8 (emphasis added).
[17] *See* Exhibit B at 7-8.

10MB. *See, e.g.*, *Seachange*, 413 F.3d at 1378.

Arachnid now argues, using the Strawn declaration and new Rice declaration, that Arachnid disclaimed all songs during prosecution that are not "suitable for commercial distribution." This argument is irrelevant. TouchTunes' motion is based on admitted statements from the prosecution history that disclaim songs having sizes-per-minute less than 10MB. Whether or not Mr. Strawn and Mr. Rice can identify statements in the prosecution history disclaiming songs that are not suitable for commercial distribution, the fact still remains that Arachnid disclaimed songs having a size-per-minute of less that 10MB. *See, e.g.*, *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1377 (Fed. Cir. 2008) ("[A] disavowal, if clear and unambiguous, can lie in a single distinction among many.").

Moreover, Arachnid's assertion that it distinguished the karaoke prior art on the basis that the claimed invention required "recorded" songs "suitable for commercial distribution" makes no sense. Obviously, the songs stored on a karaoke machine are recorded songs and are commercially distributed. Otherwise, the songs would not exist on the karaoke machine. Thus, this hindsight attempt to recast the patentability arguments made to the Patent Office is baseless, as Arachnid's new spin on its prosecution history arguments would clearly fail to distinguish even karaoke songs.

In any event, Arachnid cannot avoid its size-per-minute disclaimer by pointing to other arguments that limited the claims in other ways. *See id.* at 1377. TouchTunes' motion is based specifically and exclusively on the size-per-minute disclaimer regarding the claimed songs and "studio quality," and any other disclaimers that may exist in the file histories are irrelevant to this motion.

## V.    Mr. Strawn's Opinion on "Studio Quality" is Irrelevant

Arachnid relies on Mr. Strawn's elaborate explanation of what he contends the term "studio quality" means to a person skilled in the art. However, Arachnid has admitted that it acted as its own lexicographer in the prosecution history of its patents regarding the phrase "studio quality." Arachnid Br. at 5. Thus, extrinsic evidence, such as declarations, dictionaries, technical treatises,

etc., regarding the ordinary meaning of a claim term is simply irrelevant. The only thing relevant to this issue is the admitted definition provided by Arachnid in the file history. Mr. Rice explained unequivocally in his declaration, submitted in all four reexaminations of the asserted patents, that a studio quality song requires at least 10MB per one minute of stereo sound.[18] Moreover, Arachnid has admitted that it relied on Mr. Rice's 10MB-per-minute definition at least eight times when distinguishing the prior art.[19] Mr. Strawn's extrinsic declaration cannot undo these facts and change the patents' public record. *See Phillips*, 415 F.3d at 1318. Furthermore, although Mr. Strawn claims that the size of a song file is unrelated to the quality of the song, Arachnid admits that it took the exact opposite position in the Chicago litigation, where it stated that:

> One of ordinary skill would know that there are trade-offs relating to the use of compression (i.e., the sacrifice of quality for download speed, and visa versa), and that those trade-offs may not be acceptable to the hypothetical one of ordinary skill."[20]

## VI. The Size-per-Minute Disclaimer is Consistent with the Specifications

The patent specifications' discussion of audio compression fails to overcome Arachnid's size-per-minute disclaimer. Limiting the claimed "songs" to studio quality songs having a size-per-minute of at least 10MB does not prevent the use of compression as taught in the specification. For example, Mr. Ramone explained that studio quality recordings can have a size-per-minute of up to 66MB.[21] Compression can therefore be used on a song and still fall within the claim scope as long as, in accordance with Mr. Rice's declaration, the compression does not reduce the size-per-minute below 10MB. Thus, contrary to Arachnid's arguments, the disclaimer is in no way inconsistent with the teachings of the specifications and does not exclude the preferred embodiments. Moreover, regardless of what the specifications teach, a clear and unambiguous disclaimer in the prosecution history, as present here, overrides the specification

---

[18] *See, e.g.*, Exhibit A at SMF ¶ 143; *see also id.* at SMF ¶¶ 33, 34, 138, 146.
[19] *See, e.g.*, Exhibit A at SMF ¶¶ 50, 52, 73, 75, 107, 109, 124, 126.
[20] Exhibit A at SMF ¶ 181.
[21] Ramone Decl. ¶ 11; *see also* Exhibit A at SMF ¶ 164.

and limits the invention as a matter of law. *See In re Buspirone Patent Litig.*, 185 F. Supp. 2d 340, 354 (S.D.N.Y. 2002) ("Facts from a prosecution history can be so critical to claim construction that they can trump otherwise clear language in a claim or specification.").

### VII. The Unrebutted Tooker and Ramone Declarations Support the Motion

Arachnid also argues that Mr. Tooker and Mr. Ramone's opinions are not credible because they did not read all of the patents or file histories in this case. Arachnid has entirely missed the point of these declarations. Unlike the Strawn and new Rice declarations, neither Mr. Tooker nor Mr. Ramone are opining about how the Court should interpret the claims or prosecution history. Instead, Mr. Tooker simply establishes the unrebutted fact that all of the accused products use MP3-128 audio files having a size-per-minute of 0.94MB. Mr. Ramone simply confirms the definition provided in Mr. Rice's original declaration and provides additional evidence that an MP3-128 audio file cannot be considered studio quality under that definition. Thus, there was no reason for either Mr. Ramone or Mr. Tooker to have read the patents or file histories in connection with their declarations. In fact, as it cannot be disputed that 0.94MB is less than $1/10^{th}$ of 10MB, the Ramone declaration is not even needed to establish noninfringement. Moreover, Arachnid's assertion – based on incomplete and out-of-context statements – that Mr. Ramone recanted the statements in his declaration simply ignores Mr. Ramone's actual, complete testimony.

