# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOUCHTUNES MUSIC CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>ROWE INTERNATIONAL CORP.,<br>ARACHNID, INC., AMI<br>ENTERTAINMENT, INC. AND MERIT<br>INDUSTRIES, INC.,<br><br>        Defendants. | Civil Action No. 07 CV 11450 (RWS) |
| ARACHNID, INC.,<br><br>        Counterclaim Plaintiff,<br><br>    against<br><br>TOUCHTUNES MUSIC CORP.,<br><br>        Counterclaim Defendant. | |

## DEFENDANT ARACHNID, INC.'S RESPONSE TO
## TOUCHTUNES' MOTION TO AMEND ITS COMPLAINT

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ...........................................................................................2

II. INEQUITABLE CONDUCT PLEADING REQUIREMENTS ............................................5

III. THE COURT HAS DISCRETION TO DENY TOUCHTUNES' RULE 15 MOTION..................................................................................................7

IV. TOUCHTUNES' NEW IEQ ALLEGATIONS ARE FUTILE ............................................7

    A. No Evidence Exists That Arachnid Acted With Specific Intent To Deceive ........................................................................................9

    B. There Is No But-For Materiality in TouchTunes' Proposed Pleading...........................................................................................11

    C. TouchTunes Does Not Identify A Single False Statement Of Fact That Could Give Rise To A Claim For IEQ .........................................14

V. TOUCHTUNES' MOTION WAS FILED IN BAD FAITH..............................................18

VI. TOUCHTUNES MOTION IS UNTIMELY ................................................................20

VII. THE MOTION TO AMEND SHOULD ALSO BE DENIED BECAUSE NEW CLAIM 8 WAS FILED IN BAD FAITH AND IT IS FUTILE................................21

    A. TouchTunes Filed Proposed Claim 8 In Bad Faith.................................22

    B. Newly Proposed Claim 8 Is Futile .......................................................22

VIII. ARACHNID IS ENTITLED TO ITS FEES AND COSTS FOR BEING REQUIRED TO RESPOND TO TOUCHTUNES' MOTION ...........................................24

IX. CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
    808 F.2d 1471 (Fed. Cir. 1986)........................................................................ 18, 20

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
    49 F.3d 1575 (Fed. Cir. 1995)............................................................................ 1

*Bayer Schering Pharma AG v. Barr Labs., Inc.*,
    No. 05-cv-2308, 2008 U.S. Dist. LEXIS 15917 (D.N.J. Mar. 3, 2008),
    *aff'd*, 575 F.3d 1341 (Fed. Cir. 2009) ............................................................... 18

*Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*,
    910 F. 2d 804 (Fed. Cir. 1990)........................................................................ 23

*Deere v. Goodyear Tire & Rubber Co.*,
    175 F.R.D. 157 (N.D.N.Y. 1997) ..................................................................... 7

*Desantis v. Roz-Ber*, Inc.,
    51 F. Supp. 2d 244 (E.D.N.Y. 1999) ............................................................... 7

*Ex parte Frye*,
    Appeal 2009-006013, 2010 Pat. App. LEXIS 15858 (BPAI Feb. 26,
    2010) ............................................................................................................... 10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)................................................................ 6, 13, 21

*Foman v. Davis*,
    371 U.S. 178 (1962)........................................................................................ 7

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*,
    464 F.3d 1339 (Fed. Cir. 2006)........................................................................ 8

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*,
    863 F.2d 867 (Fed. Cir. 1988 ....................................................................... 8, 12

*Lee v. Regal Cruises*,
    916 F. Supp. 300 (S.D.N.Y. 1996) ................................................................... 8

*Life Techs., Inc. v. Clontech Lab., Inc.*,
    224 F.3d 1320 (Fed. Cir. 2000)............................................................ 15, 17, 18, 20

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*,
    157 F.3d 956 (2d Cir. 1998)............................................................................ 7

*Milanese v. Rust-Oleum Corp.*,
    244 F.3d 104 (2d Cir. 2001)............................................................................ 8

*Northern Telecom, Inc. v. Datapoint Corp.*,
    908 F.2d 931 (Fed. Cir. 1990) ........................................................................ 19

*Oliveri v. Thompson*,
    803 F. 2d 1265 (2d Cir. 1986) ........................................................................ 26

*Park B. Smith, Inc. v. CHF Indus.*,
    06 Civ. 869, 2011 U.S. Dist. LEXIS 74696 (S.D.N.Y.  Jul. 12, 2011) ............ 21

*Passlogix, Inc. v. 2FA Tech., LLC*,
    708 F. Supp. 2d 378 (S.D.N.Y. 2010) ........................................................... 19

*Rohm & Haas Co. v. Crystal Chem. Co.*,
    722 F.2d 1556 (Fed. Cir. 1983) ............................................................... 15, 19

*SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*,
    718 F.2d 365 (Fed. Cir. 1983) ........................................................... 23, 24, 25

*The Youngbloods v. BMG Music*,
    07 Civ. 2394, 2011 U.S. Dist. LEXIS 1585 (S.D.N.Y. Jan. 6, 2011) .............. 19

*Therasense, Inc. v. Becton, Dickson & Co.*,
    99 U.S.P.Q.2d 1065, 2011 U.S. App. LEXIS 10590 (Fed. Cir. May 25,
    2011) ........................................................................................................ passim

*Young v. Lumenis*,
    492 F.3d 1336 (Fed. Cir. 2007) .............................................. 15, 17, 18, 20

**STATUTES**

28 U.S.C. § 1927 ................................................................................................ 2, 24

35 U.S.C. § 102 ...................................................................................................... 19

35 U.S.C. § 106 ...................................................................................................... 10

35 U.S.C. § 301 ...................................................................................................... 10

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure § 1214.04 ................................................. 5

Manual of Patent Examining Procedure § 2001.4 ................................................... 4

Manual of Patent Examining Procedure § 2202 ................................................. 4, 21

Manual of Patent Examining Procedure § 609.05(b) ............................................... 5

**RULES**

37 C.F.R. § 1.555 .................................................................................................... 4

37 C.F.R. § 1.97 ...................................................................................................... 4

37 C.F.R. § 1.98 ...................................................................................................... 4

37 C.F.R. § 550 ......................................................................................................... 10

37 C.F.R. §§ 1.501-570 ...................................................................................... 4, 10, 21

37 C.F.R. §§ 41.1 - 41.54 ..................................................................................... 10, 21

Fed. R. Civ. P. 15 ...................................................................................................... 7

TouchTunes' Motion To Amend its Complaint ("Motion") is just another vexatious litigation tactic by TouchTunes, in this nearly four-year-old declaratory judgment patent infringement case.  The newly proposed pleadings in TouchTunes' proposed Amended Complaint have no merit whatsoever.

TouchTunes proposes to allege a new claim for inequitable conduct ("IEQ") regarding Arachnid's "computer jukebox patents," U.S. Patent Numbers 5,848,398 and 6,970,834.  *See* Dkt. No. 202-1 (proposed Am. Compl.), at Claim 7.  TouchTunes also proposes to add a new claim for "infectious unenforceability" of Arachnid's U.S. Patent Number 6,191,780, which claims devices for displaying customized advertisements, as an extension of the alleged IEQ based on the computer jukebox patents.[1]  *See id.*, at Claim 8.

