UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOUCHTUNES MUSIC CORP.,<br><br>  Plaintiff,<br><br> v.<br><br>ROWE INTERNATIONAL CORP.,<br>ARACHNID, INC.,<br>AMI ENTERTAINMENT, INC. and<br>MERIT INDUSTRIES, INC. d/b/a/ MERIT<br>ENTERTAINMENT,<br><br>  Defendants.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. 07-cv-11450-RWS<br><br>Oral Argument January 9, 2013 |

**DECLARATION OF FRANCOIS GUY**

I, Francois Guy, hereby declare and state as follows:

1.  I am Director, Mobile Platforms Development, at TouchTunes Music Corporation and am submitting this Declaration in support of "TouchTunes' Motion for Summary Judgment of Noninfringement Regarding the '398 and '834 Patents" in the above-identified litigation between TouchTunes and Arachnid, Inc.

2.  I have intimate knowledge regarding how TouchTunes' jukeboxes store and display advertisements and album artwork. I also have intimate knowledge regarding the information sent from TouchTunes' facilities in Montreal, Canada, to TouchTunes' jukeboxes, including advertisement-related and song-related data.

A.  **Background**

3.  It is my understanding that Arachnid accuses TouchTunes of infringing U.S. Patent No. 5,848,398 and U.S. Patent No. 6,970,834 by virtue of the following accused products:

- Genesis II jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Rhapsody jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Maestro jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Ovation jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Allegro jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Maestro II jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Allegro MX-1 jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Ovation II jukebox running TouchTunes jukebox OS software 2.8.2 or higher;
- Allegro MX-1v jukebox running TouchTunes jukebox software 2.8.2 or higher;
- "TouchTunes' Jukebox Conversion kits" resulting in a TouchTunes jukebox running TouchTunes jukebox software 2.8.2 or higher; and
- "The TouchTunes Interactive Network" connected to a TouchTunes jukebox running TouchTunes jukebox OS software 2.8.2 or higher.

4.  It is also my understanding that both the '398 patent and the '834 patent expired on June 15, 2010. The statements made in this Declaration describe TouchTunes' jukeboxes and its

Montreal facility at least from the time TouchTunes first introduced its digital jukebox system until June 15, 2010.

5.      Generally speaking, TouchTunes' digital jukebox system includes music, album artwork and advertisements stored at TouchTunes' facility in Montreal and individual jukeboxes that download music, album artwork and advertisements from that facility.  From the time TouchTunes first introduced its digital jukebox system through June 15, 2010, there have been three generations of TouchTunes jukeboxes, referred to as "Gen1," "Gen2," and "Gen3" depending upon the particular generation of software being used in a given jukebox.

**B.     No TouchTunes Jukebox Has Downloaded, Stored or Used Data that Permits a Determination of a Time Within Which, an Event in Relation to Which, or the Frequency an Advertisement Will be Run**

6.      TouchTunes' Gen2 and Gen3 jukeboxes are capable of displaying advertisements. TouchTunes' Gen1 jukeboxes, however, have never downloaded, stored or displayed any advertisements.  Thus, in discussing the functionality of TouchTunes jukeboxes for displaying advertisements, this Declaration is limited to TouchTunes' Gen2 and Gen3 jukeboxes.

7.      I understand that the Court has interpreted the claims of the '398 and '834 patents so that certain claims require that a computer jukebox receive data which permits a determination of a time within which, or event in relation to which, an advertisement will be run.  I also understand the Court has interpreted the claims of the '398 and '834 patents so that certain claims additionally require that the data received by the computer jukebox also permit a determination of the frequency an advertisement will be run.

8.      The display of advertisements on TouchTunes' jukeboxes is dictated by the fairly random, unpredictable interactions of customers – or lack of such interactions – with the jukebox. As a result, there is simply no way to determine from the data received by the jukebox a time within which, or event in relation to which, an advertisement will be run (or that the advertisement will be run at all).  Assuming that an advertisement is displayed, there also is no way to determine from the data received by the jukebox the frequency an advertisement will be run.

