UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOUCHTUNES MUSIC CORP.,<br><br>Plaintiff,<br><br>-against-<br><br>ROWE INTERNATIONAL CORP.,<br>ARACHNID, INC.,<br>AMI ENTERTAINMENT, INC. and<br>MERIT INDUSTRIES, INC. d/b/a/ MERIT<br>ENTERTAINMENT,<br><br>Defendants.<br><br>AND RELATED COUNTER CLAIMS | Civil Action No. 07-cv-11450-RWS |

**TOUCHTUNES' RESPONSE TO ARACHNID'S RULE 56.1 STATEMENT
OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION
FOR SUMMARYJUDGMENT OF NO INEQUITABLE CONDUCT**

2078957

Pursuant to the Federal Rules of Civil Procedures and Local Rule 56.1 of the United States District Court for the Southern District of New York, Plaintiff TouchTunes responds respectfully to each numbered paragraph contained in Arachnid's Local Rule 56.1 Statement of Materials Facts. Any admissions herein are made solely for the purpose of the particular summary judgment motion to which the Rule 56.1 statement was submitted by Arachnid. Even if all of Arachnid's alleged undisputed fact were to be admitted, they would still fail to satisfy its burden on summary judgment to show that it is entitled to summary judgment as a matter of law.

### ARACHNID'S ALLEGED FACT #1

1. U.S. Patent No. 5,848,398 ("the '398 patent"), entitled "System for Managing a Plurality of Computer Jukeboxes," was filed on April 25, 1996 and issued on December 8, 1998. '398 patent (Dkt. No. 215-1). As issued, the '398 patent names John R. Martin, Michael L. Tillery and Samuel N. Zammuto as inventors, but Samuel N. Zammuto was later removed as a named inventor in a Certificate of Correction. *Id.* The '398 patent is assigned to Arachnid. *Id.* The independent claims of the '398 patent are directed to "a computer jukebox" and "a jukebox network." *Id.*

### TOUCHTUNES' RESPONSE TO FACT #1

1. Admitted

### ARACHNID'S ALLEGED FACT #2

2. U.S. Patent No. 6,970,834 ("the '834 patent"), entitled "Advertisement Downloading Computer Jukebox," was filed on November 20, 2002 and issued on November 29, 2005. '834 patent (Dkt. No. 215-2). As issued, the '834 patent names John R. Martin, Michael L. Tillery and Samuel N. Zammuto as inventors, but Samuel N. Zammuto was later removed as a named inventor in a Certificate of Correction. *Id.* The '834 patent is assigned to Arachnid. *Id.*

The independent claims of the '834 patent are directed to "a computer jukebox" and "a computer jukebox network." *Id.*

**TOUCHTUNES' RESPONSE TO FACT #2**

2. Admitted

**ARACHNID'S ALLEGED FACT #3**

3. The '398 and '834 patents both claim priority to the same three applications: (i) No. 08/584,253, filed on Jan. 11, 1996, now Pat. No. 5,781,889; (ii) No. 08/268,782, filed on Jun. 30, 1994; and (iii) No. 07/538,981, filed on Jun. 15, 1990, now abandoned. *See* '398 patent (Dkt. No. 215-1); '834 patent (Dkt. No. 215-2).

**TOUCHTUNES' RESPONSE TO FACT #3**

3. Admitted

**ARACHNID'S ALLEGED FACT #4**

4. U.S. Patent No. 6,191,780 ("the '780 patent"), entitled "Customizable Multimedia Structures," was filed on March 25, 1998 and issued on February 20, 2001. '780 patent (Dkt. No. 215-3). The '780 patent names John R. Martin and Charles D. Rentmeesters as inventors. *Id.* The '780 patent does not claim priority to any other U.S. application or patent. *Id.*

**TOUCHTUNES' RESPONSE TO FACT #4**

4. Admitted

**ARACHNID'S ALLEGED FACT #5**

5. A third party requested reexamination of the '398 patent on April 22, 2008 and the U.S. Patent and Trademark Office ("PTO") issued an Ex Parte Reexamination Certificate for the '398 patent on June 28, 2011. '398 patent Ex Parte Reexamination Certificate (Dkt. No. 215-1 at 14).

