**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

TOUCHTUNES MUSIC CORP.,

            Plaintiff,

    v.                                                Civil Action No. 07-cv-11450-RWS

ROWE INTERNATIONAL CORP.,
ARACHNID, INC.,
AMI ENTERTAINMENT, INC. and
MERIT INDUSTRIES, INC. d/b/a/ MERIT
ENTERTAINMENT,

            Defendants.

AND RELATED COUNTERCLAIMS


**REPLY IN SUPPORT OF TOUCHTUNES' MOTION FOR SUMMARY**
**JUDGMENT OF NON-INFRINGEMENT REGARDING THE '398 AND '834 PATENTS**

2089478

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................... 1

II.    ARGUMENT .............................................................................................. 1

    A.    TouchTunes Does Not Satisfy the
           Jukebox Storage Requirements ................................................ 1

    B.    TouchTunes Does Not Satisfy the
           "When," "At Least One Time" and
           "Number of Times" Limitations ............................................... 2

    C.    TouchTunes Does Not Satisfy the
           Jukebox "Processing Means" Limitation ............................... 5

    D.    TouchTunes Does Not Satisfy the "When
           No Song is Playing" Requirements ......................................... 8

III.   CONCLUSION ......................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**          **Page**

*Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009) ................................................................... 9

*Ballard Med. Prods v. Allegiance Healthcare Corp.*,
    268 F.3d 1352 (Fed. Cir. 2001) ................................................................. 7

*Norian Corp. v. Stryker Corp.*,
    432 F.3d 1356 (Fed. Cir. 2005) ................................................................. 8

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
    549 F.3d 842 (Fed. Cir. 2008) ................................................................... 8

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998) ................................................................. 6

2089478

## I.      INTRODUCTION

Arachnid's opposition brief confirms that there are no material facts in dispute that would preclude summary judgment of non-infringement of the '398 and '834 patents.  The only issues in dispute are purely legal issues relating to the scope of the patent claims that are well suited to summary judgment.

Arachnid's infringement theories ignore the claim language, the claim constructions of this Court and the clear disclaimers Arachnid made to overcome the prior art.  In fact, each of Arachnid's theories directly contradicts arguments and admissions it previously made to the PTO or the Court.  For example, Arachnid argued for a narrow claim scope in order to overcome the prior art and to save its patents during reexamination.  The narrow claim scope urged by Arachnid clearly excludes TouchTunes jukeboxes.  Arachnid now asks this Court to ignore its arguments and admissions and expand the scope in a manner that would recapture the prior art.

## II.     ARGUMENT

### A.      TouchTunes Does Not Satisfy the Jukebox Storage Requirements

The claim language and the Court's construction are clear that claims 3-9 of the '834 patent require that the actual advertisements and songs be stored in separate structural locations.  This is true, regardless of where other advertisement-related data may be stored.  Arachnid expressly admits that each TouchTunes jukebox stores advertisements together with songs in the same "music" subfolder on its hard disk.  *See, e.g.*, SMF Resp. ¶¶ 3-5; TT SMF ¶ 3-5.[1]  That admission precludes any reasonable basis for Arachnid to maintain its infringement allegation.  However, with utter disregard for the claim language, the Court's construction and its own admissions and disclaimers, Arachnid now argues that the claims do not require advertisements and songs to be stored separately, as long as data merely *related* to advertisements is stored separately from songs.  Opp. at 6-11.  This argument fails.

---

[1] Unless otherwise noted, references to Arachnid's responses ("SMF Resp.") to TouchTunes' statements of undisputed facts also refer to the actual corresponding statements of undisputed facts ("TT SMF").

Based on Arachnid's disclaimer during original prosecution of the '834 patent, the Court construed the data storage unit limitation as requiring "**separate** structural **advertisement** and **song** locations within the data unit."  Schonfeld Ex. 4 (Markman Order) at 22-24 (emphasis added).[2]  Significantly, like the claim language, the Court's construction requires an advertisement storage location and a song storage location.  The construction does not merely require an advertisement-*related* data storage location and a song-*related* data storage location.

