# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOUCHTUNES MUSIC CORP.,<br><br>                    Plaintiff,<br><br>            -against-<br><br>ROWE INTERNATIONAL CORP.,<br>ARACHNID, INC.,<br>AMI ENTERTAINMENT, INC. and<br>MERIT INDUSTRIES, INC. d/b/a MERIT<br>ENTERTAINMENT,<br><br>                    Defendants.<br><br>AND RELATED COUNTER CLAIMS | Civil Action No. 07-cv-11450-RWS |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    A.   TouchTunes Cannot Demonstrate Egregious Conduct ........................................... 2

    B.   Arachnid's Proper Disclosure of TouchTunes' Assertions To the Patent Office Negates Any Alleged Materiality ....................................................... 5

    C.   TouchTunes Failed to Present Evidence of an Intent To Deceive ......................... 10

III. CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
  808 F.2d 1471 (Fed. Cir. 1986) ............................................................................ 8

*Hazel-Atlas Glass Co. v. Hartford Empire Co.*,
  322 U.S. 238 (1944) ............................................................................................ 3

*Keystone Driller Co. v. Gen. Co.*,
  290 U.S. 240 (1933) ............................................................................................ 3

*Life Techs., Inc. v. Clontech Labs., Inc.*,
  224 F.3d 1320 (Fed. Cir. 2000) ............................................................................ 8

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*,
  324 U.S. 806 (1945) ............................................................................................ 3

*Refac Int'l, Ltd. v. Lotus Dev. Corp.*,
  81 F.3d 1576 (Fed. Cir. 1996) ............................................................................. 9

*Semiconductor Energy Lab. v. Samsung Electronics Co.*,
  204 F.3d 1368 (Fed. Cir. 2000) .......................................................................... 10

*Standard Oil Co. v. U.S.*,
  429 U.S. 17 (1976) .............................................................................................. 3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) .................................................................... passim

*Young v. Lumenis, Inc.*,
  492 F.3d 1336 (Fed. Cir. 2007) ............................................................................ 8

**Other Authorities**

MPEP § 2254 ............................................................................................................ 6

MPEP § 2256 ............................................................................................................ 7

MPEP § 2280 ............................................................................................................ 6

MPEP §§ 2014 .......................................................................................................... 6

**Regulations**

37 C.F.R. § 1.502 ..................................................................................................... 6

37 C.F.R. § 1.555 ..................................................................................................... 6

37 C.F.R. § 1.97 ....................................................................................................... 6

37 C.F.R. § 1.98 ....................................................................................................... 6

**I.      INTRODUCTION**

When stripped of all the rhetoric, cropped quotes and bombast, TouchTunes' inequitable conduct allegations are that Arachnid: (1) submitted the Rice Declaration with a knowingly false statement that in 1992 karaoke machines generally were not-coin operated, nor operated by patrons; and (2) submitted the New Karaoke References in an IDS pursuant to the MPEP instead of to the Board in an unauthorized brief.  Charges of inequitable conduct based on these facts are meritless to the point of frivolous; they exemplify the "plague" on the patent system that the Federal Circuit recognized and curbed in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011).

Despite TouchTunes' self-serving interpretation, the statements in the Rice Declaration are true.  Mr. Rice did not state that <u>no</u> karaoke device in the entire world was coin- or patron-operated.  Rather, he said that in 1992 one skilled in the art "generally" understood that karaoke machines in public use differed from jukeboxes because, *inter alia*, karaoke machines were not coin- or patron-operated.  Very notably, the evidence cited by TouchTunes for Mr. Rice's and Arachnid's "knowledge" that somehow contradicts that understanding is underwhelming – three references <u>dated several years after 1992,</u> and one statement about a "user" selecting songs being disclosed by a fourth reference which was taken from a 300-page expert report dated in 2007. This "evidence" cannot meet the rigorous standards of *Therasense*.