### VIII. TouchTunes' Invalidity Contentions are Irrelevant to this Motion

Arachnid's argument regarding TouchTunes' invalidity contentions is also flawed. TouchTunes expressly advised Arachnid that its invalidity contentions were based on the broad claim scope being applied by Arachnid to extend the claims to TouchTunes' products.[22] As a result, the invalidity contentions are not, as Arachnid argues, an admission by TouchTunes that the size-per-minute disclaimer can be disregarded. It is a fundamental characteristic of all invalidity contentions to use a broad claim scope that corresponds to the infringement

---

[22] *See* Exh. 28 to Arachnid's "Local Rule 56.1 Statement of Material Facts" at 40.

contentions of the patentee. In other words, TouchTunes' invalidity contentions cite prior art that will invalidate the claims under a construction that Arachnid asserts covers TouchTunes' products. Because Arachnid is asserting that its patents cover MP3-128 audio files, TouchTunes has cited prior art showing that the patents would be invalid if interpreted so broadly. Arachnid's argument ignores this most basic feature of all invalidity contentions and is erroneous.

### IX. Arachnid is Estopped from Asserting Infringement under DOE

Also baseless is Arachnid's argument that, even if its disclaimer precludes literal infringement, it still has a case of infringement under the Doctrine of Equivalents ("DOE"). Any alleged infringement by TouchTunes under the DOE is barred by argument-based estoppel. More particularly, it is fundamental patent law that Arachnid is estopped from expanding its claims under DOE to cover subject matter that it disclaimed by arguments made in support of patentability. *See, e.g.*, *Seachange*, 413 F.3d at 1372-75, 1378. Thus, Arachnid's DOE case fails for the same reason it cannot prevail on literal infringement, *i.e.,* its patentability argument to the Patent Office disclaimed songs having a size-per-minute of less than 10MB. Estoppel prevents the use of the DOE to overcome such disclaimers. *See, e.g.*, *id.*

### X. The Motion is Dispositive of All Claims of the '189, '575, '398 and '834 Patents

In view of the recent order granting Arachnid's motion to add a counterclaim alleging infringement of the '780 patent, TouchTunes agrees that the motion is no longer completely case-dispositive. However, this motion is certainly dispositive of all claims in all four of the patents to which this motion is directed, notwithstanding Arachnid's argument that certain asserted claims do not explicitly recite the "song" limitation. More particularly, Arachnid's unrestrained definitional statements during reexamination operate as a disclaimer for all claims of all four patents. *See, e.g.*, *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998). Moreover, every claim either includes the "song" limitation directly and/or includes the "song" limitation indirectly through the term "computer jukebox." Indeed, Arachnid has admitted that the term "computer jukebox" is "a stand-alone unit operable solely by a patron, including a money intake unit, that plays and is capable of playing <u>songs</u>, as that term is used

- 9 -

herein."[23]  Thus, the "song" limitation is a fundamental requirement of every claim in all four of the patents that are the subject of this motion.  If the Court agrees with TouchTunes' position on the term "song," that definition is automatically incorporated into the term "computer jukebox," as well.  Arachnid's argument to the contrary is simply not credible, as it ignores the claim language, the definitions of "computer jukebox" submitted to the Court by both parties, and the prosecution histories.  *See, e.g.*, *Springs Window Fashions*, 323 F.3d at 994-96.

## XI.  Conclusion

In short, none of Arachnid's arguments or declarations can overcome the admissions in Exhibit A establishing that Arachnid clearly and unambiguously limited its invention to studio quality songs, which it defined as having a size-per-minute of at least 10MB.  As TouchTunes has established through at least the unrebutted declaration of Mr. Tooker, the songs it uses on all of the accused jukeboxes come nowhere close to (less than $1/10^{th}$) the size-per-minute requirement of all of Arachnid's claims.  Thus, there are no material facts in dispute, and summary judgment of noninfringement is appropriate.

Respectfully submitted,

Date:  May 24, 2010            By:    /s/ James S. Blank
                                      James S. Blank
                                      **KAYE SCHOLER LLP**
                                      425 Park Avenue
                                      New York, New York  10022-3589
                                      Tel:  (212) 836-8000
                                      Fax:  (212) 836-8689
                                      E-mail:  jblank@kayescholer.com

                                      Joseph S. Presta
                                      E-mail:  jsp@nixonvan.com
                                      Jonathon T. Reavill
                                      E-mail:  jtr@nixonvan.com
                                      **NIXON & VANDERHYE, P.C.**
                                      901 North Glebe Road, 11th Floor
                                      Arlington, Virginia  22203
                                      Tel:  (703) 816-4000
                                      Fax:  (703) 816-4100

---

[23] Patentee Arachnid, Inc.'s Post-Hearing Claim Construction Chart (Blank Decl., Exhibit C) at 3 (emphasis added); *see also* Exhibit A at SMF ¶¶ 10, 11.

*Attorneys for Plaintiff*
*TOUCHTUNES MUSIC CORP.*

- 11 -