The *en banc* Federal Circuit Court of Appeals recently "tighten[ed] the standards for [IEQ] in order to redirect a doctrine that has been overused to the detriment of the public." *Therasense, Inc. v. Becton, Dickinson & Co.*, No. 2008-1511, 99 U.S.P.Q.2d 1065, 2011 U.S. App. LEXIS 10590, at *32 (Fed. Cir. May 25, 2011) (*en banc*).  TouchTunes' spurious Motion and proposed new allegations provide a very good example of why that court tightened the standards, and stated:

> Inequitable conduct "has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system." *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed. Cir. 1984).
>
> Inequitable conduct disputes . . . "increas[e] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost."  Brief and Appendix of the American Bar Ass'n as Amicus Curiae at 9.
>
> [I]nequitable conduct charges cast a dark cloud over the patent's validity and paint the patentee as a bad actor. . . . it discourages settlement and deflects attention from the merits of validity and infringement issues.
>
> Left unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system.  Because allegations of inequitable conduct are routinely brought on "the slenderest grounds," *Burlington Indus.*, 849 F.2d at 1422, patent prosecutors constantly confront the specter of inequitable conduct charges.  * * *  "Applicants disclose too much prior art for the PTO to

---

[1] Claims for IEQ are equitable in nature.  *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1584 (Fed. Cir. 1995).  As such, IEQ claims must be heard and decided by the Court.  Any claim for IEQ will not go to the jury.  *Id.*

meaningfully consider, and do not explain its significance, all out of fear that to do otherwise risks a claim of inequitable conduct."  ABA Section of Intellectual Property Law, A Section White Paper: Agenda for 21st Century Patent Reform 2 (2009).

*Therasense*, 2011 U.S. App. LEXIS 10590, at *27-31.[2]

Like the vast majority of cases before this one alleging IEQ, TouchTunes' proposed new pleadings have no merit.  TouchTunes' proposed new Complaint just adds to the plague of IEQ allegations routinely made in patent cases.  TouchTunes' Motion to add new, totally unsupportable IEQ claims to this nearly four-year-old case should be denied as futile.

TouchTunes' Motion was also filed in bad faith, as demonstrated below.  The Motion should be denied for that independent reason alone.  TouchTunes' Motion is also untimely, and unduly prejudicial to Arachnid.  The Motion should be denied for that independent reason, as well.

Arachnid also requests that the Court award Arachnid its attorneys fees incurred for having to reply to TouchTunes' misguided and unsupportable Motion.  *See* 28 U.S.C. § 1927.

## I.    BACKGROUND

TouchTunes filed this Declaratory Judgment patent infringement case against Arachnid in 2007 -- almost four years ago.  As this Court is well aware, TouchTunes has, since day one, delayed and obfuscated discovery and delayed nearly every aspect of this proceeding.  *See, e.g.,* Dkt. No. 58 (TouchTunes counsel adding irrelevant, random New York-based alleged "witnesses" to its Rule 26 disclosures to defeat a motion to transfer venue); Dkt. No. 99 (Arachnid motion to compel); Dkt. No. 109 (Order requiring TouchTunes to certify discovery responses); Dkt. No. 120-125 (TouchTunes' belated claim construction memorandum disguised as a summary judgment motion, and declaration of "expert witness" that recanted his opinions during his deposition); Dkt. No. 158 (Arachnid motion to compel); Dkt. No. 179 (Arachnid motion to compel).  TouchTunes' current Motion appears to be yet another delay tactic.

This case involves five United States patents owned by Arachnid – four directed to computer jukeboxes (the '398, '834, '189 and '575 Patents) and one directed to devices for displaying customized advertisements (the '780 Patent).  During the pendency of this case, a

---

[2] Unpublished case law is provided in Exhibit K hereto.

third party requested reexamination by the Patent Office of Arachnid's four computer jukebox patents ("the Reexams"). After the Examiner initially rejected most of the claims of those four jukebox patents in the Reexams, Arachnid appealed the rejections to the Board of Patent Appeals and Interferences ("BPAI") at the Patent Office. Oral arguments were conducted at the BPAI on September 15, 2010 and December 1, 2010 regarding those appeals. Arachnid's other patent, the '780 Patent, is not related to the jukebox patents and was not part of the reexamination proceedings. Ultimately, the BPAI on March 9, 2011, reversed the rejections of two of the computer jukebox patents *in toto*, based, in part, on the finding that, "at the time of the [computer jukebox] invention, Karaoke machines and jukeboxes were significantly different." *See* Exhibits A, B. The BPAI thereby confirmed the patentability of all of the claims of the '398 and '834 computer jukebox patents.

On October 11, 2010, just after oral arguments at the BPAI were conducted regarding the '398 and '834 patents, TouchTunes sent Arachnid the first of four letters in which TouchTunes made allegations of inequitable conduct against Arachnid and its counsel regarding the computer jukebox patents. *See* Dkt. no. 202-2. The allegations in TouchTunes' letters are based on disagreements TouchTunes apparently has with arguments Arachnid made to the Patent Office in the Reexaminations about "the scope and content of the karaoke prior art." In its October 11, 2010 letter, TouchTunes identified eleven new karaoke references (the "TouchTunes Karaoke References") that TouchTunes asserts are inconsistent with arguments Arachnid made in the Reexams.[3] TouchTunes disagrees with Arachnid's arguments about the karaoke art generally, and how that karaoke art relates to Arachnid's novel computer jukeboxes. Notably, Arachnid first made its Reexamination karaoke arguments, which are the subject of TouchTunes' new IEQ allegations, in March 2009. *See* Dkt. no. 202-1, at ¶ 74.

After receiving the October 11, 2010 letter from TouchTunes, Arachnid submitted to the Patent Office the 11 new TouchTunes Karaoke References identified by TouchTunes in that

---

[3] It is very curious that TouchTunes waited until just after the Reexam oral argument to identify to Arachnid the new "prior art" references TouchTunes was aware of. There is no procedure in the Patent Office Rules to submit new references directly to the BPAI. *See, e.g.*, 37 C.F.R. §§ 41.1 - 41.54; and §§ 1.56, 1.97, 1.98, 1.501-570. Thus, Arachnid believes, but admittedly has no means to confirm, that TouchTunes purposefully waited until after the BPAI conducted the oral argument on the '398 and '834 Patents before TouchTunes identified its new references to Arachnid, specifically to set up this bogus IEQ claim.

letter.  Patent Office rules clearly set out the procedure for identifying such references to the Patent Office in *ex parte* Reexaminations.  *See* Manual of Patent Examining Procedure ("MPEP") at § 2202; 35 C.F.R. §§ 1.97; 1.98; 1.501; 1.502; and 1.555.[4]  Arachnid followed that procedure by filing with the Patent Office an Information Disclosure Statement ("IDS") on October 22, 2010 in each of the Reexams.  *See* Exhibits C, D.  As set forth in 37 C.F.R. § 1.555:

> The duty to disclose all information known to be material to patentability in a reexamination proceeding is deemed to be satisfied if all information known to be material to patentability of any claim in the patent after issuance of the reexamination certificate was cited by the Office or submitted to the Office in an information disclosure statement.

37 C.F.R. § 1.555.  Thus, via the October 22 IDS's, the Patent Office was promptly and appropriately provided with all of the references TouchTunes identified, pursuant to established Patent Office rules.

Three weeks after Arachnid submitted those IDS's, TouchTunes on November 9, 2010 sent another letter to Arachnid's counsel.  *See* Dkt. no. 202-3.  In that letter, TouchTunes stated that Arachnid's October 22 IDS was improper because, *inter alia*, Arachnid did not explain the references.  *Id.*, at pp. 1-2.  That threat was baseless, because patentees, as expressly stated in Patent Office rules, need not provide commentary about references when submitting an IDS in each of the Reexams.  *See* MPEP § 2001.04; 37 C. F.R. § 1.98.  That is standard Patent Office practice.  *Id*.  Nonetheless, to avoid having to litigate any baseless IEQ claims in the future (or so it thought), Arachnid, in response, on November 23, 2010 submitted to the Patent Office an Addendum to its IDS in each of the Reexams.  *See* Exhibits E and F.  In the Addendums, Arachnid included TouchTunes' verbatim quotations (taken from TouchTunes' letters) from the references, and also included Arachnid's own comments explaining why TouchTunes' IEQ assertions were incorrect.  *See* Exhibits E and F.  Notably, Arachnid copied from TouchTunes' letters TouchTunes' chosen quotations verbatim, with TouchTunes' emphasis included.  *See id*. Thus, Arachnid provided the Patent Office with both Arachnid's comments and TouchTunes' commented quotations that TouchTunes provided to Arachnid.  *See* Exhibits E, F.