9.      A customer interacts with TouchTunes jukeboxes by way of a "touchscreen" display. By touching the screen, a customer can view various interface pages that display information, such as song titles and album artwork. The pages that are displayed as a result of the customer touching the screen may also include advertisements. If the screen is not touched within a certain amount of time, the jukebox enters into an "idle mode," during which the jukebox may or may not display advertisements. Also, the jukebox may or may not play a song during the idle mode. The jukebox enters the idle mode based solely on the passage of time without a customer touching the screen; and entry into the idle mode does not depend in any way on whether or not the jukebox is playing a song.

10.     Thus, advertisements can be displayed (1) in response to a customer touching the display, and (2) if a certain amount of time has passed without a customer touching the display (*i.e.*, when the jukebox enters an idle mode). One of these two things must occur before an advertisement can be displayed on a TouchTunes jukebox. However, neither of these things is data received at the jukebox by a communication interface and/or from any type of management station, as in the '780 patent.

11.     TouchTunes' jukeboxes display advertisements in "inventories." An "inventory" is a location in a page that appears on the jukebox's screen. For example, the "Browse by Albums" page (which displays the album artwork for songs from that album available to be played on the jukebox) has an inventory at the bottom, where banner advertisements can be displayed. Inventories have particular "ad media" assigned to them. "Ad media" can be advertisements, but they can also be non-advertisements. A page may have multiple inventories, and different sets of inventories are assigned to different pages. For example, the "Browse by Albums" page has an inventory at the bottom of the page, another inventory at the top left of the page, and yet another inventory at top right of the page. Each inventory has its own queue of ad media items assigned to it.

12.     Customer interactions (or lack thereof) with a jukebox are unpredictable, and it is not possible to know at what point in time a customer will begin interacting with a jukebox, what

2062443

portions of the screen the customer will touch during his or her interaction with the jukebox, for how long the customer will interact with the jukebox, or at what point in time the customer will stop interacting with the jukebox. It is therefore not possible to know what inventory (let alone what specific advertisement) will be activated by the customer's interaction, or lack thereof, with the jukebox. It is also therefore not possible to know at what point in time, if at all, a jukebox will enter its idle mode. Furthermore, if a jukebox is operating in its idle mode, it is not possible to know at what point in time a customer may interact with the jukebox and interrupt the idle mode. If a particular advertisement is assigned to the jukebox's idle mode, but the jukebox does not enter an idle mode because of high user interaction with the jukebox during the advertisement's eligibility period, the advertisement will not be displayed at all.

13. Customer interaction (or lack thereof) with the jukebox governs the display of advertisements on TouchTunes' jukeboxes, and no data sent to TouchTunes' jukeboxes overrides that governing effect. Because, in all cases, the display of an advertisement on a TouchTunes jukebox depends on customer interaction with the jukebox (or lack thereof), TouchTunes' jukeboxes have never received, stored and/or used any data that permits the determination of a time within which, or an event in relation to which, an advertisement will be run. For the same reason, TouchTunes' jukeboxes have never received, stored and/or used any data that permits the determination of a frequency an advertisement will be run.

14. TouchTunes' jukeboxes can receive "SHOW_START_DT" and "SHOW_END_DT" information. This information only identifies fixed dates between which an advertisement is <u>eligible</u> to be displayed. However, because the display of advertisements by a TouchTunes jukebox is governed by unpredictable customer interactions (or lack thereof) with the jukebox, the advertisement may never be displayed at all. Thus, the SHOW_START_DT and SHOW_END_DT information does not permit the determination of a time within which, or an event in relation to which, an advertisement <u>will</u> be run. For at least the same reason, the SHOW_START_DT and SHOW_END_DT information does not permit a determination of the frequency an advertisement <u>will</u> be run.

15. Advertisers often have goals as to how many times they want their advertisements to be displayed across a collection of jukeboxes in a campaign. Such goals of advertisers are kept at TouchTunes' facility in Montreal and have never been sent to, received by, stored by or used by any TouchTunes jukebox. Although the timing and frequency with which advertisements will be displayed (if at all) on TouchTunes' jukeboxes are subject to the whims of the jukebox customers and therefore cannot be determined, TouchTunes can take certain measures in an effort to satisfy an advertiser's goals.