**TOUCHTUNES' RESPONSE TO FACT #5**

5.     Admitted

**ARACHNID'S ALLEGED FACT #6**

6.     A third party requested reexamination of the '834 patent on February 1, 2008 and the PTO issued an Ex Parte Reexamination Certificate for the '834 patent on July 19, 2011. '834 patent Ex Parte Reexamination Certificate (Dkt. No. 215-2 at 16).

**TOUCHTUNES' RESPONSE TO FACT #6**

6.     Admitted

**ARACHNID'S ALLEGED FACT #7**

7.     During the reexamination proceedings, on December 18, 2008, the PTO Examiner rejected the claims of the '398 and '834 patents based on U.S. Patent No. 5,532,923 to Sone (the "Sone Patent"). 12/18/2008 Office Actions (Exs. 1 & 2). The Office Actions for each of the reexamination proceedings contain substantially the same rejections and reasoning with alterations to suit the different patent claims.

**TOUCHTUNES' RESPONSE TO FACT #7**

7.     Admitted

**ARACHNID'S ALLEGED FACT #8**

8.     The December 18, 2008 Office Action in the '398 patent reexamination states that "Sone discloses a karaoke network system," that "Sone discloses a **computer jukebox**," that the "computer jukebox is capable of receiving and storing digital data representing the identity of each of the advertisements (Spare event 1, Spare event 2, Spare event 3…)" and that the "computer jukebox is capable of receiving and storing digital data representing when and the number of times each of the advertisements is to be run (when is during blank periods of the

idling state, the numbers of times is based on the Mode that is used: column 4, lines 47-58)." '398 patent reexamination, 12/18/2008 Office Action, at 4-5 (Ex. 1).

**TOUCHTUNES' RESPONSE TO FACT #8**

8.      Admitted

**ARACHNID'S ALLEGED FACT #9**

9.      The December 18, 2008 Office Action in the '398 patent reexamination also states that "the Sone karaoke machine meets the patent owner's definition of computer jukebox." '398 patent reexamination, 12/18/2008 Office Action, at 5 (Ex. 1).

**TOUCHTUNES' RESPONSE TO FACT #9**

9.      Admitted

**ARACHNID'S ALLEGED FACT #10**

10.     The December 18, 2008 Office Action in the '834 patent reexamination states that "Sone discloses a karaoke network system," that "Sone discloses a **computer jukebox**," that the computer jukebox **receives and stores digital advertisement data**," that the "digital advertisement data represents the identity of each of the advertisements (Spare event 1, Spare event 2, Spare event 3...)" and that the "digital advertisement data representing when and the number of times each of said advertisements is to be run (when is during blank periods of the idling state, the numbers of times is based on the Mode that is used: column 4, lines 47-58)." '834 patent reexamination, 12/18/2008 Office Action, at 4-5 (Ex. 2).

**TOUCHTUNES' RESPONSE TO FACT #10**

10.     Admitted

**ARACHNID'S ALLEGED FACT #11**

11.     The December 18, 2008 Office Action in the '834 patent reexamination also states that "the Sone karaoke machine meets the patent owner's definition of computer jukebox." '834 patent reexamination, 12/18/2008 Office Action, at 5 (Ex. 2).

**TOUCHTUNES' RESPONSE TO FACT #11**

11.   Admitted

**ARACHNID'S ALLEGED FACT #12**

12.   Arachnid submitted a March 17, 2009 Declaration of Patrick Rice ("the Rice Declaration"). 3/17/09 Rice Declaration (Ex. 3). The Rice Declaration was submitted in connection with the reexamination proceedings of the '834 and '398 patents. 3/17/09 Rice Declaration (Ex. 3). At the time the Rice Declaration was submitted to the PTO, Mr. Rice was the Co-President of Arachnid. 3/17/09 Rice Declaration, at ¶ 1 (Ex. 3).