Furthermore, the final clause of independent claim 3 requires *all* recited advertisement data to be stored in the advertisement storage location:

> [S]aid computer jukebox downloading **said advertisement data** from said central management system by way of said transmission link and storing **said advertisement data** in **said advertisement storage location** of **said data storage unit**.

Ex. 3 ('834 patent) at claim 3 (emphasis added).[3]  Included in the "said advertisement data" stored in the advertisement storage location is the recited "advertisement data representing at least one advertisement," which Arachnid admits "*must* include an actual advertisement."  *Id.*; Opp. at 9 (emphasis added); *see also* Ex. 6 (Oral Hearing Tr.) at 17-18.  Thus, the claims require that the actual advertisements and the actual songs be stored in separate structural locations.

Arachnid admits that TouchTunes jukeboxes store their advertisements and songs in the same storage location.  *See* SMF Resp. ¶¶ 3-5.  Thus, there is no infringement of claims 3-9 of the '834 patent.  Yet, Arachnid clings to its infringement allegation, demonstrating an intentional disregard for the undisputed facts and the clear lack of infringement.

**B.    TouchTunes Does Not Satisfy the "When," "At Least One Time" and "Number of Times" Limitations**

Arachnid expressly admits that TouchTunes' jukeboxes have only displayed advertisements on its jukeboxes based upon customer interaction (or lack thereof) with the jukebox.  *See* SMF Resp. ¶¶ 7, 9.  During the reexaminations, Arachnid also admitted that such

---

[2] Unless otherwise indicated, numbered exhibits cited herein refer to exhibits attached to the Declaration of Dan Schonfeld (Dkt. No. 234), and lettered exhibits cited herein refer to the exhibits attached to the Declaration of Joseph Presta (submitted herewith).

[3] The claim similarly requires all recited song data to be stored in the song storage location of the data storage unit.  *Id.*

2089478

functionality is not encompassed by this Court's constructions of "when," "at least one time" and "number of times."[4]  In fact, the unpredictable nature of customer interaction makes it impossible for a system that displays advertisements based on customer interaction to download data that permits the jukebox to determine when or how many times it will display an advertisement.  Yet, Arachnid continues with its baseless assertion that TouchTunes satisfies the "when," "at least one time" and "number of times" limitations.

The Court agreed with Arachnid that the "when" and "at least one time" limitations require the jukebox to receive "data which permits a determination of a time within which, or event in relation to which, the advertisement *will be run*."  Ex. 4 at 25-28 (emphasis added).  The Court also agreed with Arachnid that the "number of times" limitation requires the downloaded data to "permit[] a determination of … the frequency an advertisement *will be run*."  *Id.* at 28-29 (emphasis added).  TouchTunes' jukeboxes cannot satisfy these "will be run" requirements. Indeed, in distinguishing the prior art from the claim constructions in this case, Arachnid made clear that the "will be run" requirements cannot be satisfied where the downloaded data only permits a determination of when and the number of times the advertisement *could* be run. Arachnid explained to the PTO that customer interaction with a jukebox cannot be predicted and that customer interaction is not data that is downloaded to a jukebox.  *See, e.g.*, Ex. 8 at 24, Ex. 12 at 27-28, Ex. 13 (Storer Rebuttal) at 39.  Thus, Arachnid's own proposed constructions and admissions conclusively establish non-infringement.

Arachnid nevertheless asserts that the "will be run" requirements can be satisfied by certain data received by TouchTunes' jukeboxes.  Opp. at 12-13.  However, at most, the data on which Arachnid relies includes dates between which the advertisements *could* be displayed (*i.e.*, the "flight schedule"), the length of time the advertisements *could* appear on the jukebox screen (*i.e.*, the minimum and maximum show times), and a purported "doubly-linked list" that is *not downloaded* to the jukebox.  *Id.*  Further, it is undisputed that the actual display of the

---

[4] Ex. 8 ('834 Appeal Br.) at 22-25; Ex. 12 ('398 Appeal Brief) at 26-29; Ex. 6 at 22-25, 30-31; Ex. 21 (Supp. Br.) at 9-10.

2089478

advertisements on TouchTunes' jukeboxes is always dictated by the unpredictable customer interactions (or lack thereof) with the jukeboxes.  Thus, Arachnid has no reasonable basis to assert that any data downloaded to TouchTunes' jukeboxes permits the required "will be run" determinations.