After first learning of the New Karaoke References in October 2010, Arachnid followed well-established PTO procedures in submitting them to the PTO.  The Examiner considered the references when she reacquired jurisdiction from the Board.  Having each New Karaoke Reference in her possession, she initialed the forms indicating that she considered them. TouchTunes cannot establish but-for materiality and intent to deceive under these circumstances.

TouchTunes' arguments are inconsistent with its actions. TouchTunes admits that it closely monitored the reexamination proceedings and thus it became aware of the Rice Declaration when it was filed in March 2009. TouchTunes Opp. at 1 (Dkt. No. 252). Yet, TouchTunes waited over a year and a half to identify the New Karaoke References to Arachnid. TouchTunes' counsel had the same access to all of the records that Arachnid had. If so obviously wrong, why did TouchTunes wait? The simple explanation is that this conspiracy theory was pieced together right after oral argument at the Board – when TouchTunes realized the patents would reissue. TouchTunes' Hail Mary approach continues before this Court with its claims of inequitable conduct based on that same art that was considered and rejected by the PTO.

The determination on inequitable conduct is for the Court, not a jury. There are no facts in dispute. The Court should grant summary judgment that there is no inequitable conduct.

## II.   ARGUMENT

### A.   TouchTunes Cannot Demonstrate Egregious Conduct

TouchTunes devotes approximately half of its Opposition brief to arguing that Arachnid acted "egregiously" in submitting the Rice Declaration and related arguments. *See id.* at 6-19. The statements were true, and the "evidence" cited by TouchTunes that Arachnid had "knowledge" of alleged falsity fails to meet the inequitable conduct standards.

TouchTunes would like the Court to believe that the statements from the Rice Declaration were some type of sleight of hand in an orchestrated effort to mislead the Patent Office. This is simply absurd. Mr. Rice stated about karaoke machines in public use in 1992 that "Karaoke machines <u>generally</u> were not coin-operated, and were operated not by patrons but by a dedicated operator using a personal code." 3/17/09 Rice Decl. ¶ 6 (emphasis added) (Dkt No. 255-2). Mr. Rice did <u>not</u> state that *no karaoke machines anywhere in the world* were coin-operated or operated by the patron, as TouchTunes falsely asserts. The word "generally" was

2

used for a reason – because Mr. Rice is not omniscient. There might have been isolated examples of karaoke machines being operated by coin or by the patron, but these certainly would not have been the norm in 1992 and they did not fall within Mr. Rice's understanding and belief as to the knowledge of one skilled in the art.

A central underpinning of TouchTunes' theory is that Arachnid "knew" that karaoke machines were not coin or patron operated prior to October 11, 2010, the date of the first of four letters from TouchTunes identifying the alleged karaoke prior art. TouchTunes' evidentiary support for Arachnid's apparent "knowledge" cannot meet the legal standards for egregiousness.

*Therasense* makes clear that "egregious conduct" is reserved for extreme behavior. *See* 649 F.3d at 1285-87, 1292-93. The cases cited by *Therasense* as examples of egregious conduct all involved affirmatively fraudulent conduct such as perjury, bribery and the manufacture of false documentation. *See, e.g., Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 245 (1944), *overruled on other grounds by Standard Oil Co. v. U.S.*, 429 U.S. 17 (1976) (manufactured evidence by drafting fake scholarly article in order to trick and defraud the PTO); *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 809-10 (1945) (submitted purposely false statement in PTO proceedings, followed by perjurious testimony in an interference); *Keystone Driller Co. v. Gen. Co.*, 290 U.S. 240, 243 (1933) (patentee bribed prior user to sign false affidavit, which patentee then filed with the PTO).