On March 9, 2011, the BPAI issued its Decisions On Appeal, allowing all of the claims of the '398 and '834 computer jukebox patents.  In its Decisions, the BPAI stated that

---

[4] All MPEP cited provisions are provided at Exhibit L.  All 37 C.F.R. cited provisions are provided at Exhibit M.

> We agree with Applicant that, at the time of the invention, Karaoke machines and jukeboxes were significantly different (App. Br. 9), and that one of ordinary skill in the art would not have considered them to be synonymous (FF 6). We do not find that one of ordinary skill in the art at the time of the invention would have found the karaoke machines of Sone [U.S. Patent no. 5,532,923] to teach a jukebox or computer jukebox.

Exhibits A ('398 BPAI Decision on Appeal), at p. 18; and B ('834 BPAI Decision on Appeal), at p. 18. Subsequently, pursuant to standard Patent Office procedure, jurisdiction over the '398 and '834 Patents in the Reexams was transferred back to the Examiner. *See* MPEP § 1214.04 (providing options for the Examiner to enter new rejections after appeal if she is aware of "a particular reference or references which indicate nonpatentatility . . .").

It can not be disputed that, upon receiving jurisdiction of the '398 and '834 Patents back from the BPAI, the Examiner actually reviewed the IDS's and considered the karaoke references that Arachnid submitted. This is indisputable, because the Examiner placed her initials on the form expressly showing that she considered the IDS disclosures. *See* Exhibits G and H; *see also* MPEP at § 609.05(b) ("Examiners must consider all citations submitted in conformance with the rules, and their initials when placed adjacent to the considered citations on the list or in the boxes provided on a form PTO/SB/08A and 08B … provides a clear record of which citations have been considered by the Office." (underlining added)). That is standard Patent Office practice. Thus, after considering the BPAI Decisions, the TouchTunes Karaoke References, and both parties' input about those references, the Examiner allowed all of the claims. *See* Exhibits G, H, I, J.

Apparently unable to accept that its arguments were not persuasive, and/or that its view of the karaoke prior references was incorrect, TouchTunes ultimately, and incorrectly, decided that Arachnid must have, somehow, committed inequitable conduct.

There is no factual basis for TouchTunes' proposed new allegations. Fact discovery is closed in this case and no new fact discovery will take place regarding TouchTunes' new IEQ allegations. Thus, TouchTunes' proposed new allegations are as complete as they will ever be. Based on TouchTunes' proposed new allegations, no trier of fact could find that Arachnid or its counsel committed inequitable conduct. TouchTunes' Motion must be denied.

## II. INEQUITABLE CONDUCT PLEADING REQUIREMENTS

Inequitable Conduct must be pleaded with particularity in compliance with Rule 9(b).

[T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.

\* \* \*

Second, the pleading [must] identify <u>which claims</u>, and <u>which limitations in those claims</u>, the withheld references are relevant to, <u>and where in those references the material information is found</u>--i.e., the "what" and "where" of the material omissions.

\* \* \*

Third, the <u>pleading [must] state[] generally</u> that the withheld references are "<u>material</u>" and "<u>not cumulative</u> to the information already of record," <u>[and] identify the particular claim limitations</u>, or combination of claim limitations, that are supposedly absent from the information of record. <u>Such allegations are necessary</u> to explain both "<u>why</u>" the withheld information is material and not cumulative, <u>and "how</u>" an examiner would have used this information in assessing the patentability of the claims.

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-31 (Fed. Cir. 2009) (internal citations omitted) (underlining added) (noting that Federal Circuit law, as opposed to the regional Circuit law, applies to determine sufficiency of IEQ allegations).  Moreover,

To prevail on a claim of inequitable conduct, the accused infringer must prove that the <u>patentee acted with the specific intent to deceive</u> the PTO. . . . <u>[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found</u>.

\* \* \*

This court [also] holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality. \*  \*  \*  Hence, in assessing the materiality of a withheld reference, <u>the court must determine whether the PTO would have allowed the claim</u> if it had been aware of the undisclosed reference.

*Therasense*, 2011 U.S. App. LEXIS 10590, at \*32-37 (emphasis added) (internal citations omitted).

Thus, in this case, where no new fact discovery will take place, the proposed new pleadings alleging IEQ must very specifically identify and fully support every aspect of the alleged IEQ, as stated above by the Federal Circuit.  TouchTunes' pleading does not meet this test, as a matter of law.  TouchTunes' Motion must be denied.

### III.  THE COURT HAS DISCRETION TO DENY TOUCHTUNES' RULE 15 MOTION

Granting leave to amend under Fed. R. Civ. P. 15 is not automatic.  *Desantis v. Roz-Ber, Inc.*, 51 F. Supp. 2d 244, 246 (E.D.N.Y. 1999) ("leave to amend [should] not [be] granted automatically or reflexively."). Leave to amend can be denied for any of the following reasons: undue delay; bad faith; dilatory motive; undue prejudice to the opposing party; and futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[T]he district court plainly has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant."  *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998). Moreover, "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay . . . ."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990));  *see also Deere v. Goodyear Tire & Rubber Co*., 175 F.R.D. 157, 165-66 (N.D.N.Y. 1997) (it is incumbent upon the movant to offer a valid explanation for its delay in seeking leave to amend).

In this case, TouchTunes' Motion should be denied (1) because it was filed in bad faith; (2) because it was filed as a delay tactic and will cause undue prejudice to Arachnid; and (3) because it's newly proposed claims are futile.

### IV.  TOUCHTUNES' NEW IEQ ALLEGATIONS ARE FUTILE

Proposed pleadings are futile when they would not be able to withstand a dispositive pretrial motion.  *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006) ("When a party faces the possibility of being denied leave to amend on the  ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion.");  *see also Milanese v. Rust-Oleum Corp*., 244 F.3d 104, 110 (2d Cir. 2001) (new pleadings can be denied as futile if they "could not withstand an inevitable motion for summary judgment");  *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 304-05 (S.D.N.Y. 1996).

TouchTunes' new IEQ pleadings in new Claims 7 and 8 of its proposed Amended Complaint clearly would not withstand a motion to dismiss, or a motion for summary judgment.

The Federal Circuit recently "tightened the standards" for claiming IEQ, and re-affirmed that such pleadings are "a plague."  The newly tightened rules, which apply to TouchTunes' newly proposed claims, are:

> To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO.
>
> * * *
>
> Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. *Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009). However, to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Star*, 537 F.3d at 1366. Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Kingsdown*, 863 F.2d at 873 (emphasis added). Hence, <u>when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found</u>.
>
> * * *
>
> Because the party alleging inequitable conduct bears the burden of proof, the "patentee need not offer any good faith explanation unless the accused infringer first . . . prove[s] a threshold level of intent to deceive by clear and convincing evidence." *Star*, 537 F. 3d at 1368. The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive.
>
> * * *
>
> This court [also] holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality. . . .  Hence, in assessing the materiality of a withheld reference, <u>the court must determine whether the PTO would have allowed the claim</u> if it had been aware of the undisclosed reference.
>
> * * *
>
> Although but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an exception in cases of affirmative egregious misconduct. . . .  <u>Because neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality</u>.

*Therasense*, 2011 U.S. App. LEXIS 10590, at *32-40 (underlining added).  These new rules are specifically intended to limit charges of IEQ, which is a plague on the Courts and on the patent system.

TouchTunes' new IEQ claims are futile, because:

(1)     there is <u>no evidence</u> of intent to deceive;

(2)     there is <u>no evidence</u> of but-for materiality;

(3)     the full record makes it very clear that TouchTunes' allegations are based entirely on two parties disagreeing about the scope of the disclosures of various references, and such disagreement cannot, as a matter of law, constitute inequitable conduct.

Because the new allegations are futile, TouchTunes' Motion to Amend must be denied.