16. As TouchTunes has no way to determine when or how many times any given advertisement will run on any particular jukebox, TouchTunes' central facility in Montreal monitors the advertising campaign by keeping track of how many times the advertisement actually has been shown collectively on all of the jukeboxes that are assigned to the particular campaign. If, based on the number of times the advertisement has already been displayed, it does not appear that a particular advertisement will be displayed a sufficient number of times to meet the advertiser's goals, TouchTunes can add more jukeboxes to the campaign in order to increase the chance of getting more displays from the collection of jukeboxes in the campaign. With respect to jukeboxes already in the campaign, TouchTunes also could expand the inventory assignments for the advertisement to increase the chance of the advertisement being displayed more times on that particular jukebox.

17. Again, however, when and the actual number of times any particular jukebox will display any particular advertisement (if at all) is dictated by the amount of customer interaction (or lack thereof) that the jukebox experiences during the campaign. Of course, TouchTunes has no control over the amount of customer interaction (or lack thereof) that any of its jukeboxes will experience during a given time period. Thus, it can only monitor the past activity of the jukeboxes in the campaign (backward-looking monitoring) and then make adjustments to the campaign accordingly, in order to increase the chance that more (or less if too many are occurring) displays will occur as a whole on the collection of boxes in the campaign.

18. Unlike in the invention claimed in the '780 patent, TouchTunes has no way of making a forward-looking determination as to when or how many times a jukebox (or even the collection of jukeboxes) will display a particular advertisement. Thus, it certainly cannot and does not download such information to its jukeboxes, as required by the '780 patent.

19. Further, adding jukeboxes to and/or removing jukeboxes from an advertising campaign does not provide any jukebox with any data that permits a determination of a time within which, or event in relation to which, the advertisement will be run. Similarly, adding jukeboxes to and/or removing jukeboxes from an advertising campaign would not provide any jukebox with any data that permits a determination of the frequency an advertisement will be run. All of the jukeboxes display advertisements based on customer interaction (or lack thereof) with the jukebox.

20. In addition, expanding and decreasing the inventory assignments for an advertisement with respect to jukeboxes already in an advertising campaign does not provide any of the jukeboxes with any data that permits a determination of a time within which, or event in relation to which, the advertisement will be run. Nor does it provide any of the jukeboxes with any data that permits a determination of the frequency an advertisement will be run. Regardless of how many inventory assignments a particular advertisement has, a jukebox still only displays the advertisement (if at all) based on customer interaction (or lack thereof) with the jukebox.

21. Because of the lack of predictability that exists with each jukebox, however, TouchTunes still cannot ensure that the above measures will ultimately meet the advertisers' goals, which define how many times it desires that an advertisement be displayed across the collection of jukeboxes in the campaign.

22. In the end, because the display of advertisements on TouchTunes' jukeboxes is based upon the unpredictable interactions of customers with the jukeboxes (or lack thereof), it is an unpredictable and fairly random process. In other words, the display of advertisements on any particular TouchTunes jukebox is dependent on the whims of its customers using (or not using) the particular jukebox.

C.  **TouchTunes' Jukeboxes Do Not Include a Data Storage Unit Having Separate Structural Advertisement and Song Locations Within the Data Storage Unit**

23. I understand that the Court has interpreted language in certain claims of the '834 patent so that those claims require a computer jukebox that includes "a data storage unit having separate structural advertisement and song locations within the data storage unit." I also understand that the Court noted that "structural" locations correspond to "folders" or "subfolders" in a directory.

24. Regardless of software generation, no TouchTunes jukebox has ever included a data storage unit having separate structural advertisement and song locations within the data storage unit. Similarly, no TouchTunes jukebox has ever stored downloaded advertisements at a location separate from the location at which songs are stored. Instead, TouchTunes' jukeboxes have only stored advertisements in the same structural location (namely, the same directory folder or subfolder) as songs. Specifically, each TouchTunes Gen3 jukebox stores the advertisements with the songs on its hard disk under the directory path "/usr/local/touchtunes/storage/music/". Each TouchTunes Gen2 jukebox stores the advertisements with the songs on its hard disk under the directory path "/usr/local/touchtunes/music/". TouchTunes' Gen1 jukeboxes do not store any advertisement data at all.