**TOUCHTUNES' RESPONSE TO FACT #12**

12.   Admitted

**ARACHNID'S ALLEGED FACT #13**

13.   The Rice Declaration contains the following statement:

> It is my understanding that, in 1992, karaoke machines in public use were much different than jukeboxes. Karaoke machines generally were not coin-operated, and were operated not by patrons but by a dedicated operator using a personal console. Further, karaoke machines utilized different hardware to accomplish much different functions than jukeboxes. Karaoke machines were set up such that an operator could enter a code corresponding to a song requested by a user. Once the code was entered, by the operator, the background music of the song would play, and the words of the song would appear on a monitor for the user to see and sing along with. And karaoke machines used moveable speakers and microphones for the user to sing the song to an audience. Karaoke machines did not play studio-quality songs or music.

3/17/09 Rice Declaration, at ¶ 6 (Ex. 3).

**TOUCHTUNES' RESPONSE TO FACT #13**

13.   Admitted

**ARACHNID'S ALLEGED FACT #14**

14. On June 15, 2009, the PTO Examiner finally rejected the claims of the '834 and '398 patents in the reexamination proceedings, and Arachnid filed Notices of Appeal for each of the '834 and '398 patents on August 10, 2009. 8/10/2009 Notices of Appeal (Exs. 4 & 5).

**TOUCHTUNES' RESPONSE TO FACT #14**

14. Admitted

**ARACHNID'S ALLEGED FACT #15**

15. On September 15, 2010, the Board conducted an oral hearing in connection with the reexamination proceedings for the '398 and '834 patents. 9/15/2010 Record of Oral Hearing (Ex. 6).

**TOUCHTUNES' RESPONSE TO FACT #15**

15. Admitted

**ARACHNID'S ALLEGED FACT #16**

16. During the September 15, 2010 Board hearing, Administrative Law Judge Boalick asked "when each of the three patents on appeal here will be expiring" and stated that for claim interpretation, "broadest reasonable interpretation would not apply if they're expired." 9/15/2010 Record of Oral Hearing, at 27:1-20 (Ex. 6).

**TOUCHTUNES' RESPONSE TO FACT #16**

16. Admitted

**ARACHNID'S ALLEGED FACT #17**

17. During the September 15, 2010 Board hearing, Administrative Law Judge Turner stated that it "would be helpful to have any sort of information, if you can file something supplementary, with respect to this latter patent of the 575, on whether there's a terminal

disclaimer or whether this patent would expire" because "as we've talked about, that's going to affect the analysis." 9/15/2010 Record of Oral Hearing, at 46:15-24 (Ex. 6).

### TOUCHTUNES' RESPONSE TO FACT #17

17.   Admitted

### ARACHNID'S ALLEGED FACT #18

18.   During the September 15, 2010 Board hearing, Arachnid's counsel, Mr. Murphy, asked whether the Board had "any idea what would be the proper way to file something," and administrative law judges stated the following:

> JUDGE TURNER:  You could probably just file it for the reexam record.
>
> * * *
>
> JUDGE BOALICK:  Right, right. I'm not sure. I know that's possible to, you know, file supplementary information.
>
> JUDGE EASTHOM:  For the Board.
>
> * * *
>
> JUDGE BOALICK:  For the Board's attention.
>
> JUDGE EASTHOM:  Because we have jurisdiction.
>
> JUDGE BOALICK:  Right, so it would – right. It would be to the Board.

9/15/2010 Record of Oral Hearing, at 47:1-23 (Ex. 6).