Arachnid's arguments distinguishing the prior art Sone patent confirm that TouchTunes' jukeboxes cannot infringe.  In Arachnid's own words, the downloaded schedule file disclosed in Sone is a "*chronological* list of 'events' that *can* be run."  Opp. at 14 (emphasis added).  That is, Sone's advertisements are listed in the *time order* in which they *could* be run.  Arachnid similarly admitted that the schedule file tells the jukebox "when to play that event."  Ex. 6 at 22-23.  For example, Sone's schedule file prescribes that, if conditions are such that the advertisements will be run at all, advertisement 3 will be run in relation to (*i.e.*, after) the display of advertisement 2, and so on.  Ex. 10 ('834 Reply) at 19-20, Ex. 20 ('398 Reply) at 22-23.  Also, in terms of Arachnid's erroneous "percentage" infringement theory, each of the four advertisements listed in the schedule file of Sone's Figure 2 will have a "frequency" of 25%.[5]

Arachnid nevertheless told the PTO that Sone's scheduling file "simply has ***nothing*** to do with providing an event in relation to which the ad will be run and permitting calculation of the frequency an add [sic] will be run within a given period."[6]  Arachnid acknowledges telling the PTO "that the timing for display of advertisements in Sone is not able to be determined from downloaded data, but instead displays advertisements only when the karaoke device is idle."  Opp. at 14.  As Arachnid explained to the PTO, such functionality is distinct from the claims as construed, because the idle state depends "on the ***whims*** of the customers ***using – or not using –*** the karaoke machine at any given time" and makes the display of advertisements "fairly random."[7]  Contrasting Sone with the Court's claim constructions, Arachnid explained, "If the karaoke [in Sone] is going on all night, no advertisement will ever be played."  Ex. 6 at 23-24.

---

[5] A percentage is not a frequency.  In fact, one must know the number of times an advertisement will be displayed before a percentage can even be determined.

[6] Ex. 8 at 61-63 (emphasis added), Ex. 12 at 83; *see also* Ex. 6 at 22-25, 30-31.

[7] Ex. 8 ('834 Appeal Br.) at 24, 25 (emphasis added), Ex. 12 at 28; Ex. 6 at 23-24.

2089478

In fact, even if data has an *incidental effect* on when or the number of times an advertisement will be displayed, the reliance on customer interaction (or lack thereof) with the jukebox to display advertisements still excludes the jukebox from the scope of the claims.  Ex. 8 at 24; Ex. 12 at 27-28; Ex. 13 at 89-90, 92-94; Presta Ex. B (Storer Rebuttal) at 39-40.  Arachnid told the PTO that it would "stretch[] reason" to conclude otherwise.  Ex. 8 at 24; Ex. 12 at 27-28.

Thus, Arachnid itself has confirmed that the claim constructions of this Court cannot be satisfied by devices, like those of Sone and TouchTunes, in which the display of advertisements depends upon the whims of the customer using – or not using – the device.  Indeed, Arachnid admitted that reading the limitations on such devices would require constructions that are "***unreasonably broad***" and are "***not consistent*** with the teachings of the Arachnid patents."  Ex. 21 at 9-10 (emphasis added).  This Court's claim constructions, Arachnid argued, are proper and do not read on such devices.  *Id.* at 10.  Despite this history, Arachnid still tells the Court that it "never suggested that its claims precluded [advertisements] being displayed based on customer interaction, or lack thereof, with a device."  Opp. at 15.  This assertion is plainly false.

TouchTunes' jukeboxes do not satisfy the claim constructions that Arachnid proposed to the Court, that the Court adopted and that Arachnid used to distinguish the claims from systems in which the display of advertisements is governed by user interaction, or lack thereof, with the jukebox.  Thus, Arachnid has failed to present any reasonable basis to support its infringement claim regarding claims 8-11 of the '398 patent and claims 1, 2, 7 and 10-17 of the '834 patent.