In this instance, TouchTunes cites only four pieces of evidence that Arachnid "knew" the Rice Declaration was false: (i) a citation to U.S. Patent No. 4,046,004 ("Tsumura") in a 2007 expert Report of Dickinson in another case (*see* Dkt. No. 255-4); (ii) U.S. Patent No. 5,481,509 ("Knowles), filed in September 1994 (Dkt. No. 255-6); (iii) an October 1994 Telejukebox article (Dkt. No. 255-5); and (iv) U.S. Patent No. 5,953,005 ("Liu"), filed in June 1996 (Dkt. No. 255-

8).  TouchTunes Opp. at 8-9 (Dkt. No. 252).  The Rice Declaration statement concerned the knowledge of one of ordinary skill in the art in <u>1992</u>.  *See* 3/17/09 Rice Decl. ¶ 6 (Dkt No. 255-2).  Thus, the latter three references (Knowles, Telejukebox and Liu) are irrelevant because they are dated, respectively, two and four years later, in 1994 and 1996.[1]  The references did not exist in 1992, so they have no bearing on the knowledge of one skilled in the art in 1992.  Moreover, TouchTunes cites to no evidence that Mr. Rice knew of the references or their disclosures when his declaration was executed in 2009.

This leaves the 2007 Dickinson Report's citation to Tsumura as the only alleged evidence cited by TouchTunes that could possibly show that Arachnid "knew" that the Rice statement was inaccurate.  Yet, TouchTunes provides no evidence that the Dickinson Report was reviewed by Mr. Rice, and there is no reasonable inference to the contrary since the Dickinson Report was marked "Highly Confidential" under the Protective Order in the Ecast litigation, which precluded Mr. Rice from reviewing it.  *See* 9/4/07 Dickinson Report (Dkt. No. 255-4).  Even if knowledge of the single sentence from the 300-page Dickinson Report could be attributed to Arachnid's counsel two years later when the Rice Declaration was executed, and disregarding Rice's use of the term "generally," such evidence hardly rises to the level of "deliberately planned and carefully executed scheme[s]" to defraud the PTO required by *Therasense*.  649 F.3d at 1287.  This is not a case of perjury, bribery or manufacturing false evidence.  This is an instance of an infringer cherry-picking a single, disparate statement, from thousands of pages of technical and legal documents over many years, and using that single hand-picked statement to create a false impression that one skilled in the art would have some unspecified "knowledge."  One skilled in

---

[1] Knowles actually *supports* the Rice Declaration by stating that in 1994 karaoke was different from jukeboxes and required a separate system and "an additional operator to play selections."  *See* Knowles, col. 1, lines 43-54 (Dkt. No. 255-6).  Similarly, the Telejukebox article was for an apparent prototype just that started being marketed in 1994 and does not specifically disclose that the product was coin-operated.  *See* Telejukebox (Dkt. No. 255-5).

4

the art is not charged with knowledge of every prior art reference throughout the world. Rather, he or she would have ordinary knowledge attributable to one with a certain level of education and experience, such as Mr. Rice. Moreover, the egregiousness standard inherently contains a specific intent to deceive, which cannot be satisfied under a "should have known" standard and requires a more stringent "deliberate decision." *See Therasense*, 649 F.3d at 1290. Under this standard, it is impermissible to infer knowledge of prior art and then infer egregiousness based on the inferred knowledge. This double inference is not viable under *Therasense*. *See id.*

TouchTunes has not, and cannot, cite to any case where a court has found inequitable conduct under similar circumstances. TouchTunes' allegations represent precisely the type of litigation-driven allegations that *Therasense* was intended to prevent. The Court should grant summary judgment of no inequitable conduct based on the Rice Declaration.

### B. Arachnid's Proper Disclosure of TouchTunes' Assertions To the Patent Office Negates Any Alleged Materiality

The claimed inventions are a combination of elements including, among other things, a jukebox network, local storage, studio quality songs, downloading of songs, … etc. To meet the "but-for" materiality requirements, the prior art must disclose every limitation by itself or when combined with another prior art reference. However, TouchTunes never explains how any Karaoke Reference, except for Knowles, would apply to invalidate even a single Arachnid patent claim.[2] TouchTunes resorts to predictions about what the Board would have done, yet never addresses all of the other claim limitations, nor how the New Karaoke References were non-cumulative of the cited prior art, including Knowles which was before the PTO since 2008.