## A.     No Evidence Exists That Arachnid Acted With Specific Intent To Deceive

To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. *Therasense*, 2011 U.S. App. LEXIS 10590, at *32. Even taking TouchTunes' proposed new allegations as true (many of which are not), they are not nearly sufficient to <u>require</u> a finding of a specific intent to deceive the Patent Office. TouchTunes' proposed new allegations cannot even support an inference of an intent to deceive.

As stated above, it is undisputed that during the Reexamination process, Arachnid provided all of the TouchTunes Karaoke References to the Patent Office promptly after learning about them. *See* Exhibits C, D, E, F. It is also undisputed that Arachnid <u>also provided to the Patent Office all of TouchTunes'</u> chosen quotations from those references that TouchTunes identified to Arachnid. *See* Exhibits E and F. Arachnid also provided to the Patent Office its comments about the TouchTunes Karaoke References, and why it disagrees with TouchTunes' assertions of the relevance of the TouchTunes Karaoke References. *Id.* There simply cannot be an intent to deceive where the disputed references <u>and the opposing parties' comments</u> are provided to the Examiner. And, if there is no intent to deceive, there is no inequitable conduct, as a matter of law. *Therasense*, 2011 U.S. App. LEXIS 10590, at *32-37. Because the proposed pleadings are futile, TouchTunes' Motion should be denied.

In its proposed IEQ allegations, TouchTunes also makes a half-hearted argument that Arachnid intended to deceive the Patent Office because it did not send the October 22 IDS directly to the BPAI. *See* Dkt. no. 202-1 at ¶ 111. This allegation is readily dismissed.

The Patent Office rules do not allow for a patentee to submit new prior art references directly to the BPAI after jurisdiction has been transferred from the Examiner. Jurisdiction over patent applications at the Patent Office operates much like litigation in federal Courts where once a Notice of Appeal is filed, the District Court transfers jurisdiction to the Appellate Court; in the

Patent Office, once an appeal at the BPAI is docketed (which occurs after all the appeal briefs have been filed), jurisdiction transfers to the BPAI, and the Examiner (and/or the related Reexamination unit) loses jurisdiction of the patent application. *See* 37 C.F.R. § 41.35(a). Examiners have the responsibility to conduct the initial review of patent claims in view of any prior art references. The BPAI, much like federal Courts of Appeal, sits as an appellate panel, and only reviews decisions of Examiners. *See, e.g., Ex parte Frye*, Appeal 2009-006013, 2010 Pat. App. LEXIS 15858, at *18 (B.P.A.I. Feb. 26, 2010) (in a decision in which PTO Director Kappos participated as a BPAI Panel member, the Board stated: "The Board does not 'allow' claims of an application and cannot direct an examiner to pass an application to issuance. Rather, the Board's primary role is to review adverse decisions of examiners including the findings and conclusions made by the examiner."). The BPAI does not examine patent applications. *See* 35 U.S.C. § 6(b) (duty of BPAI is to "review adverse decisions of examiners upon application for patents"). It does not conduct initial reviews of art in relation to patent applications. *See id.* Thus, there is no mechanism for a patentee to submit new prior art to the BPAI once the BPAI obtains jurisdiction, and no reason to do so because the BPAI does not examine patent applications. Thus, the inferences made by TouchTunes that Arachnid somehow acted improperly by not providing the new TouchTunes Karaoke References directly to the BPAI are meritless.

Significantly, there is a procedure for a third party, like TouchTunes, to submit references to the Patent Office. TouchTunes is, no doubt, aware of this. The Patent Office rules state:

> <u>At any time</u> during the period of enforceability of a patent, <u>any person</u> may cite, to the Office in writing, prior art consisting of patents or printed publications which that person states to be pertinent and applicable to the patent and believes to have a bearing on the patentability of any claim of the patent.

*See* 37 C.F.R. § 1.501 (a) (underlining added); *see also id*. 37 C.F.R. § 1.550(h) (allowing third party submissions in *ex parte* reexaminations); 35 U.S.C. § 301. Thus, if TouchTunes truly believed that having knowledge of the TouchTunes Karaoke References "would have caused the BPAI to reject all of the claims" as it now alleges, TouchTunes certainly could have submitted those references to the Patent Office. Moreover, if TouchTunes thought that it could submit them directly to the BPAI, it should have tried to do so. It chose not to even try to do so. TouchTunes' conclusory, spurious allegations about Arachnid and its counsel are meritless.

Because TouchTunes' proposed new IEQ allegations do not <u>compel</u> a finding of a specific intent to deceive the Patent Office, as the Federal Circuit requires, the new claims for IEQ are futile.  TouchTunes' Motion should be denied.

**B.     There Is No But-For Materiality in TouchTunes' Proposed Pleading**

To find inequitable conduct, the Court must find that, but for the withheld information (or allegedly incorrect information), the Patent Office <u>would have rejected the claims</u>.  *See Therasense*, 2011 U.S. App. LEXIS 10590, at *37.  Because the Patent Examiner <u>allowed</u> all of the patent claims <u>after considering</u> <u>all</u> of the TouchTunes Karaoke References, there is no but-for materiality, as a matter of law.  The Examiner even allowed all of the claims <u>after having</u> <u>TouchTunes'</u> hand-picked quotations from each of the TouchTunes Karaoke References.  *See* Exhibits E, F, G, H.  In view of that <u>actual determination</u> by an Examiner in view of <u>all of the</u> <u>evidence</u>, it is clearly futile to allege that any patent claims "would have been rejected."  Such allegations are not based in reality.

Significantly, the Patent Examiner was given all of TouchTunes' chosen quotations provided to Arachnid from the TouchTunes Karaoke References.  *See* Exhibits C-F.  The TouchTunes quotations from the karaoke references <u>Arachnid provided</u> to the Examiner even included the <u>emphasis put in the quotations by TouchTunes</u> from the letters TouchTunes sent to Arachnid.  *See* Exhibits E, F.  Thus, the Examiner had Arachnid's <u>and</u> TouchTunes' comments about the relevance and scope of the karaoke references TouchTunes relies on in its proposed new IEQ pleadings.  The Examiner also expressly indicated that she considered the TouchTunes' Karaoke References.  *See* Exhibits G and H.  After actually considering the references, and having both Arachnid's <u>and</u> TouchTunes' comments, the Examiner allowed all of the claims of Arachnid's '398 and '834 jukebox patents.[5]  Based on these indisputable facts, TouchTunes cannot prove the requisite but-for materiality.

---

[5] In its proposed allegations, TouchTunes falsely implies that Patent Examiners do not review prior art when an applicant provides comments about the references.  *See, e.g.*, Dkt. 202-1 (proposed Am. Compl.), at ¶ 121.  That is both false and irrelevant, for three reasons.  First, that implication is false. Examiners have a duty to consider all prior art references, and they do not abdicate that responsibility just because an applicant provides comments about the references.  *See* MPEP § 609.05(b) ("Examiners must consider all citations submitted in conformance with the rules, <u>and their initials when placed adjacent to the considered citations</u> on the list or in the boxes provided on a form PTO/SB/08A and 08B … <u>provides a clear record of which citations have been considered by the Office</u>."); and *Kingsdown Medical*

Similarly, TouchTunes' allegations are also futile because TouchTunes fails to specify how any allegedly withheld information "would have resulted" in a rejection of any specific patent claim(s).  The standard for proving an IEQ claim is clear.  To prove IEQ, TouchTunes

> [must] <u>identify which claims</u>, and <u>which limitations in those claims</u>, the withheld references are relevant to, <u>and where in those references the material information is found</u>--i.e., the "what" and "where" of the material omissions.
>
> * * *
>
> [And], the pleading [must] state[] generally that the withheld references are "material" and "not cumulative to the information already of record," <u>[and must] identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record</u>.  Such allegations are necessary to explain both "<u>why</u>" the withheld information is material <u>and not cumulative</u>, and "<u>how</u>" an examiner would have used this information in assessing the patentability of the claims.