D.  **No TouchTunes Jukebox Has Included the "Processing Means" of the '398 Patent**

25. I understand that certain claims of the '398 patent require a "processing means for controlling the display of advertisement data on said visual display and to store advertisement display data in said memory." I also understand that Arachnid told the United States Patent and Trademark Office that that "processing means" requires a microprocessor that runs an algorithm that must:

- Display advertisements based on data downloaded from a central management station which includes when and the number of times to play the advertisements;
- Resolve a conflict between running an advertisement and a song by displaying an advertisement at the same time of the song if the song is just audio and the

- advertisement is just video or at the next available time slot if the advertisement is both audio and video; and
- Store downloaded advertisements at a location separate from the location in which songs are stored.

26. As discussed above, no TouchTunes jukebox has ever included a microprocessor that displays an advertisement based on data (downloaded from a central management station or otherwise) that includes when and the number of times to play the advertisement.

27. In addition, no TouchTunes jukebox has ever included a microprocessor that resolves a conflict between displaying an advertisement and a song by displaying an advertisement at the same time of the song if the song is just audio and the advertisement is just video or at the next available time slot if the advertisement is both audio and video.

28. Instead, TouchTunes' jukeboxes display advertisements based upon customer interaction with the jukebox (or lack thereof). In displaying advertisements, no TouchTunes jukebox has ever taken into account whether, if a song is playing, the song is just audio and the advertisement is just video or both audio and video. Moreover, TouchTunes' jukeboxes have never relied on "time slots" to display advertisements and therefore could not resolve any conflict by displaying the advertisement "at the next available time slot if the advertisement is both audio and video."

29. Furthermore, as discussed above, no TouchTunes jukebox has ever included a microprocessor that stores downloaded advertisements at a location separate from the location in which songs are stored. Instead, TouchTunes' jukeboxes have only stored advertisements in the same location/folder as songs.

E. **TouchTunes' Jukeboxes Have Not Displayed Advertisements Based on the Fact that the Jukebox is Not Playing a Song**

30. I understand that each claim of the '834 patent recites a computer jukebox that includes a processor that runs an advertisement "when said jukebox is not generating a signal representing a song." I also understand that the parties have agreed that the phrase "when said

jukebox is not generating a signal representing a song" means "when the jukebox is not playing a song."

31.   The display of advertisements on TouchTunes jukeboxes is entirely independent from the playing of songs.  No TouchTunes jukebox has ever displayed an advertisement based on the fact that the jukebox was not playing a song.  Instead, all advertisements displayed by a TouchTunes jukebox have been displayed based upon user interaction, regardless of whether or not a song is playing on the jukebox.

F.   **Summary**

32.   No TouchTunes jukebox has ever downloaded, stored or used data which permits a determination of a time within which, or event in relation to which, an advertisement will be run.

33.   No TouchTunes jukebox has ever downloaded, stored or used data which permits a determination of the frequency an advertisement will be run.

34.   No TouchTunes jukebox has ever included a data storage unit having separate structural advertisement and song locations within the data storage unit.  Similarly, no TouchTunes jukebox has ever stored downloaded advertisements at a location separate from the location at which songs are stored.

35.   No TouchTunes jukebox has ever included a microprocessor that:

- Displays advertisements based on data downloaded from a central management station which includes when and the number of times to play the advertisements;

- Resolves a conflict between running an advertisement and a song by displaying an advertisement at the same time of the song if the song is just audio and the advertisement is just video or at the next available time slot if the advertisement is both audio and video; and

- Stores downloaded advertisements at a location separate from the location in which songs are stored.

36.   No TouchTunes jukebox has ever included a processor that based the display of an advertisement upon the fact that the jukebox was not playing a song.

37.  In accordance with 28 U.S.C. § 1746, I hereby verify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on: 15 OCT 2012

_____
Francois Guy

2062443