### TOUCHTUNES' RESPONSE TO FACT #18

18.   Admitted

### ARACHNID'S ALLEGED FACT #19

19.   The Manual of Patent Examining Procedure ("MPEP") states that 37 C.F.R. § 41.50(d) authorizes the Board to "additionally brief" any matter that is "deemed appropriate for

- 7 -

a reasoned decision on appeal." MPEP § 1212. The MPEP further states that such matters "may include, for example ... (B) the applicability of prior art that has not been made of record." *Id.* The MPEP further states that the "making of a requirement under 37 CFR 41.50(d) ... is discretionary with the Board." *Id.*

**TOUCHTUNES' RESPONSE TO FACT #19**

19. Admitted

**ARACHNID'S ALLEGED FACT #20**

20. In response to the Board's request during the September 15, 2010 oral hearing, on September 28, 2010, Arachnid filed a single Supplemental Brief in connection with the reexamination proceedings for the '398 and '834 patents. 9/28/2010 Supplemental Brief of Patent Owner (Ex 7). Arachnid's Supplemental Brief states that the "Arachnid Patents expired on June 15, 2010." 9/28/2010 Supplemental Brief of Patent Owner, at 2 (Ex 7).

**TOUCHTUNES' RESPONSE TO FACT #20**

20. Admitted

**ARACHNID'S ALLEGED FACT #21**

21. Arachnid's September 28, 2010 Supplemental Brief contains the following argument concerning the effect of the expiration of the patents on claim construction:

> During reexamination of the Arachnid Patents, the Examiner gave the claims of the patents their "broadest reasonable interpretation." (*See* December 17, 2009 Examiner's Answer (Control No. 90/010,097), at 30; December 1, 2009 Examiner's Answer (Control No. 90/010,095), at 11; December 1, 2009 Examiner's Answer (Control No. 90/010,147), at 24; January 8, 2010 Examiner's Answer (Control No. 90/010,094), at 23. Patent Owner, in fact, argued throughout its Appeal Briefs that, in some instances, the Examiner construed certain claim terms unreasonably broadly, and inconsistently with the patent specifications. Now that the Arachnid Patents have expired, Patent Owner respectfully submits that it is certainly not proper to apply

> such broad claim interpretations on appeal. Rather, Patent Owner respectfully submits that, consistent with the Board's case law, the claims of the Arachnid Patents should be construed on appeal pursuant to established claim construction principles, and to sustain their validity, if possible. Therefore, for the reasons that follow, Patent Owner requests that the Board interpret certain claims terms of the Arachnid Patents more narrowly than the Examiner did, and in accordance with established claim construction principles.

9/28/2010 Supplemental Brief of Patent Owner, at 5-6 (Ex 7).

### TOUCHTUNES' RESPONSE TO FACT #21

21. Admitted

### ARACHNID'S ALLEGED FACT #22

22. On October 5, 2010, the Court issued an Opinion denying TouchTunes' motion for summary judgment of infringement. 10/5/2010 Opinion at 2 (Dkt. No. 174). In that opinion, the Court construed the term "song." 10/5/2010 Opinion at 5-9 (Dkt. No. 174).

### TOUCHTUNES' RESPONSE TO FACT #22

22. Admitted

### ARACHNID'S ALLEGED FACT #23

23. On October 7, 2010, Arachnid filed a Second Supplemental Brief to the Board in connection with the reexamination proceedings for the '398, and '834 patents, attaching the October 5, 2010 Opinion. 10/7/2010 Second Supplemental Brief of Patent Owner (Ex. 8).

### TOUCHTUNES' RESPONSE TO FACT #23

23. Admitted

### ARACHNID'S ALLEGED FACT #24

24. On October 11, 2010, TouchTunes' counsel, Joseph S. Presta, sent a letter to Arachnid's counsel, Joseph M. Butscher, James P. Murphy and Paul W.

McAndrews. 10/11/2010 Letter (Ex. 9). In that letter, TouchTunes' counsel asserted that Arachnid's September 28, 2010 Supplemental Brief to the Board "contains a number of statements about the prior art that are contradicted by the actual teaching of the prior art." 10/11/2010 Letter, at 1 (Ex. 9).