**C.**   **TouchTunes Does Not Satisfy the Jukebox "Processing Means" Limitation**

To overcome the rejection of claim 8 during reexamination of the '398 patent, Arachnid repeatedly told the PTO that the recited jukebox "processing means for controlling the display of advertisement data on said visual display and to store advertisement display data in said memory" requires a specific, three-part algorithm.  *See, e.g.*, Ex. 12 at 30-31.  Arachnid now tells the Court the exact opposite, *i.e.*, that "[n]o specific algorithm is required for the recited function of this claim term."  Opp. at 17.

2089478

There is no dispute that infringement is lacking if Arachnid is properly held accountable for its patentability arguments to the PTO.  Indeed, Arachnid has expressly admitted that TouchTunes' jukeboxes do not perform at least the conflict resolution and storage requirements of the three-part algorithm.  *See, e.g.*, SMF Resp. ¶¶ 3, 5, 15, 16.  Thus, the only dispute is whether the limited scope of the "processing means" Arachnid used to distinguish the prior art at the PTO also applies to its infringement arguments in this litigation.  It is fundamental patent law that the limited scope does apply.

For infringement purposes, Arachnid tells this Court that, "as long as the accused TouchTunes jukeboxes achieve the recited function, they meet the 'processing means' limitation."  Opp. at 17.  However, Arachnid told the PTO the exact opposite to distinguish the prior art when the Examiner made the same assertion about the scope of the "processing means" limitation when rejecting the claims.[8]  Arachnid's reexamination Appeal Brief contains a section entitled "Sone fails to disclose a processing means ***as recited*** in independent ***Claims*** 1, ***8***, 15, and 17."  Ex. 12 at 30-31 (emphasis added).  In that section, Arachnid relied exclusively on the three-part algorithm to distinguish Sone from claim 8.  Arachnid told the PTO that "a 'processing means' limitation is construed as a microprocessor that runs an algorithm corresponding to the recited function."[9]  Arachnid then identified the algorithm corresponding to the recited function of "controlling the display of advertisement data on said visual display and to store advertisement display data in said memory."  *Id*.  According to Arachnid, Sone did not disclose any part of that three-part algorithm and, "***[f]or at least this reason***, Sone does not anticipate ***Claims*** 1, ***8***, 15, and 17."  *Id.* at 31 (emphasis added); *see id.* at 2 n.7, 4 & n.18, 30, 31, 84-86.  When a patentee distinguishes his invention from the prior art based on a particular feature, he has disclaimed coverage of any device that does not include that feature.  *See, e.g.*, *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-80 (Fed. Cir. 1998).

---

[8] Ex. 17 ('398 12/18/08 Office Action) at 8-9 (rejecting claim 8; "Sone discloses a **processing means (4)**" that "controls the display of advertisement data" and "stores advertisement display data in the memory").

[9] Ex. 12 at 30-31 (citing *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1253-54 (Fed. Cir. 2005)); *see id.* at 2 & n.7, 4 & n.18, 84-86; Presta Ex. A ('398 Reply Br.) at 65-66.

2089478

Arachnid acknowledges that its patentability arguments "related generally to all four of the different 'processing means' claim terms in the Arachnid jukebox patents," including the one recited in claim 8 of the '398 patent.  Opp. at 18.  A disclaimer of subject matter does not require more.  *See Ballard Med. Prods v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1360 (Fed. Cir. 2001).  Surprisingly, Arachnid now falsely tells this Court that "nowhere in the '398 patent file history did Arachnid state that claim 8 of the '398 patent requires a conflict resolution function." Opp. at 19.  Below, however, is yet another example in which Arachnid expressly limited claim 8's "processing means" to require a conflict resolution policy.  In this example, Arachnid tells the PTO that "the structure that corresponds to the 'processing means'" includes "an algorithm corresponding to the recited function of the means-plus-function limitation."  Arachnid also specifically states that the Sone prior art does not anticipate claim 8, because Sone does not resolve a conflict "as prescribed by the algorithm":