---

[2] Remarkably, TouchTunes' technical expert Dr. Schonfeld has no opinion in his expert reports that the asserted claims are invalid based on the New Karaoke References, except for the Knowles reference. The only opinions he has for these references are for unenforceability. This inconsistency seriously undermines any claims of "but-for" materiality.

5

Moreover, there simply can be no but-for materiality, as a matter of law, when nothing has been withheld from the PTO. *See Therasense*, 649 F.3d at 1291. Once Arachnid received TouchTunes' letters starting in October 2010, Arachnid properly disclosed the references and TouchTunes' allegations to the PTO consistent with the PTO's procedures. *See* Arachnid Mem. at 10-13 (Dkt. No. 227). TouchTunes fails to refute or even address Arachnid's cited authority that restricts the submission of evidence directly to the Board to very specific circumstances and only at the Board's request. *See id.*; MPEP §§ 2014 and 2280; 37 C.F.R. §§ 1.97, 1.98 and 1.555; TouchTunes Opp. at 11-17 (Dkt. No. 252). Arachnid's submission of the Karaoke References via the IDS procedures was appropriate.

TouchTunes states that Arachnid's IDS disclosures submitted to the PTO contain "incomplete and misleading statements." *See* TouchTunes Opp. at 13-14, 22 (Dkt. No. 252). TouchTunes never states what was "incomplete" or what was "misleading" in the Addendums Arachnid filed. In any case, this is an astonishing argument because Arachnid not only supplied the identified references to the PTO, but also included *verbatim quotations* of TouchTunes' characterizations of those references. *See* Arachnid Mem. at 10 (Dkt. No. 227); TouchTunes Resp. to Rule 56.1 Statement at ¶¶ 30, 34 (Dkt. No. 251). Since TouchTunes admits that its letters fully described the alleged materiality of the references, it follows that Arachnid's verbatim quotation of TouchTunes' statements would have "corrected" any purported inaccuracies in the record.

TouchTunes argues that Arachnid's IDS submissions were inappropriately made "at the behest of a third-party litigant" and that the Examiner would not consider such submissions. *See* TouchTunes Opp. at 14-15 (Dkt. No. 252). This is simply not the case. Arachnid made the submissions on its own behalf, not TouchTunes. Thus, 37 C.F.R. § 1.502 and MPEP §§ 2254,

6

2256 are inapplicable. The submissions provide the relevant context for why Arachnid submitted the information (*i.e.*, TouchTunes brought the information to Arachnid's attention), as well as Arachnid's view of the information (*i.e.*, Arachnid disagreed with TouchTunes' interpretations). *See generally* 11/23/10 IDS Addendum (Dkt No. 228-15); 1/12/11 IDS (Dkt. No. 228-17).

TouchTunes also asserts that it identified U.S. Patent No. 5,218,580 ("Okamura") in a November 10, 2010 interrogatory response as an additional reference that should have been identified to the PTO. TouchTunes Opp. at 10-11 (Dkt. No. 252). However, TouchTunes fails to mention that it never identified Okamura in any of its letters to Arachnid, including the two letters sent <u>after</u> Okamura was identified in the interrogatory response. Further, TouchTunes' interrogatory response lists numerous prior art references in association with each of the myriad patent claim limitations without any explanation of the relevance of each reference. 11/10/10 TouchTunes Interrog. Resp. at 107, 143-44 (Dkt. No. 258-7). Nowhere in its responses does TouchTunes explain how Okamura's disclosure allegedly relates to karaoke machines or to the Rice Declaration. *Id.* The mere listing of Okamura in the 300-page interrogatory response hardly makes clear that Okamura should have been disclosed to "correct the record" about the state of the karaoke prior art in 1992. Arachnid's IDS submissions – which included TouchTunes' relevancy assertions – comprised full disclosure to the PTO.