*Exergen Corp.*, 575 F.3d at 1329-30 (underlining added).  TouchTunes' allegations fail, because TouchTunes does not allege what specific claim elements from the Arachnid patents are found in the karaoke references, why any such claim elements are not cumulative to prior art already of record, or how application of the TouchTunes Karaoke References would have resulted in the rejection of even a single specific patent claim.  *See* Dkt. no. 202-1 (proposed Am. Compl.), at ¶¶ 55-221.  A proper IEQ pleading requires such specificity.  *See Exergen Corp.*, 575 F.3d at 1329-30; *Therasense*, 2011 U.S. App. LEXIS 10590, at *37.  Because TouchTunes makes no such pleadings, its new IEQ claims are futile.

In its proposed new IEQ claim, TouchTunes does not even attempt to demonstrate <u>how or why</u> any of the TouchTunes Karaoke References would result in a rejection of any specific jukebox patent claim.  Instead, TouchTunes simply makes several highly conclusory statements, like

---

*Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 874, n.8 (Fed. Cir. 1988 ("Blind reliance on [counsel's] presumed candor would render examination unnecessary, and nothing in the statutual of Patent Examining Procedure would justify reliance on counsel's candor as a substitute for an examiner's duty to examine the claims."); and *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931 (Fed. Cir. 1990) (citing *id.*).  Second, that implication by TouchTunes is irrelevant because Arachnid first provided the references without comments.  *See* Exhibits C and D.  Only after TouchTunes objected to that non-commented disclosure (because, *inter alia*, it did not include comments) did Arachnid provide comments about the references.  *See* Exhibits E, F.  And Third, Arachnid provided TouchTunes' own quotations from those references, with TouchTunes' emphasis in those quotations, to the Patent Office.  So, the Examiner had <u>both parties' comments</u> about the references.  Even if the Examiner disregarded her duty to consider the actual references themselves, she would still have had to choose one of the parties' comments.  TouchTunes' false implications about how Examiners review IDS's are meritless.

> had Arachnid made the Board aware of the misrepresentations and how the actual
> scope and content of the karaoke prior art affect the claims of the '398 and '834
> patents, the Board would have sustained the Examiner's rejections and/or issued
> its own rejections.

*See, e.g.,* Dkt. 202-1 (proposed Am. Compl.), at ¶ 201.  That is a merely conclusory statement, without any evidentiary substance.  Such a conclusory pleading is not a substitute for <u>evidence</u> or for an <u>analysis</u> of why <u>any</u> claim would have been rejected.  TouchTunes does not, in its proposed allegations, even attempt to show how the allegedly unidentified karaoke prior art would <u>actually</u> result in even a single rejected claim.  *See id.*, at ¶¶ 55-221.  This failure by TouchTunes to even attempt to show the requisite "but-for materiality" renders the newly proposed pleading dead on arrival.  *Therasense*, 2011 U.S. App. LEXIS 10590, at *32-37.

Other TouchTunes' proposed pleadings on their face similarly demonstrate the futility of TouchTunes' IEQ claim.  At paragraph 201, for example, TouchTunes attempts to plead the requisite but-for materiality in regards to the Examiner:

> Even if Arachnid had only made the Examiner aware of the misrepresentations
> and how the actual scope and content of the karaoke prior art affect the claims of
> the '398 and '834 patents, the Examiner would have had the specific knowledge of
> invalidating prior art necessary to reopen prosecution after having been reversed,
> and she would have reopened prosecution of those claims. If prosecution of those
> claims had been reopened, the claims would have been rejected in view of the
> invalidating karaoke prior art and would not have been confirmed as patentable.

*See* Dkt. no. 202-1, at ¶ 201.  But, that crucial allegation is entirely circular.  That allegation is based on the indisputably false premise that the Examiner was <u>not</u> aware of the "actual scope and content of the karaoke prior art." *Id.*  It is undisputed, however, that the Examiner did, in fact, have in her possession the TouchTunes Karaoke References, and Arachnid's comments, <u>and TouchTunes'</u> hand-picked quotations from those references.  *See* Exhibits C-F.  It is also undisputed that the Examiner <u>actually considered</u> the TouchTunes Karaoke References.  *See* Exhibits G, H.   The Examiner <u>was</u> aware of the "scope and content" of the alleged karaoke prior art.  Thus, this central allegation to TouchTunes' proposed IEQ Claims is indisputably false.  The entire claim is baseless.

TouchTunes' new IEQ claims are futile because TouchTunes has not pleaded facts that could possibly support the required "but-for" materiality.  *Therasense*, 2011 U.S. App. LEXIS 10590, at *32-37.  Its Motion must be denied.

**C.      TouchTunes Does Not Identify A Single False Statement Of Fact That Could Give Rise To A Claim For IEQ**

TouchTunes' new IEQ allegations are also futile because TouchTunes also does not, in its newly proposed IEQ claims, identify a false statement of material fact that could give rise to a claim of IEQ.  To support a finding of inequitable conduct, an alleged misrepresentation must be one of "material fact."   *See, e.g., Young v. Lumenis*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) (attorney arguments, about what the prior art discloses, do not "constitute affirmative misrepresentations of material fact" which is required for IEQ); *Life Techs., Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1326 (Fed. Cir. 2000) ("[I]n making the argument, the inventors merely advocated a particular interpretation of the teachings of the . . . article . . . which the Examiner was free to accept or reject. This argument does not contain any factual assertions that could give rise to a finding of misrepresentation."); *accord Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1570-72 (Fed. Cir. 1983) (finding IEQ where "intentional misstatements of asserted material facts" were made about the applicant's own internal test results in affidavits filed by applicants).

In the 55 pages and 166 paragraphs of sensationalized and hyperbolic half-truths that constitute its proposed new IEQ claims, TouchTunes <u>does not identify a single specific statement of material *fact*</u> made by Arachnid that is allegedly false.  This dooms the entire alleged claim. Rather than make specific factual assertions, TouchTunes makes the following non-factual, non-substantive, sensationalized statements throughout its overly-pleaded new allegations:

> When it submitted the Supplemental Brief, however, Arachnid knew that its proposed construction would not exclude all karaoke prior art from the scope of the claims.  Indeed, at the time of the Supplemental Brief and even at the time Mr. Rice signed his Declaration, Arachnid knew that prior art karaoke technology was **<u>known to include the "computer jukebox" features</u>**, and that prior art "computer jukebox" technology was known to include **<u>karaoke functionality</u>**.  [¶ 83]

> Further, Arachnid made the September 28, 2010 **<u>blanket mischaracterizations of the karaoke prior art</u>**, despite also knowing about the prior art disclosures in U.S. Patent No. 5,481,509 ("Knowles").  [¶ 89]

> Thus, at the time of the Supplemental Brief and even at the time of the Rice Declaration, Arachnid knew that **<u>the features</u>** required by Arachnid's proposed construction of "computer jukebox" were disclosed in the karaoke prior art.  [¶ 93]

14

Thus, contrary to the statements in Arachnid's Supplemental brief, it was clearly and unequivocally **known in the prior art** for karaoke machines to include **money intake devices** and to be configured as **stand-alone units** operated (even for song selection) by a patron alone.  [¶ 102]

. . .  Thus, in the Supplemental Brief, Arachnid presented the Board with patentability arguments **mischaracterizing the scope and content** of the karaoke prior art.  [¶ 115]

Rather than satisfy their duty under *Rohm & Haas*, Arachnid **obscured the materiality** of the references identified in the October 22 IDS, as well as the materiality of the misrepresentations in the Supplemental Brief **regarding the scope and content of prior art karaoke technology**.  * * *  Arachnid also **discounted the materiality** of the references by stating in the October 22 IDS that the documents submitted therein were provided to Arachnid's counsel in the pending litigation "and have not been verified or authenticated by the undersigned counsel for Patent Owner."  [¶ 117]

For Example, the **Addendum did not focus** on the blanket, definitive statements in the Supplemental Brief **regarding the karaoke prior art as a whole**.  Nor did the Addendum address the effect of the cited karaoke prior art on Arachnid's patentability arguments regarding money-intake devices and customer operation.  [* * *  Instead, the Addendum **focused attention** away from those critical issues and onto arguments about what the **scope of the karaoke prior art** "generally" did or did not include.]  [¶ 126]