**TOUCHTUNES' RESPONSE TO FACT #24**

24.     Admitted

**ARACHNID'S ALLEGED FACT #25**

25.     In the October 11, 2010 letter, TouchTunes' counsel identified thirteen (13) karaoke references that TouchTunes asserted constituted prior art that should be disclosed to the PTO. 10/11/2010 Letter (Ex. 9).

**TOUCHTUNES' RESPONSE TO FACT #25**

25.     Admitted

**ARACHNID'S ALLEGED FACT #26**

26.     The October 11, 2010 letter stated that TouchTunes' counsel was enclosing "copies of those prior art references" and identifying "specifically where in those references the material features are disclosed." 10/11/2010 Letter at 2 (Ex. 9).

**TOUCHTUNES' RESPONSE TO FACT #26**

26.     Admitted

**ARACHNID'S ALLEGED FACT #27**

27. Two of the references identified in TouchTunes' October 11, 2010 letter, U.S. Patent No. 5,046,004 to Tsumura et al. and U.S. Patent No. 5,252,775 to Urano, had been previously submitted to the PTO in an Information Disclosure Statement ("IDS") during the reexamination proceedings. *See* '398 patent reexamination, 12/18/2008 IDS, at Cite Nos. A-51

and A-69 (Ex. 10); '834 patent reexamination, 12/12/2008 IDS, at Cite Nos. A-51 and A-69 (Ex. 11).

### TOUCHTUNES' RESPONSE TO FACT #27

27.     Admitted

### ARACHNID'S ALLEGED FACT #28

28.     Arachnid submitted an IDS to the PTO in each of the reexaminations of the '398 and '834 patents on October 22, 2010, listing the eleven new karaoke references identified by TouchTunes. 10/22/2010 IDS Submissions (Exs. 12 & 13).

### TOUCHTUNES' RESPONSE TO FACT #28

28.     Admitted

### ARACHNID'S ALLEGED FACT #29

29.     On November 9, 2010, TouchTunes' counsel, Mr. Presta, sent another letter to Arachnid's counsel, Messrs. Butscher, Murphy and McAndrews. 11/9/2010 Letter (Ex. 14). In the November 9, 2010 letter, TouchTunes' counsel stated that Arachnid's October 22, 2010 IDS "lacked any explanation as to what the references disclose or how they contradict your previous representations to the U.S. Patent and Trademark Office." 11/9/2010 Letter, at 1-2 (Ex. 14).

### TOUCHTUNES' RESPONSE TO FACT #29

29.     Admitted

### ARACHNID'S ALLEGED FACT #30

30.     On November 23, 2010, Arachnid submitted an Addendum to the October 22, 2010 IDS in each of the reexaminations of the '398 and '834 patents. 11/23/2010 Addendum to IDS (Ex. 15). In that Addendum, Arachnid included TouchTunes' quotations of Arachnid's purported misstatements as set forth in the October 11, 2010 letter, as well as the verbatim

excerpts, including emphasis, from the prior art references that TouchTunes identified in association with each statement. *Compare* 10/11/2010 Letter (Ex. 9) *with* 11/23/2010 Addendum to IDS (Ex. 15).

**TOUCHTUNES' RESPONSE TO FACT #30**

30.     Admitted

**ARACHNID'S ALLEGED FACT #31**

31.     In the November 23, 2010 Addendum, Arachnid also included its own comments explaining why TouchTunes' characterizations and assertions about the references were incorrect. *See* 11/23/2010 Addendum to IDS (Ex. 15).

**TOUCHTUNES' RESPONSE TO FACT #31**

31.     Admitted

**ARACHNID'S ALLEGED FACT #32**

32.     TouchTunes' counsel, Mr. Presta, sent a third letter to Arachnid's counsel, Messrs. Butscher, Murphy and McAndrews, on January 10, 2011. 1/10/2011 Letter (Ex. 16). In the January 10, 2011 letter, TouchTunes identified U.S. Patent No. 5,953,005 to Liu ("Liu") as being withheld from the PTO. 1/10/2011 Letter (Ex. 16).