> Patent Owner, in accordance with *Harris* and its progeny, identifies ***the structure that corresponds to the "processing means"*** to be processing circuit 121/microprocessor 121A that ***runs an algorithm corresponding to the recited function*** of the means-plus-function limitation.  As discussed in the Appeal Brief, the '398 patent teaches that ***the algorithm related to the "processing means" function*** is displaying advertisements based on data downloaded from a central management station which includes when and the number of times to play the advertisements and ***resolving conflict between running an advertisement and a song*** by displaying an advertisement at the same time of the song if the song is just audio and the advertisement is just video or at the next available time slot if the advertisement is both audio and video.  *See* Appeal Brief at 30-31.  As discussed above, Sone does not disclose that advertisement data is actually downloaded from a central station to a jukebox.  Likewise, ***Sone does not resolve a conflict*** between running an advertisement that is only video and a song that is only audio ***as prescribed by the algorithm***.  ***Therefore***, the CPU 4 of Sone does not perform ***the algorithm that corresponds*** to the recited functions of the "processing means," and Sone does not anticipate ***claims*** 1, ***8***, 15, and 17.

Ex. A at 65-66 (emphasis added); *see also* TouchTunes Opening Mem. at 16-18.  Thus, Arachnid cannot truthfully deny that it told the PTO that claim 8's "processing means" requires an algorithm that includes the "prescribed" conflict resolution policy.  *Id.*

Arachnid argues that the law does not require a specific algorithm for "general functions" of a "processing means."  Opp. at 17.  However, Arachnid elected to limit its "processing means"

2089478

to a specific algorithm to distinguish the prior art.  Thus, its disclaimer remains in effect, whether or not Arachnid was required to limit the "processing means" to a specific algorithm.  *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005).

Arachnid asserts that "TouchTunes is attempting to renege on the claim construction agreement" regarding the jukebox "processing means."  Opp. at 18.  However, it is *Arachnid* who reneged on the agreed construction.  TouchTunes agreed to Arachnid's broad construction of "processing means" to streamline the claim construction issues in this case.  Having secured TouchTunes' agreement to its proposed construction, Arachnid advised the Court that the agreed construction was the "proper" construction of "processing means."  Ex. 5 (Arachnid's Opening Markman Br.) at 19; *id.* at Exhibit 1, p. 4.  Arachnid then promptly turned to the *PTO* and distinguished the prior art by arguing that such a broad construction was *improper*.  Arachnid's improper strategy underscores the importance of requiring a court to "monitor the proceedings before the PTO to ascertain whether its construction of any of the claims has been impacted by further action at the PTO or any subsequent proceedings."  *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008).

Arachnid's disclaimer cannot be ignored, and its admission that the TouchTunes jukeboxes do not perform the required conflict resolution function entitles TouchTunes to summary judgment of non-infringement of claims 8-11 of the '398 patent.  *Id.*

### D.   TouchTunes Does Not Satisfy the "When No Song is Playing" Requirements

TouchTunes agrees with Arachnid that each claim of the '834 patent requires the jukebox to display the advertisements "when the jukebox is not playing a song."  Ex. 5 at 18-19; *id.* at Exhibit 1, p. 4; *see also* Ex. 15 at 24; Opp. at 20-21.  This requirement was critical to the original Examiner's decision to grant the '834 patent.  Ex. 22 ('834 Notice of Allowability) at 9. Arachnid admits that the display of advertisements on TouchTunes' jukeboxes is independent of whether or not a song is playing on the jukebox.  *See, e.g.*, SMF Resp. ¶¶ 19, 21.  That is, the accused jukeboxes do not in any way coordinate the display of advertisements with song playback.  *Id.*; TT SMF ¶ 20; Guy ¶¶ 30, 31, 36; Schonfeld ¶¶ 60-77.

8

The lack of infringement here does not hinge on whether the claims require a "trigger" or on whether the jukebox displays advertisements *only* when a song is not playing. Opp. at 23. Instead, the real dispute is whether this limitation requires the display of advertisements and the playback of songs to be coordinated, or whether the jukebox can be indifferent to song playback.

According to Arachnid's previous claim construction arguments and the Court's decision, the jukebox's display of advertisements must account for song playback. Even Arachnid's previous technical expert opined that, "in the '834 patent, the presentation of both songs and advertisements ***must be coordinated*** if each type of data is to be presented properly." Ex. 14 (Dickinson 10/19/07 Rpt.) at 201 (emphasis added); *see* Ex. 13 (Storer Rebuttal) at 33-34, 73-74.