In the end, it appears that TouchTunes believes that the only way Arachnid could have "cured" its prior purported misrepresentations would have been to "come clean and admit that its prior representations were contradicted by the karaoke prior art." *See* TouchTunes Opp. at 15 (Dkt. No. 252); *see also id.* at 16 ("None of the IDSs even mentions that Arachnid had misrepresented the scope and content of the karaoke prior art or that its proposed construction of

'computer jukebox' would not render the claims patentable."). Essentially, TouchTunes argues that if an infringer makes assertions about prior art, those assertions must be accepted as true by the patentee and the patentee must submit them to the PTO without any commentary. This is laughable. Arachnid did not, and does not, agree with TouchTunes' interpretation of the Karaoke References. Arachnid was justified in refuting TouchTunes' assertions. There is no authority for the proposition that Arachnid was obligated to accept and submit TouchTunes' twisted, litigation-driven views of the prior art. Moreover, just because TouchTunes disagrees with Arachnid's interpretation of the prior art does not make those characterizations false or egregious. It bears emphasis here: Arachnid's characterizations of the prior art <u>cannot</u> constitute "material misrepresentations" that would support a finding of inequitable conduct. *See* Arachnid Mem. at 17-18 (Dkt. No. 227) (citing *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000), *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) and *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986)). TouchTunes' Opposition fails to address this precedent.

TouchTunes also asserts that Arachnid misrepresented the facts to the Board when its counsel said at an oral argument that "no karaoke art was ever cited against any of [its] patents." TouchTunes Opp. at 19. However, TouchTunes deceptively changed the quote to include the word "[its]." In the actual exchange between Arachnid and the Board, Arachnid stated that, prior to the reexaminations, no karaoke art had been cited against "these" patents – meaning the '398 and '834 patents. 9/15/10 R. of Oral Hr'g at 12:18-13:9 (Dkt. No. 228-6). The change from "these" to "its" creates a false impression that Arachnid had made such an assertion about all of Arachnid's patents, rather than just the '398 and '834 patents. Presumably, TouchTunes made the change to be able to link Liu to the '398 and '834 patents by pointing to the citation of Liu

8

during the prosecution of the '780 patent.[3]  *See* TouchTunes Opp. at 19.  In fact, karaoke art was not cited by the PTO against the '398 and '834 patents before the reexaminations.[4]  TouchTunes' argument – premised on a deceptively altered quotation – fails.[5]

TouchTunes also argues that Arachnid's proposed construction of "computer jukebox" and arguments made to the PTO during the reexamination proceedings regarding that construction excluding karaoke machines were false.  *Id.* at 6-7, 9-10.  However, TouchTunes fails to explain that Arachnid's claim construction arguments to the PTO were based on this Court's construction of that term.  9/28/10 Suppl. Br. at 8 (Dkt. No. 228-7).  Arachnid's arguments concerning the construction of "computer jukebox" were accurate and appropriate.[6]

TouchTunes cites to *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576 (Fed. Cir. 1996) to argue that the Rice Declaration constitutes a "statement of fact."  TouchTunes Opp. at 17-18 (Dkt. No. 252).  *Refac* supports Arachnid.  Specifically, TouchTunes quotes *Refac*'s statement that "[i]t was *incumbent* upon them to provide the PTO with *sufficient information for a reasonable examiner to consider the opinion in the affidavit in context, not with a selective and misleading disclosure*."  *Id.* at 18 (citing *Refac*, 81 F.3d at 1584) (emphasis added by TouchTunes).  Arachnid complied exactly with that directive.  At the time of the Rice Declaration, Arachnid had provided the PTO with all of the information concerning the scope and content of the prior art in 1992 about which it was aware.  *See* Arachnid Mem. at 16-17 (Dkt. No. 227).  There was nothing selective or misleading about Arachnid's disclosures.