Thus, Arachnid's arguments in the November 23 Addendum were designed to mislead the PTO away from the detrimental effect of the identified prior art on the patentability of the '398 and '834 patent claims, and to **focus the PTO's attention** instead (and improperly) on Arachnid's characterizations as to what **features prior art karaoke devices "generally" included** or did not include.  [¶ 128]

. . .  Instead, the clear import of those statements was that construing "computer jukebox" to require **the features** proposed by Arachnid would exclude <u>all</u> karaoke prior art, not only the prior art cited by the Examiner.  Thus, Arachnid did, in fact, misrepresent what the **karaoke prior art as a whole** disclosed.  [¶ 131]

Ultimately, Arachnid's November 23 Addendum directed attention away from substantive disclosures of the identified prior art and **discounted what the prior art actually showed**.  * * *  Arachnid's misleading statements in the November 23 Addendum indicated that the cited references were not material to any rejected claim, and the Examiner would have had no reason to look beyond Arachnid's misleading statements and investigate the references further.  [¶ 140]

15

. . . Furthermore, the January IDS failed to acknowledge and point out **the materiality of Liu** to the patentability of claims of at least the '834 patent.  [¶ 159]

The January 12 IDS further **misrepresented the significance of Liu** by affirmatively directing attention away from the substance of Liu's disclosures and how those disclosures affect the patentability of at least the '834 patent.  [¶ 167]

. . . The natural consequence of that conduct was to deceive the PTO into believing that the karaoke prior art did not include devices or systems having **the "computer jukebox" features**.  [¶ 207]

By failing to direct the prior art information to the Board, and by **obfuscating the significance of references** cited therein, Arachnid knowingly and deliberately misled the PTO about the **actual scope and content of the karaoke prior art**, and how the cited prior art references affected the patentability of the '398 and '834 patent claims.  [¶ 211]

*See* Dkt. 202-1 (proposed Am. Compl.), at ¶¶ 55-221 (emphasis added).  So, despite all of that rhetoric, and in all of its new IEQ pleadings,  no material statements of fact are identified that are allegedly false.  Every alleged "misrepresentation" relates only to the "scope and content" of various alleged prior art references.

Arachnid's understanding of the overall "scope and content of the karaoke art" and/or "jukebox art" or "computer jukebox features," etc., as of the early 1990's, even if incorrect, cannot give rise to inequitable conduct.  Arachnid's <u>understanding</u> of the general state of karaoke and jukebox art at relevant times is just that – Arachnid's understanding.  That understanding was truthful and accurate when made, and it remains truthful and accurate.  But, the accuracy of Arachnid's understanding is not even relevant to a claim for IEQ, because it is not a statement of <u>fact</u> which can support an IEQ defense.  *See, e.g., Young*, 492 F.3d  at 1349; *Life Techs.*, 224 F.3d at 1323 ("[I]n making the argument the inventors merely advocated a particular interpretation of the teachings of the . . . article . . . which the Examiner was free to accept or reject. This argument does not contain any factual assertions that could give rise to a finding of misrepresentation.").

It is well-established, black-letter law, that advocating the scope and content of references that are disclosed to and available to the Examiner cannot, as a matter of law, constitute a "material misrepresentation" that would support a finding of inequitable conduct.  *See, e.g., Young,* 492 F.3d at 1349 ("We . . . fail to see how the statements in the . . . Response, which

consist of attorney argument and an interpretation of what the prior art discloses, constitute affirmative misrepresentation of material fact."); *Akzo N.V. v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471, 1482 (Fed. Cir. 1986) ("The mere fact that DuPont attempted to distinguish the [invention] from the prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion regarding the [invention] based on the prior art in front of him."); *Life Techs,* 224 F.3d at 1323; *Bayer Schering Pharma AG v. Barr Labs., Inc.,* No. 05-cv-2308, 2008 U.S. Dist. LEXIS 15917, at *150-51 (D.N.J. Mar. 3, 2008), *aff'd,* 575 F.3d 1341 (Fed. Cir. 2009) ("An applicant's arguments supporting its patent application do not constitute inequitable conduct when the examiner has the prior art before him throughout the prosecution and, despite the applicant's attempt to distinguish that prior art, [t]he examiner was free to reach his own conclusion regarding [the prior art].").

With respect to TouchTunes' proposed allegations, the Examiner had in her possession every one of the TouchTunes Karaoke References.  Arachnid also gave to the Patent Office, and the Examiner also had in her possession, <u>TouchTunes' own hand-picked quotations from those references</u>.  *See* Exhibits C, D, E, F.  It is specious, <u>at best</u>, for TouchTunes to base an IEQ claim on an allegation that Arachnid "mischaracterized the scope and content of the prior art."  TouchTunes' allegations are invalid and unsupportable on their face.  As the Federal Circuit appropriately noted in a case where similar arguments were made to support an IEQ allegation:

> All the pertinent information was squarely before the examiner in a simple doclument. As stated in *Akzo N.V. v. United States Int'l Trade Comm'n,* 808 F.2d 1471, 1482, 1 USPQ2d 1241, 1247 (Fed. Cir. 1986), cert. denied, 482 U.S. 909, 107 S. Ct. 2490, 96 L.Ed.2d 382 (1987), "the examiner was free to reach his own conclusion. . . ."
>
> * * *
>
> <u>A patentee's oversights are easily magnified out of proportion by one accused of infringement</u>.  ... <u>Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive</u>, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required.

*Northern Telecom, Inc. v. Datapoint Corp*., 908 F.2d 931, 938-39 (Fed. Cir. 1990) (underlining added).

17

Because TouchTunes does not plead a sufficient factual misrepresentation that could possibly constitute fraud on the Patent Office, TouchTunes' new claims are futile.[6]

## V.   TOUCHTUNES' MOTION WAS FILED IN BAD FAITH

This Court can deny a motion to amend pleadings if the motion is made in bad faith. *See The Youngbloods v. BMG Music*, 07 Civ. 2394, 2011 U.S. Dist. LEXIS 1585 (S.D.N.Y. Jan. 6, 2011) ("While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage, … supports a finding that such an amendment is made in bad faith."); and *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 407-08 (S.D.N.Y. 2010) (court ultimately finding there was no bad faith, but implied that if the plaintiff really knew that a party was innocent, maintaining the claim would constitute bad faith).

TouchTunes filed its Motion in bad faith.  TouchTunes deceptively withheld from this Court facts that demonstrate that Arachnid could not have committed inequitable conduct. TouchTunes' deliberate decision to withhold crucial, dispositive evidence demonstrates TouchTunes' bad faith.

TouchTunes' Motion is based entirely on the fact that Arachnid has a different understanding than TouchTunes of the teachings and relevance of various karaoke references. TouchTunes is attempting to allege that such a difference of opinion constitutes fraud on the Patent Office.  Such an allegation is absurd.  *See, e.g., Young,* 492 F.3d at 1349; *Akzo N.V.,* 808 F.2d at 1482; *Life Techs.,* 224 F.3d at 1323.  Mere disagreement with TouchTunes' characterizations of references cannot, as a matter of law, constitute IEQ.  *Id.*  The mere fact that

---

[6] TouchTunes' assertions, in its IEQ allegations, that the Federal Circuit requires certain steps to be taken to "cure" misrepresentations, is a classic red herring, for two reasons.  *See* Dkt. 202-1 at ¶ 107.  First, in the 1983 case that TouchTunes cites for this proposition, that court specifically decided what steps an applicant could undertake to "cure" false statements of fact made during on-going patent prosecution in the first instance – not after the patent has issued.  *See Rohm & Haas Co.*, 722 F.2d at 1571. Second, that case dealt specifically with a scenario where the applicants made specific, untrue factual statements in several affidavits about their internal test results related to the alleged invention, that the Examiner relied upon in allowing the patent claims.  *See id.* at 1570-71.  The Federal Circuit specifically limited its "cure" steps to situations involving, *inter alia*, "misconduct consisting of intentional misstatements of asserted material facts." *Id.* at 1571.  Thus, that case does not address a situation where the alleged misconduct is based on arguments the patent owner makes regarding the prior art generally.  Therefore, the *Rohm & Haas* case is inapposite, for the additional reason that TouchTunes has not identified any alleged misrepresentations of material ***fact*** made by Arachnid.