**TOUCHTUNES' RESPONSE TO FACT #32**

32.     Admitted

**ARACHNID'S ALLEGED FACT #33**

33.     Arachnid submitted an IDS in each of the '398 and '834 patent reexaminations on January 12, 2011. 1/12/2011 IDS (Ex. 17). In the January 12, 2011 IDS, Arachnid identified the Liu patent to the PTO. 1/12/2011 IDS (Ex. 17).

**TOUCHTUNES' RESPONSE TO FACT #33**

33.     Admitted

**ARACHNID'S ALLEGED FACT #34**

34.     In the January 12, 2011 IDS, Arachnid also included TouchTunes' verbatim quotations, including emphasis, of Arachnid's purported misstatements as stated by TouchTunes in the January 10, 2011 letter, along with Arachnid's response to TouchTunes' assertion that the statements were incorrect. *Compare* 1/12/2011 IDS (Ex. 17) *with* 1/10/2011 Letter (Ex. 16).

**TOUCHTUNES' RESPONSE TO FACT #34**

34.     Admitted

**ARACHNID'S ALLEGED FACT #35**

35.     On March 9, 2011, the Board issued its Decisions on Appeal in the reexaminations of the '398 and '834 patents, reversing the Examiner's rejections of the appealed claims. 3/9/2011 Decision on Appeal (Ex. 18); '834 patent reexamination, 3/9/2011 Decision on Appeal (Ex. 19).

**TOUCHTUNES' RESPONSE TO FACT #35**

35.     Admitted

**ARACHNID'S ALLEGED FACT #36**

36.     The March 9, 2011 Decisions on Appeal contain the following statement:

> We agree with Appellant that, at the time of the invention, Karaoke machines and jukeboxes were significantly different (App. Br. 9), and that one of ordinary skill in the art would not have considered them to be synonymous.

3/9/2011 Decision on Appeal, at 18 (Ex. 18); '834 patent reexamination, 3/9/2011 Decision on Appeal, at 18 (Ex. 19).

- 13 -

**TOUCHTUNES' RESPONSE TO FACT #36**

36. Admitted

**ARACHNID'S ALLEGED FACT #37**

37. On March 28, 2011, TouchTunes' counsel, Mr. Presta, sent a fourth letter to Arachnid's counsel, Messrs. Butscher, Murphy and McAndrews. 3/28/2011 Letter (Ex. 20).

**TOUCHTUNES' RESPONSE TO FACT #37**

37. Admitted

**ARACHNID'S ALLEGED FACT #38**

38. The March 28, 2011 letter restated TouchTunes' complaints about Arachnid's purported misrepresentations and stated that "[y]ou are also required to advise the Board and the Examiner that further examination is needed in view of the true facts that were withheld from the Board." 3/28/2011 Letter (Ex. 20).

**TOUCHTUNES' RESPONSE TO FACT #38**

38. Admitted

**ARACHNID'S ALLEGED FACT #39**

39. On April 15, 2011, the Examiner issued a Notice of Intent to Issue Ex Parte Reexam Certificate in the '398 patent reexamination. '398 patent reexamination, 4/15/2011 NIRC (Ex. 21). Included with that Notice, the Examiner attached a List of References Cited by Applicant and Considered by Examiner, which included the Examiner's initials next to each of the newly identified references. *Id.*

**TOUCHTUNES' RESPONSE TO FACT #39**

39. Admitted except to the extent Arachnid is suggesting that the references were substantively considered beyond simply placing them in the file, as the Examiner will only

- 14 -

consider such prior art to the extent the relevance is explained. MPEP § 2256. Arachnid concealed the relevance and represented that the cited prior art was irrelevant to patentability.