Arachnid's current position, however, is that the jukebox can be completely indifferent to song playback when displaying advertisements. According to this new view, the "when no song is playing" requirement can be satisfied even if, by mere happenstance, advertisements are displayed at the same time no song is playing. Indeed, Arachnid asserts that "[t]he 'coordination' of display of advertisements with presentation of songs is ***simply irrelevant*** to the validity or infringement analysis with respect to the 'when said jukebox is not generating a signal representing a song' limitation." Opp. at 25; *see also id.* at 21. According to Arachnid, "[t]hat the Accused Jukeboxes are <u>capable</u> of displaying advertisements when no song selection is playing on the jukebox is sufficient to meet this claim limitation." Opp. at 21.

First, the claims require more than mere capability. They explicitly recite that the jukebox actually runs the advertisements when no song is playing. '834 patent at claim 1 ("a processor displaying one of said plurality of advertisements"), claim 3 ("said processor runs said at least one advertisement"), claim 10 ("said processor runs said at least one advertisement"); *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 994-95 (Fed. Cir. 2009). Thus, to avoid summary judgment, Arachnid was required to come forward at least with proof that a TouchTunes jukebox has actually displayed an advertisement when no song is playing. Arachnid's opposition papers are completely devoid of any such proof, and its capability argument does not remedy that failure of proof. Summary judgment is appropriate.

9

Second, Arachnid's current argument squarely contradicts its previous claim construction arguments to the Court, the Court's claim construction decision and the opinions of Arachnid's own technical experts across two litigations.[10]  Arachnid previously argued – and the Court agreed – that a requirement for graphics to be displayed when the jukebox is not playing a song amounts to a trigger.  Ex. 4 at 11-12.  The Court found that the term "user attract mode" did not, on its own, require a trigger.  *Id.*  Contrary to Arachnid's current assertions, however, the Court did *not* "expressly h[o]ld that there is <u>no</u> such triggering requirement in any Arachnid patent." Opp. at 22.  The Court held instead that incorporating a trigger requirement into the term "user attract mode" would create a redundancy with the trigger requirement already present in separate claim language requiring the user attract mode to run "when no song is playing."  Ex. 4 at 12.

If the "when no song is playing" requirement is to have any meaning – particularly the meaning that Arachnid and its experts (and the Court) have previously attributed to it – that requirement cannot be satisfied by mere happenstance.  The jukebox's display of advertisements must account for song playback.[11]

Arachnid admits that TouchTunes' jukeboxes display advertisements independently of song playback.  TouchTunes' jukeboxes, therefore, are not even *capable* of satisfying the claims' coordinated presentation requirements, and Arachnid has no legitimate basis to contend that TouchTunes' jukeboxes satisfy claims 1-17 of the '834 patent.

## III.  CONCLUSION

Summary judgment of non-infringement of the '398 and '834 patents should be entered.

Respectfully submitted,

Date:  December 10, 2012           By:       /James S. Blank/
                                             James S. Blank (JB-4376)
                                             **KAYE SCHOLER LLP**

---

[10] *See, e.g.*, Ex. 14 at 201; Ex. 13 at 22, 33-34, 73-75.

[11] Even the "theoretical" choice Arachnid identifies between displaying an advertisement "automatically or based on a triggering event" reflects a choice between two types of coordination:  (1) displaying the advertisement automatically unless a song is playing; and (2) triggering the advertisement display by the fact that no song is playing.  Opp. at 22.

2089478

425 Park Avenue
New York, New York  10022-3598
Tel:  (212) 836-8000
Fax:  (212) 836-8689
E-mail:  jblank@kayescholer.com

Joseph S. Presta
E-mail:  jsp@nixonvan.com
Jonathon T. Reavill
E-mail:  jtr@nixonvan.com
**NIXON & VANDERHYE, P.C.**
901 North Glebe Road, 11th Floor
Arlington, Virginia  22203
Tel:  (703) 816-4000
Fax:  (703) 816-4100

***Attorneys for Plaintiff***
***TOUCHTUNES MUSIC CORP.***

11