---

[3] The Liu patent was filed in 1996 and issued in 1999.  It is not prior art to the '398 or the '834 patent.
[4] Tsumura was only cited against a parent application to the '834 patent (*see* TouchTunes Opp. at 19).  Regardless, Tsumura was cited during reexamination of the '834 patent.  12/12/08 IDS at Cite No. A-51 (Dkt. No. 228-11).
[5] TouchTunes relies on this same deceptively changed quote in support of its assertion that the '780 patent is unenforceable due to infectious inequitable conduct and likewise the argument fails.  *See* TouchTunes Opp. at 25.
[6] TouchTunes' argument that Arachnid's reliance on the Rice Declaration during the reexamination of the '575 and '189 patents creates a false impression about the scope of the term "computer jukebox" also misses the mark.  TouchTunes Opp. at 15 (Dkt. No. 252).  The '575 and '189 patents are not at issue in this case, and TouchTunes' inequitable conduct allegations make no mention of the '575 and '189 patents.  Therefore, any statements or arguments made with respect to the '575 and '189 patents are irrelevant.

Notably, throughout its Opposition, TouchTunes relies on *Semiconductor Energy Lab. v. Samsung Electronics Co.*, 204 F.3d 1368 (Fed. Cir. 2000) ("*SEL*"). *SEL* is wholly inapposite. In *SEL,* the applicant submitted a Japanese reference (in Japanese) with a portion of that reference translated into English, but omitting a material teaching. 204 F.3d at 1371-72, 76. The court held that the applicant intentionally concealed the relevant portion of the reference and therefore failed to comply with its duty of candor. *Id.* at 1377-78. In contrast, Arachnid did not conceal any portions of the prior art from the PTO, let alone purportedly material portions. It is undisputed that Arachnid disclosed the references in their entirety with TouchTunes' detailed explanation of relevancy. TouchTunes Resp. to Rule 56.1 Statement at ¶¶ 30, 34 (Dkt. No. 251).

      C.     **TouchTunes Failed to Present Evidence of an Intent To Deceive**

TouchTunes asserts that intent to deceive the Patent Office exists by inference. *See* TouchTunes Opp. at 21-22 (Dkt. No. 252). TouchTunes' inference is not "the single most reasonable" one, and thus fails to meet the required standards. *Therasense*, 649 F.3d at 1290.

TouchTunes asserts that there is "no legitimate explanation" as to why Arachnid provided information to the Board versus to the PTO. TouchTunes Opp. at 22 (Dkt. No. 252). To the contrary, Arachnid provided just such an explanation in its opening memorandum. *See* Arachnid Mem. at 10-13 (Dkt. No. 227). TouchTunes has failed to rebut Arachnid's explanation. Moreover, TouchTunes' argument concerning Arachnid's inclusion of a statement that the submission was made "to avoid having to defend against baseless inequitable conduct allegations" is meritless. The language merely indicates Arachnid's position that it disagrees with TouchTunes' assertions about the prior art, but disclosed the information to the PTO out of an abundance of caution. Nothing was concealed from the PTO.

TouchTunes points to no facts that show a deliberate and specific intent to deceive. As such, TouchTunes' inequitable conduct claims fail as a matter of law.

**III.     CONCLUSION**

For all of the foregoing reasons, as well as those discussed in Arachnid's opening brief, the Court should grant Arachnid's motion for summary judgment of no inequitable conduct.

Dated: New York, New York
December 13, 2012

Respectfully submitted,

By:     */s/ James E. Hanft*
James E. Hanft
SCHIFF HARDIN LLP
666 Fifth Avenue, Suite 1700
New York, New York 10103
(212) 753-5000

Stephen M. Hankins
SCHIFF HARDIN LLP
One Market
Spear Street Tower, Suite 3200
San Francisco, CA 94105
(415) 901-8700

James P. Murphy
MCANDREWS HELD & MALLOY LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60601
(312) 775-8000

ATTORNEYS FOR DEFENDANT ARACHNID, INC.

28235-0003
NY\51281707.2