TouchTunes would base new IEQ allegations, at this late date in this old case, on nothing more than a disagreement with its characterizations of what certain documents disclose, demonstrates bad faith.

TouchTunes' bad faith is also, independently, demonstrated by the fact that it relies very heavily on the Liu patent, U.S. Patent No. 5,593,005, that is not prior art to the Arachnid jukebox patents.  The Liu patent is not prior art to Arachnid's computer jukebox patents because it was filed after Arachnid filed its patent applications, or after Arachnid invented the inventions claimed in those applications.  *See* 35 U.S.C. §§ 102 (a), 102(b) and 102(e) (defining prior art); and U.S. Patent No. 5,593,005 to Liu (filed June 28, 1996 and issued September 14, 1999); and '398 Patent (filed April 25, 1996 and issued December 8, 1998); and '834 Patent (effectively filed November 12, 1997 and issued November 29, 2005 and "invented" at least by April 25, 1996).  As such, the Liu patent is not relevant to any discussion of IEQ.  *See, e.g.,* 37 C.F.R. § 1.56 (defining materiality).  In 36 out of 166 paragraphs (over 20%) of its new IEQ allegations, TouchTunes improperly relies on the allegation that Liu patent – that is not prior art to Arachnid's jukebox patents – was not properly disclosed to the Patent Office.  *See* Dkt. no. 202-1, at ¶¶ 84-88, 133-34, 145-60, 164-76 (all relying on the Liu patent as prior art).  In its newly proposed allegations, TouchTunes falsely and deceptively represents that Liu is prior art, when it is not.  This demonstrates the bad faith by TouchTunes in filing its Motion.

Bad faith by TouchTunes is also independently demonstrated by the fact that TouchTunes has intentionally withheld from this Court the IDS's and the Addendums Arachnid provided to the Patent Office.  TouchTunes did not include the IDS's or the Addendums with its Motion or with its proposed Amended Complaint.  *See* Dkt. Nos. 201, 202, and 203.  By the IDS's and the Addendums, Arachnid gave the Patent Office not only every karaoke reference TouchTunes identified to Arachnid, but also TouchTunes' hand-picked quotations taken from those references.  In its newly proposed allegations and in its Motion, TouchTunes intentionally fails to inform the Court of these crucial facts and information, and intentionally withheld the IDS's and the Addendums from the Court.  By intentionally failing to inform this Court of this crucial information, TouchTunes has demonstrated its bad faith.

TouchTunes' bad faith is also demonstrated by another undisputed fact.  The written, indisputable Patent Office record shows that the Patent Examiner actually considered the TouchTunes Karaoke References – before allowing Arachnid's patents.  *See* Exhibits G and H.

TouchTunes intentionally failed to inform this Court of this crucial fact.  This information is highly relevant to TouchTunes' new allegations because it shows that the Examiner received <u>and considered</u> all of the relevant references, and had both parties' comments, and still allowed all of the claims.  This evidence is dispositive of TouchTunes' allegations because, to prevail, TouchTunes must prove that the Examiner "would have rejected" the claims if she had the allegedly withheld information.  *See Therasense*, 2011 U.S. App. LEXIS 10590, at *37; and *Exergen Corp.*, 575 F.3d at 1329-30.  Instead, the exact opposite actually occurred.  By intentionally withholding this crucial -- indeed, dispositive -- information from the Court, TouchTunes is acting in bad faith.

TouchTunes' Motion should be denied because of TouchTunes' bad faith.

## VI.    TOUCHTUNES MOTION IS UNTIMELY

This Court can deny TouchTunes' Motion for being untimely.  *See Park B. Smith, Inc. v. CHF Indus.*, No. 06 Civ. 869 (LMM), 2011 U.S. Dist. LEXIS 74696 (S.D.N.Y. Jul. 12, 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.").  By waiting over two years to file its Motion, TouchTunes' Motion is untimely, and the delay has unduly prejudiced Arachnid.

This case is almost four years old.  Fact discovery has been closed since February, 2011.  TouchTunes' new allegations are all based entirely on arguments that <u>Arachnid first made to the Patent Office beginning in March 2009</u>.  TouchTunes acknowledges this in its proposed new pleadings.  *See* Dkt. 202-1 (proposed Am. Compl.), at ¶ 74 (relying on specific assertions about the "scope and content of the karaoke art" made by Arachnid March 17, 2009 in the Reexams).  <u>TouchTunes waited until September 2011</u> to file its new allegations based on two-and-a-half-year-old arguments made to the Patent Office.  Such delay by TouchTunes is unduly prejudicial to Arachnid and to this Court.

Such intentional delay by TouchTunes is unduly prejudicial to Arachnid, because TouchTunes apparently intentionally waited until after jurisdiction of the reexaminations was transferred to the BPAI, and away from the Examiner, before TouchTunes informed Arachnid of the new karaoke references.  *See* 37 C.F.R. § 41.35(a) (jurisdiction is transferred to BPAI upon

docketing of appeal).  TouchTunes should have informed Arachnid of the TouchTunes Karaoke References, or TouchTunes should have itself filed its alleged "karaoke prior art" with the Examiner in 2009 (or even in 2010), so that the Examiner could have made her examination of the patent claims in the first instance in view of all of the alleged prior art.  TouchTunes chose not to inform Arachnid, and chose not to disclose the information directly to the Patent Office. *See* 37 C.F.R. § 1.501(a) (allowing third parties to file prior art in PTO proceedings); MPEP § 2202 (same); 35 U.S.C. § 301 (same).  By intentionally delaying, and by intentionally withholding from Arachnid and from the Patent Office its alleged "karaoke prior art" for two-and-one-half years, and by intentionally failing to submit the karaoke references to the Patent Office during the initial examination by the Examiner, TouchTunes has unduly prejudiced Arachnid.

TouchTunes' Motion should be denied for the additional, independent reason that it is untimely, and unduly prejudicial.

## VII.   THE MOTION TO AMEND SHOULD ALSO BE DENIED BECAUSE NEW CLAIM 8 WAS FILED IN BAD FAITH AND IT IS FUTILE

Proposed new Claim 8 of TouchTunes' proposed Amended Complaint attempts to plead a claim of "infectious unenforceability" with respect to Arachnid's '780 patent.  Infectious unenforceability is a doctrine which holds that inequitable conduct committed with respect to one patent may, under very specific circumstances, "infect" a parent or other directly related patent.  *See, e.g., Consolidated Aluminum Corp. v. Foseco Int'l Ltd*., 910 F.2d 804, 809-12 (Fed. Cir. 1990).

For the doctrine to apply, the different patents must be closely related and the inequitable conduct in prosecuting the underlying patent must have "immediate and necessary relation" to the enforcement of the related, allegedly infected patent.  *Consolidated Aluminum*, 910 F.2d at 810 ("immediate and necessary relation" required); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 378-79 (Fed. Cir. 1983) (finding earlier patent was not unenforceable where alleged inequitable conduct occurred with respect to patent applications that were filed years after earlier patent issued and did "not deal with the invention claimed" in the earlier patent).

TouchTunes' proposed allegations of infectious unenforceability, in newly proposed Claim 8 should be rejected because they are futile.  They are, in fact, so unsupportable that they demonstrate the bad faith of TouchTunes in filing its Motion To Amend.

### A.      TouchTunes Filed Proposed Claim 8 In Bad Faith

As stated above, a fundamental requirement to prove infectious unenforceability is that the "infected" patent must at least be closely related to the patent about which the underlying inequitable conduct was committed.  *See Consolidated Aluminum*, 910 F.2d at 810-11.  TouchTunes has acted in bad faith by alleging, in its newly proposed Claim 8, that

> The '780, '398 and '834 patents are related patents in the same technology family.