### ARACHNID'S ALLEGED FACT #40

40. On May 2, 2011, the Examiner issued a Notice of Intent to Issue Ex Parte Reexam Certificate in the '834 patent reexamination. '834 patent reexamination, 5/2/2011 NIRC (Ex. 22). Included with that Notice, the Examiner attached a List of References Cited by Applicant and Considered by Examiner, which included the Examiner's initials next to each of the newly identified references. *Id.*

### TOUCHTUNES' RESPONSE TO FACT #40

40. Admitted except to the extent Arachnid is suggesting that the references were substantively considered beyond simply placing them in the file, as the Examiner will only consider such prior art to the extent the relevance is explained. MPEP § 2256. Arachnid concealed the relevance and represented that the cited prior art was irrelevant to patentability.

### ARACHNID'S ALLEGED FACT #41

41. The form that the Examiner initialed in each of the '398 and '834 patent reexaminations states "EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered." *See* '398 patent reexamination, 4/15/2011 NIRC (Ex. 21); '834 patent reexamination, 5/2/2011 NIRC (Ex. 22).

### TOUCHTUNES' RESPONSE TO FACT #41

41. Admitted except to the extent Arachnid is suggesting that the references were substantively considered beyond simply placing them in the file, as the Examiner will only consider such prior art to the extent the relevance is explained. MPEP § 2256. Arachnid

concealed the relevance and represented that the cited prior art was irrelevant to patentability.

### ARACHNID'S ALLEGED FACT #42

42.     With respect to the Liu patent, the box containing the Examiner's initials contains the annotation "ESK for LHB," indicating that the Examiner considered that reference. *See* '834 patent reexamination, 5/2/2011 NIRC (Ex. 22).

### TOUCHTUNES' RESPONSE TO FACT #42

42.     Denied to the extent Arachnid represents that the Examiner herself initialed the form and that the references were substantively considered beyond simply placing them in the file, as the Examiner will only consider such prior art to the extent the relevance is explained. MPEP § 2256. Arachnid concealed the relevance and represented that the cited prior art was irrelevant to patentability.

### ADDITIONAL MATERIAL FACTS IN DISPUTE

43.     At the time Arachnid submitted the Rice declaration, it was aware that the karaoke prior art included devices that accepted payment and that allowed patrons to select songs and perform karaoke without assistance from another party. Schonfeld Dec., ¶¶ 5-9 (and exhibits cited therein).

44.     At the time Arachnid argued to the PTO that the karaoke prior art did not fall within the scope of the claim term "computer jukebox," Arachnid was aware that its argument was false. Schonfeld Dec., ¶¶ 5-15 (and exhibits cited therein).

45.     Throughout the reexamination of the '398 and '834 patents, Arachnid was aware of numerous karaoke prior art references that accepted payment and could be operated solely by a patron. Schonfeld Dec., ¶¶ 5-15 (and exhibits cited therein).

46.     Arachnid intentionally and deliberately concealed the truth about the scope and

content of the karaoke prior art from the PTO in order to have the '398 and '834 patents confirmed as patentable. Schonfeld Dec., ¶¶ 5-15 (and exhibits cited therein).

47. Arachnid intentionally and deliberately led the Board and the Examiner to believe that the karaoke prior art did not accept payment and could not be operated solely by a patron. Schonfeld Dec., ¶¶ 5-15 (and exhibits cited therein).

48. Arachnid's false statements and arguments about the karaoke prior art contradict arguments its own expert made in the prior Ecast litigation. Schonfeld Dec., ¶¶ 6-8 (and exhibits cited therein).

49. During the appeal of the '398 and '834 patents, Arachnid intentionally sent prior art information to the Examiner instead of the Board, knowing that the Board had jurisdiction at the time and would not consider the information. Presta Dec., Exs. 18-21.