*See* Dkt. 202-1 (proposed Am. Compl.), at ¶ 225.  This is false.  (It is also irrelevant because "the same technology family" – whatever that means – does not, as a matter of law, provide sufficient relatedness to plead infectious unenforceability.)

TouchTunes knows that this newly proposed allegation of relatedness is totally false.  On February 1, 2010, TouchTunes responded to a Motion To Amend filed by Arachnid, in which Arachnid sought to add a claim for infringement of Arachnid's '780 patent.  In opposing Arachnid's motion, TouchTunes represented to this Court:

> The '780 patent is not in the same patent family as the four [computer jukebox] patents currently asserted in Arachnid's counterclaims (*i.e.*, those including [the '398 and '834] patents).  The '780 patent . . . is fundamentally different from a technical standpoint from all of the asserted patents.

*See* Dkt. no. 106, at p. 5 (emphasis added).  So, was TouchTunes making a specious argument to the Court then?  Or is TouchTunes making a specious argument to the Court now?

There is no direct familial relationship between the '780 patent (which claims computerized devices for displaying customized advertisements) and the '398 and '834 computer jukebox patents.  TouchTunes knows this.  TouchTunes' Motion should be denied because it was filed in bad faith.

### B.      Newly Proposed Claim 8 Is Futile

Claim 8 of TouchTunes' newly proposed Am. Compl.  proposes to allege that the '780 customized advertisement patent is unenforceable because Arachnid's computer jukebox patents are unenforceable, as alleged in proposed Claim 7.  The allegation is completely without merit.

First, as stated above, TouchTunes now completely contradicts its earlier representations (made under Rule 11) that the '780 patent is not related in any way to the jukebox patents.  Such clearly baseless and improper allegations should be given no weight.  Without relatedness, there can be no infectious unenforceability.  *Consolidated Aluminum*, 910 F. 2d at 810 ("immediate and necessary relation" required); *SSIH Equip.*, 718 F.2d at 378-79.

Second, for all the reasons stated above with respect to the alleged inequitable conduct related to the jukebox patents in proposed new Claim 7, TouchTunes' new pleading in Claim 8 is futile.  If TouchTunes' underlying allegation of IEQ in Claim 7 is futile, there can be no "infectious unenforceability" projected onto the distinct '780 patent.  For that independent reason, Claim 8 is futile.

Third, newly proposed Claim 8 is futile because the basic invention of the '780 patent is simply not in any way related to the inventions claimed in the '398 and '834 patents, and the prosecution of the '780 Patent was not in any way related to the prosecution, or the reexaminations, of the computer jukebox patents.

- The '780 Patent was filed after the computer jukebox patents, and does not claim priority to the computer jukebox patents; and

- The '780 Patent issued in February 2001 and there has been no subsequent examination of that patent; the reexaminations of the computer jukebox patents (which is the basis for the alleged IEQ) occurred from 2009 through 2010; and

- The '780 patent has a different set of inventors than the jukebox patents (with Mr. John Martin as the only common inventor); and

- The general technology described and claimed in the '780 patent (customized advertisements) is totally distinct from the technology described and claimed in the jukebox patents (computer jukeboxes); and

- The inequitable conduct allegations proposed by TouchTunes relate to the "characterization of the karaoke prior art" and its relevance to computer jukeboxes – the allegations have no relation whatsoever to "customized advertisements" as claimed in the '780 patent or to any aspect of the prosecution of the '780 patent; and

- The IEQ allegations proposed by TouchTunes all relate specifically to conduct occurring in reexamination proceedings for computer jukebox patents, all of which took place many years after the '780 patent had issued; the '780 patent has never been involved in a reexamination proceeding.

23

Thus, there is not a sufficient relationship between the '780 patent and the Arachnid jukebox patents to provide the requisite "immediate and necessary relationship" for a claim of infectious unenforceability.  *Consolidated Aluminum*, 910 F.2d at 810 ("immediate and necessary relation" required); *SSIH Equip.*, 718 F.2d at 378-79.  The fact that one claim of the '780 patent recites that its claimed customized advertisements can be displayed, for example, on a jukebox does not make those distinct patents, or the prosecution of those distinct patents, sufficiently "related" to support a claim of infectious unenforceability.

Claim 8 of TouchTunes' proposed new Amended Complaint is futile.  TouchTunes' Motion should be denied.

## VIII.   ARACHNID IS ENTITLED TO ITS FEES AND COSTS FOR BEING REQUIRED TO RESPOND TO TOUCHTUNES' MOTION

The Second Circuit allows a District Court to award sanctions, under 28 U.S.C. § 1927, when there is

> clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes.

*Oliveri v. Thompson*, 803 F.2d 1265, 1272-73 (2d Cir. 1986) (holding also that the District Court must make "a high degree of specificity in the factual findings").  For all of the reasons stated above, as summarized below, Arachnid believes TouchTunes' Motion has been filed by TouchTunes' counsel in bad faith.

- o   TouchTunes' counsel intentionally withheld dispositive, exculpatory evidence (the IDS's and Addendums that Arachnid filed with the Patent Office) from the Court;
- o   TouchTunes' counsel, by filing the Motion, requests to make allegations that it knows are grossly insufficient on their face and directly contrary to black-letter patent law (allegations that "misrepresenting the scope of prior art" constitutes inequitable conduct);
- o   TouchTunes' counsel ignores the very recent *en banc* Federal Circuit Opinion in *Therasense*, requiring that IEQ can only be pleaded where the only reasonable inference is that the patentee had a specific intent to deceive the Patent Office, and TouchTunes' counsel did not come close to alleging such specific facts;
- o   TouchTunes' counsel fails to make allegations that could possibly support "but-for" materiality required to prove a claim for IEQ, because the allegations do not

include any specificity of how or why the allegedly withheld information would have resulted in the rejection of any specific patent claim.

*See* Dkt. 202-1 (TouchTunes' proposed Am. Compl.), at §§ 55-231.

Arachnid believes TouchTunes' Motion should be denied, and TouchTunes should be ordered to reimburse Arachnid for its fees and costs it incurred for having to respond to TouchTunes' baseless Motion.

## IX.     CONCLUSION

For all the foregoing reasons, Arachnid requests that TouchTunes' Motion To Amend be denied. Arachnid also requests that the Court order TouchTunes and its counsel to reimburse Arachnid for the fees and costs Arachnid incurred in responding to TouchTunes' Motion.

Respectfully submitted,

Date: September 19, 2011            s/ James P. Murphy                         _
                                    James P. Murphy
                                    Paul W. McAndrews
                                    McANDREWS HELD & MALLOY, Ltd.
                                    500 West Madison Street, 34th Floor
                                    Chicago, IL 60661
                                    Phone:  (312) 775-8000
                                    jmurphy@mcandrews-ip.com
                                    pwmcandrews@mcandrews-ip.com

                                    **Attorneys for Arachnid, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2011, I electronically filed the accompanying DEFENDANT ARACHNID, INC.'S RESPONSE TO TOUCHTUNES' MOTION TO AMEND ITS COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following, and it will also be served by U.S. mail on the following:

James S. Blank (JB-4376)
**Kaye Scholer LLP**
425 Park Avenue
New York, New York 10022
Phone: (212) 836-7528
Fax:    (212) 836-8689
Email:  jblank@kayescholer.com


Joseph S. Presta
Email:  jsp@nixonvan.com
Jonathon T. Reavill
Email:  jtr@nixonvan.com
**Nixon & Vanderhye, P.C.**
901 North Glebe Road, Suite 1100
Arlington, Virginia 22203
Phone: (703) 816-4000
Fax:    (703) 816-4100

Date: September 19, 2011                    s/  Violet Tovar
                                            McANDREWS HELD & MALLOY, Ltd.
                                            500 West Madison Street, 34th Floor
                                            Chicago, IL 60661
                                            Phone:  (312) 775-8000