50. The Board expressly relied on Arachnid's false declaration, statements and arguments about the karaoke prior art in deciding to reverse the Examiner's rejection and confirm the '398 and '834 patents as being patentable. Schonfeld Dec., ¶¶ 20-25 (and exhibits cited therein).

51. The Board would not have reversed the Examiner's rejection of the '398 or '834 patent had Arachnid disclosed to the Board the truth about what it knew about the scope and content of the karaoke prior art. Schonfeld Dec., ¶¶ 1-2, 8, 28-30 (and exhibits cited therein).

52. When the Board returns jurisdiction to the Examiner after an appeal, the Examiner is only supposed to consider additional prior art submitted by the applicant to the extent the relevance of the new prior art is explained by the applicant to the Examiner. Presta Dec., Ex. 2 §§ 1213.04, 2256.

53. When Arachnid submitted karaoke prior art to the Examiner that contradicted its

prior false representations and arguments regarding the karaoke prior art, Arachnid intentionally downplayed the relevance of the prior art in order to avoid having the examiner fully consider the teachings thereof. Presta Dec., Exs. 18-21.

54. Arachnid never explained to the PTO that the Board relied on false representations by Arachnid about the scope and content of the karaoke prior art. Presta Dec., Exs. 18-21.

55. The Examiner did not consider whether the teachings of the karaoke prior art submitted by Arachnid impacted the Board's decision confirming the claims of the '398 or '834 patents. Presta Dec., Ex. 2 §§ 2256, 1214.04; Exs. 18-21.

56. Had Arachnid explained the relevance of the karaoke prior art to the Examiner, and pointed out that the Board relied on false information in making its decision, the Examiner would have rejected the claims of the '398 and '834 patents. Schonfeld Dec., ¶¶ 1-2, 8, 28-30 (and exhibits cited therein).

57. Examiner initials on Arachnid's IDS forms do not reflect that the karaoke prior art was substantively considered by the Examiner in confirming the '398 or '834 patents over the prior art. Presta Dec., Ex. 2 §§ 1214.04, 2256

58. Arachnid is furthering its inequitable conduct by asserting in this litigation that the Examiner's initials on the IDS forms mean that the Examiner substantively considered the karaoke prior art submitted by Arachnid. Br. (Dkt. No. 227) at 13-15.

59. Arachnid is furthering its inequitable conduct in this litigation by maintaining its infringement allegations against TouchTunes while knowing that the '398 and '834 patents were confirmed as patentable through its inequitable conduct. Schonfeld Dec., ¶¶ 1-2, 8, 28-30 (and exhibits cited therein).

60.     Arachnid's misconduct has an immediate and necessary relation to all of the asserted patents in this case (including the '780 patent), as well as to the equity Arachnid seeks in this case, namely the enforcement of the '398, '834 and '780 patents. Presta Dec., Ex. 21; Presta Dec., Ex. 24 at 1:1-41, 3:26 to 4:19, Fig. 1, claims 4-6; Presta Dec., Ex. 30 at 1; Presta Dec., Ex. 31; Presta Dec., Ex. 32 at 2; Presta Dec., Ex. 34 at 2-3.

Respectfully submitted,

Date: November 19, 2012      By:     /s/ James S. Blank
                                     James S. Blank (JB-4376)
                                     **KAYE SCHOLER LLP**
                                     425 Park Avenue
                                     New York, New York 10022-3589
                                     Tel: (212) 836-8000
                                     Fax: (212) 836-8689
                                     E-mail: jblank@kayescholer.com

                                     Joseph S. Presta
                                     E-mail: jsp@nixonvan.com
                                     Jonathon T. Reavill
                                     E-mail: jtr@nixonvan.com
                                     **NIXON & VANDERHYE, P.C.**
                                     901 North Glebe Road, 11th Floor
                                     Arlington, Virginia 22203
                                     Tel: (703) 816-4000
                                     Fax: (703) 816-4100

                                     *Attorneys for Plaintiff*
                                     *TOUCHTUNES MUSIC CORP.*